**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| KAIST IP US LLC,<br><br>  Plaintiff and Counterclaim-Defendant,<br><br>  v.<br><br>SAMSUNG ELECTRONICS CO., LTD.;<br>SAMSUNG ELECTRONICS AMERICA, INC.;<br>SAMSUNG SEMICONDUCTOR, INC.;<br>SAMSUNG AUSTIN SEMICONDUCTOR, LLC;<br>GLOBALFOUNDRIES, INC.;<br>GLOBALFOUNDRIES U.S. INC.; and<br>QUALCOMM INC.,<br><br>  Defendants and Counterclaim-Plaintiffs. | Case No.: 2:16-cv-01314-JRG-RSP<br><br>JURY TRIAL DEMANDED<br><br>Honorable Rodney Gilstrap |

**PLAINTIFF'S RESPONSE TO GLOBALFOUNDRIES US AND QUALCOMM'S
OBJECTIONS TO REPORT AND RECOMMENDATION ON MOTIONS TO DISMISS
OR, ALTERNATIVELY TRANSFER FOR IMPROPRER VENUE**

Plaintiff and Counterclaim-Defendant KIPB LLC, formerly known as KAIST IP US LLC ("KAIST IP US") files this response to GlobalFoundries US and Qualcomm's ("Defendants") Objections to Report and Recommendation on Motions to Dismiss or Alternatively Transfer for Improper Venue (Dkt. No. 155) ("Objections"), and would show the Court the following:

## I. INTRODUCTION

Defendants' Objections to the December 18, 2017 Report and Recommendation ("Report") denying their motion to dismiss because of improper venue, or alternatively, transfer this case should be overruled. Magistrate Judge Payne's denial of Defendants' motions was neither "clearly erroneous" nor "contrary to law." The Supreme Court and Federal Circuit have held that a district court has inherent power to manage its own affairs, and that venue can be waived in circumstances other than those listed in Fed. R. Civ. P 12(g) and (h). Here, Defendants made a tactical decision to "wait and see" before filing their motions to dismiss, waiting four and five months, respectively, after *TC Heartland* to file their motions. During that time they each expended court resources by participating in extensive discovery, seeking claim constructions, and engaging in *inter partes* review ("IPR") exams. Defendants' Objections are completely meritless against this legal and factual backdrop.

## II. LEGAL STANDARD

If a party objects to the recommendations of a magistrate judge on a dispositive motion, another party may respond to the objection within fourteen (14) days. Fed. R. Civ. P. 72(b)(2). Objections under Rule 72 must show that the magistrate's decision is "clearly erroneous" or "contrary to law." *Network 1 Tech., Inc. v Alcatel-Lucent USA, Inc.*, No. 6:11-CV-492-RWS-KNM, at *2 (E.D. Tex. June 14, 2017).

### III. THE REPORT ACCURATELY CHARACTERIZED CONTROLLING AUTHORITY.

#### A. Magistrate Judge Payne Did Not Err In His Characterization of *In re Micron*.

Defendants contend that the Report must be overruled because Judge Payne failed to understand and apply the law. In particular, Defendants claim that Judge Payne's reliance on *In re Micron Tech., Inc.*, 875 F.3d 1091 (Fed. Cir. 2017) was fatally flawed because (1) *Micron* did not provide or suggest a "proper inquiry" for timeliness but concluded the opposite, (2) *Micron* placed limitations on district courts' inherent power to find venue objections forfeiture, and (3) *Micron* was "strictly limited to establishing when a defense under *TC* first became available." Objections, at 1-2. But even a cursory review of *Micron* demonstrates Defendants' misreading of the case.

In *Micron*, the Federal Circuit expressly stated that "[w]e . . . clarify the basic legal framework governing determinations of forfeiture of a venue defense." 875 F.3d at 1094. The Court then held that the waiver rule of Fed. R. Civ. P. 12(g)(2) and (h)(1)(a) is "not the only basis on which a district court might reject a venue defense for non-merit reasons, such as by determining that the defense was not timely presented. A less bright line, more discretionary framework applies even when Rule 12(g)(2) and hence Rule 12(k)(l)(a) does not." *Id.* The Court also noted "a scenario that presents at least ***an obvious starting point*** for a claim of forfeiture, whether based on timeliness or consent or distinct grounds: a defendant's tactical wait-and-see bypassing of an opportunity to declare a desire for a different forum, where the course of proceedings might well have been altered by such a declaration." *Id.* at 1102 (emphasis added). The Court further concluded that "[a]ny legal conclusions about the boundaries of discretion must await particular district court explanations under the *Dietz* framework of how discretion is being exercised in particular settings." *Id.* And in *Dietz v. Bouldin, Inc.*, the Supreme Court

2

confirmed that a district court possesses "inherent powers that are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." 136 S.Ct. 1885, 1891 (2016)

Based on the foregoing, it is abundantly clear that Judge Payne's characterization of *Micron* was accurate, and the finding that Defendants had waived their venue objections is consistent with a district court's inherent powers to manage its own docket. Judge Payne's reasoning for his denial of Defendants' motions to dismiss also more than meets the abuse of discretion standard.

> B. **The Report's Additional Citations Were Applicable, And Certainly Do Not Give Rise To Any Abuse of Discretion.**

Defendants also argue that several other cases cited in the Report are inapplicable because they issued before *Micron*, and are distinguishable. But Defendants' arguments here are meritless for at least the following reasons.

<u>First</u>, the Court specifically cited to *Micron*, not to the so-called "inapplicable cases," for the proposition that subsequent waivers can occur. Report, at 3.

<u>Second</u>, the cases cited in the Report are applicable regardless of whether they were decided before *Micron*. *Micron* held that waiver under Fed. R. Civ. P. 12(g)(2) and (h)(1)(a) is not the only way in which venue objections can be waived, noting that "Congress has provided express statutory confirmation of judicial authority to consider the timeliness and adequacy of a venue objection." *Micron,* 875 F.3d at 1101. The cases cited in the Report are applicable because each involved instances where defendants had rested on their venue defense privileges while actively litigating their cases.

<u>Third</u>, Defendants notably fail to mention *Intellectual Ventures II LLC v. FedEx Corp.*, 2017 U.S. Dist. Lexis 193581 (E.D. TX Nov. 22, 2017). In *Intellectual Ventures*, this Court

3

concluded, after considering *Micron*, "that Defendants' venue objection has been waived based on their own conduct, the judicial resources already expended in this case by the Court, the prejudice to Plaintiff in reopening a dormant venue dispute simply because it has become convenient for Defendants to litigate the issue now, and in light of all of these considerations taken together." *Id.,* at *12-13. The same reasoning applies to the facts of our case.

Overall, Defendants' arguments fall far short of establishing that Judge Payne abused his discretion with respect to the Report.

**V. DEFENDANTS WAIVED THEIR DEFENSE BY THEIR CONDUCT.**

Magistrate Judge Payne's decision was not clearly erroneous for at least the following reasons. Global Foundries did not file its motion to dismiss until September 15, 2017, four months after *TC Heartland*. The motion was brought just before the Patent Office issued its decisions to deny institution of the IPR proceedings and right in the midst of claim construction. Global Foundries participated in the scheduling conference and protective order negotiations, exchanged invalidity contentions, served discovery requests, produced documents, and sought favorable claim constructions.

Global Foundries argues that it was somehow KAIST IP US's fault that its motion was not filed sooner because KAIST IP US proposed alternative venues during the meet and confer process. Objections, at 4-5. But that argument is nonsensical because the record shows that Defendants never once seriously considered the proposed alternatives. And KAIST IP US certainly could not have *prevented* Global Foundries from timely filing its motion.

Qualcomm's venue defense became available in May 2017 with the decision in *TC Heartland*. Qualcomm did not file its motion to dismiss until October 27, 2017, inexplicably waiting six weeks longer than Global Foundries to file its motion. Qualcomm did not file its

4

motion until after its petitions for IPR had been denied and five months after *TC Heartland* was decided. Throughout this action, Qualcomm actively participated in the scheduling conference, entered into a stipulated protective order, moved for appearance of its out of state counsel, exchanged invalidity contentions, served notices of deposition, propounded interrogatories, produced documents, and sought favorable claim constructions.

Qualcomm raises the same argument as Global Foundries – that KAIST IP US somehow prevented it from filing a timely motion to dismiss. This makes no sense. As Judge Payne noted, "Defendants (not KAIST) chose to wait months before raising the issue with the Court." Report, at 5. The fact of the matter is that both defendants chose to take a "wait and see" approach, all the while using this court's resources while sitting on their venue privilege arguments.

Qualcomm also attempts to explain its failure to file a motion sooner by stating, "[a]pplying the *Raytheon* test, Qualcomm had determined that the Court would not grant its motion under then-controlling law." Objections, at 6. This argument is disingenuous and unpersuasive.

<u>First</u>, it is contradicted by Qualcomm filing its motion *after* Global Foundries. Despite the Court's June 29, 2017 decision in *Raytheon v. Cray*, Global Foundries filed its motion first in September 2017, even though it had a facility *physically* and *geographically* in the Eastern District of Texas, making its venue argument even less persuasive than Qualcomm. If Global Foundries thought it had a viable motion before the Federal Circuit ruled in *In re Cray*, then Qualcomm, who is represented by the same counsel, should certainly have thought it had a viable motion. Consequently, Qualcomm's excuse makes no sense and actually demonstrates even more compellingly that it should have at least filed its motion when Global Foundries filed.

5

*Second*, at most, Qualcomm's late filing reflects a legal strategy (albeit a poor one), not a legal necessity. The Court's decision in *Raytheon v. Cray* was not binding precedent. In *In re Cray*, the Federal Circuit expressly noted it was not announcing a new standard or creating new precedent with its decision. Rather, it noted, "the district court misinterpreted the scope and effect of our precedent . . . . Accordingly, the court's decision refusing transfer pursuant to 28 U.S.C. § 1406(a) was an abuse of discretion." 871 F.3d 1355, 1356 (Fed. Cir. 2017). Thus, all that Qualcomm can say is that it *chose* to file late. That choice was wrong.

This Court's decision in *Intellectual Ventures* is particularly instructive on the timeliness issue. 2017 U.S. Dist. LEXIS 193581 (E.D. Tex. Nov. 22, 2017). In that case, FedEx defendants filed a Motion to Transfer under § 1404 before *TC Heartland* issued. The FedEx defendants actively litigated the case. They agreed to the appointment of a mediator, served initial disclosures, and appeared before the Court multiple times, engaged in extensive discovery, including document and source code production, and filed a joint claim construction statement with the Court. *Id*., at *6-7. During the same time, the FedEx defendants filed petitions for *Inter Partes* Review of the asserted patents. *Id*., at *7. After litigating the case for a year and more than two months after the Supreme Court had decided *TC Heartland*, defendants filed a motion to dismiss for improper venue. *Id.*

The FedEx defendants waited two months after *Heartland* to file a motion. Global Foundries and Qualcomm waited four and five months respectively. Like FedEx, Global Foundries and Qualcomm participated in a scheduling conference, agreed upon the appointment of a mediator, served initial disclosures, engaged in discovery, including document production, and sought favorable claim constructions. *Id*., at *6-7. Like FedEx, Global Foundries and

6

Qualcomm filed petitions for IPR of the asserted patents. In short, Defendants have waived their venue objections, just as the FedEx defendants did in *Intellectual Ventures*.

## VI. CONCLUSION

For the foregoing reasons, KAIST IP US respectfully requests that the Court adopt the Report and Recommendation denying Defendants' Motion to Dismiss and Motion to Transfer Venue.

Respectfully submitted,

/s/ *Robert Christopher Bunt*
Andrew Y. Choung
Cal. Bar No. 203192 (admitted in E.D. Texas)
Rex Hwang
Cal. Bar No. 221079 (admitted in E.D. Texas)
Guy M. Rodgers
Cal. Bar No. 303229 (admitted in E.D. Texas)
GLASER WEIL FINK HOWARD
AVCHEN & SHAPIRO LLP
10250 Constellation Blvd., 19th Floor
Los Angeles, California 90067
Telephone: (310) 553-3000
Facsimile: (310) 556-2920
Email: achoung@glaserweil.com
Email: rhwang@glaserweil.com
Email: grodgers@glaserweil.com

Jason Sheasby
Cal. Bar No. 205455 (admitted *pro hac vice*)
IRELL & MANELLA LLP
1800 Avenue of the Stars
Los Angeles, California 90067
Telephone: (310) 553-3000
Facsimile: (310) 556-2920
Email: jsheasby@irell.com

Charles Ainsworth
Texas Bar No. 00783521
Robert Christopher Bunt
Texas Bar No. 00787165
PARKER, BUNT & AINSWORTH PC

100 E. Ferguson St., Suite 1114
Tyler, Texas  75702
Telephone: (903) 531-3535
Facsimile: (903) 533-9687
Email: charley@pbatyler.com
Email: rcbunt@pbatyler.com

*Attorneys for Plaintiff and Counterclaim-Defendant*
*KIPB LLC formerly known as KAIST IP US LLC*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a notice of filing of this document on January 17, 2018 via the Court's CM/ECF system.

*/s/ Robert Christopher Bunt*
Robert Christopher Bunt