# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| KAIST IP US LLC, § § § Plaintiff § § v. § § SAMSUNG ELECTRONICS CO., LTD.; § SAMSUNG ELECTRONICS AMERICA, § INC.; SAMSUNG SEMICONDUCTOR, § INC.; SAMSUNG AUSTIN § SEMICONDUCTOR, LLC; § GLOBALFOUNDRIES INC.; § GLOBALFOUNDRIES U.S. INC.; and § QUALCOMM INC., § § Defendants. § § | NO. 2:16-cv-01314-JRG-RSP JURY TRIAL DEMANDED |

**DEFENDANTS' MOTION TO EXCLUDE OPINION AND TESTIMONY OF
PLAINTIFF'S DAMAGES EXPERT ROY WEINSTEIN**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ............................................................................................................. 1

III. Legal Standard ................................................................................................................. 2

IV. Argument ......................................................................................................................... 3

 A. Mr. Weinstein's Profit Damages Opinions Should Be Excluded .......................... 3

 1. Mr. Weinstein's Regression Opinions Should Be Stricken ....................... 3

 2. Mr. Weinstein Does Not Tie Damages To The Smallest Saleable Unit or Properly Apportion Damages .......................................................... 8

 3. Mr. Weinstein's Profit Damages Rely On "Benefits" That Are Not Tied To The Asserted Patent ...................................................................... 10

 4. Mr. Weinstein's Damages Opinions Regarding Qualcomm Contradict Basic Patent Law ...................................................................... 11

 B. Mr. Weinstein's Cost Savings Damages Opinions Should Be Excluded ............ 12

V. CONCLUSION .............................................................................................................. 12

I.  **INTRODUCTION**

Plaintiff's damages expert, Roy Weinstein, opines that Defendants owe a "minimum" of ▮ in damages in this case. Mr. Weinstein's opinions are divorced from the patent-in-suit and violate basic principles of patent damages law articulated by the Federal Circuit and followed by this district. First, Mr. Weinstein employs a wildly inaccurate regression model based on cherry-picked data. Mr. Weinstein's analysis yields a damages "coefficient" that is critical to his calculations, but also completely unreliable, demonstrably biased, and dramatically inflated. Here, Mr. Weinstein repeats flaws that caused his damages opinions to be criticized and stricken in another district. Second, Mr. Weinstein's opinions are largely based on mobile devices rather than the smallest salable unit (the accused processors), an error that has previously led to his opinions being excluded in this Court. Third, Mr. Weinstein determines damages based on alleged incremental benefits of the patented technology that were, in actuality, calculated without regard to the actual patent-in-suit. Fourth, Mr. Weinstein's damages opinions regarding Qualcomm violate black letter law regarding the territorial limitation of a U.S. patent and basic exhaustion principles. Fifth, Mr. Weinstein's cost savings damages opinions improperly assume that all cost savings between two different nodes are entirely attributable to the patent-in-suit. For these reasons, Defendants bring this motion to exclude the opinions and testimony of Mr. Weinstein.

II.  **BACKGROUND**

The most probative evidence of damages in this case is an arm's length, non-litigation, non-exclusive license agreement to the patent-in-suit taken by Intel, a larger player in the bulk FinFET market, for a lump sum payment of ▮. Plaintiff's damages expert, Mr. Weinstein, improperly dismisses this agreement and manufactures a running royalty damages

opinion that totals ▮▮▮▮▮▮▮▮▮▮ for only the period through trial.  The path Mr. Weinstein takes to manufacture this opinion is unreliable and untethered to the patent-in-suit.

Mr. Weinstein's "minimum" damages number is composed of the following:

- Profit Damages: ▮▮▮▮▮ in "speed profit damages" (supposedly based on the amount of smartphone, tablet, and SoC profits attributable to an increase in processor speed) plus ▮▮▮▮▮ in "power efficiency profit damages" (supposedly based on the amount of smartphone, tablet, and SoC profits attributable to an increase in power efficiency); and

- Cost Damages: ▮▮▮▮▮ in "cost savings damages" (supposedly based on the amount of costs saved by the foundries in making 14 nm FinFET wafers).

Ex. 1 at 8-10.  Mr. Weinstein renders a number of flawed opinions in calculating these damages, which are summarized in the table below.

| Damages Category | Mr. Weinstein's Flawed Opinion |
|---|---|
| Profit | A 1% increase in processor speed results in ▮▮ in smartphone profits and ▮▮ in tablet profits.  Ex. 1 at 97-98. |
| Profit | Damages can be calculated based on mobile device profits rather than the smallest saleable unit.  *Id.* at 5-10. |
| Profit | The patent-in-suit provides a ▮▮ increase in processor speed and a ▮▮ increase in power efficiency.  *Id.* at 98, 100. |
| Profit | Qualcomm owes damages for chips it never possesses in the United States and for which a royalty has already been paid.  *Id.* at 3-4. |
| Cost | The patent-in-suit provides a ▮▮ cost savings to a foundry.  *Id.* at 101-102. |

As discussed below, each of these opinions must be excluded under *Daubert*.

## III.   LEGAL STANDARD

Fed. R. Evid. 702 provides that a witness who is "qualified . . . by knowledge, skill, experience, training, or education[,]" may provide opinion testimony if that testimony will assist the trier of fact and "(b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the [witness] has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d).  The witness must possess "specialized knowledge, skill, experience, training, or education in the relevant field[,] . .

." in order to be qualified to express his expert opinion on the topic in issue. *Christopherson v. Allied-Signal Corp.*, 939 F.2d 1106, 1110 (5th Cir. 1991). An expert should not be allowed to testify if she "is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999).

The Supreme Court in *Daubert* charged trial courts with the task of determining whether expert testimony under Rule 702 is "not only relevant, but reliable." *Daubert v. Merrill Dow Pharms.*, 509 U.S. 579, 589 (1993). Further, a court is not required to "'admit opinion evidence that is connected to existing data only by the ipse dixit of the expert[,]'" and may "rightfully exclude expert testimony where a court finds that an expert has extrapolated data, and there is 'too great an analytical gap between the data and the opinion proffered.'" *Burleson v. Tex. Dep't Crim. Justice*, 393 F.3d 577, 587 (5th Cir. 2004) (quoting *GE v. Joiner*, 522 U.S. 136, 146 (1997)).

## IV. ARGUMENT

### A. Mr. Weinstein's Profit Damages Opinions Should Be Excluded

#### 1. Mr. Weinstein's Regression Opinions Should Be Stricken

##### a. Mr. Weinstein's Regression Analysis is Hopelessly Flawed Under *Daubert*

Mr. Weinstein assigns a specific dollar value in profit for each 1% increase in processor speed for smartphones and tablets. Ex. 1 at 97-98, Ex. 2, ¶¶ 18, 50. Namely, Mr. Weinstein opines that a 1% increase in processor speed results in ▇▇▇ in Samsung's smartphone profits and ▇▇▇ in tablet profits. *Id.* This one variable, which he calls the coefficient on processor speed, drives the majority of Mr. Weinstein's ▇▇▇▇▇▇▇ damages estimate. Ex. 3, Tr. at 104:12-18 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

██████████████████████████████████

██████); *see also id.* at 107:8-11.  Mr. Weinstein's approach to reach this opinion involves using a specific methodology known as a "hedonic regression" to estimate a marginal "price" increase associated with changes in processor speed in Samsung's smartphones and tablets.  Ex. 1 at 97-98, Ex. 2, ¶¶ 18, 50.  Mr. Weinstein then assumes that there are no associated costs (other than paying royalties to KAIST IP), and thus concludes that all of these allegedly incremental revenues are incremental profits.  *Id.*  Hedonic regressions have well known limitations and potential serious flaws that can, under certain circumstances, lead to biased and unreliable results.[1]  Those serious flaws are clearly present in Mr. Weinstein's modeling. Mr. Weinstein's modeling, and the conclusions he draws from those models, is flawed and unreliable.

This district has previously excluded under *Daubert* a flawed and arbitrary hedonic regression analysis performed by a damages expert where, as here, the "methodology relies on arbitrary assumptions that have no basis in the facts of this case or hedonic analysis in general." *Stragent, LLC v. Intel Corp.*, No. 6:11-cv-421, 2014 U.S. Dist. LEXIS 106167, at *14 (E.D. Tex. Mar. 6, 2014).  Mr. Weinstein obtained data compiled from Strategy Analytics' SpecTRAX and PriceTRAX databases related to pricing, specifications, and features of smartphones and tablets. Ex. 2, ¶ 6.  The SpecTRAX database tracks over 300 different features and specifications of smartphones.  *Id.*  However, Mr. Weinstein's regression model includes only nine features of smartphones out of the **hundreds** of features that were available in the database.  *Id.*, ¶ 9.  Mr. Weinstein omits these many other features and specifications from this analysis with no explanation.  *Id.*  Indeed, Mr. Weinstein acknowledges that his model fails to account for key phone features such as storage capacity, LTE capability, screen resolution, secondary camera,

---

[1] *See, e.g.*, Jeffrey M. Wooldridge, Introductory Econometrics: A Modern Approach, 6th ed. Cengage Learning, 2016, p. 78, describing omitted variable bias.

-4-

reliability, or durability even though these are important to consumers.  Ex. 3, Tr. at 110:3-114:3.  As the *Stragent* Court recognized, "selecting variables is an important part of hedonic analysis . . . ."  *See Stragent, LLC v. Intel Corp.*, No. 6:11-cv-00421, 2014 U.S. Dist. LEXIS 194938, at *8 (E.D. Tex. March 12, 2014) (clarifying prior order).  Thus, where a damages expert like Mr. Weinstein fails to "explain the methodology he used to select [the] variables[,]" his opinions are unreliable and inadmissible.  *Id*. at *6 (excluding opinions under *Daubert*).  Moreover, the fact that Mr. Weinstein has no technical expertise regarding the examined features further warrants excluding his regression analysis.  *See id.* at *8-9 ("Given the absence of information about Dr. Vellturo's variable selection method, his admitted lack of [technical] expertise raises significant doubts about the reliability of his analysis, and even his capability to conduct such analysis. This provides a reason for excluding both Dr. Vellturo's 42% figure and his entire hedonic analysis.").  Mr. Weinstein should be well aware of the standard articulated in *Stragent* because another Court has excluded his opinions as being "no different than the methodology rejected by Judge Dyk in *Stragent, LLC v. Intel Corp.*"  *Good Tech. Corp. v. MobileIron, Inc.*, No. 5:12-cv-05826-PSG, 2015 U.S. Dist. LEXIS 87347, at *22 (N.D. Cal. July 5, 2015) ("Here, Weinstein similarly counts up the ten Gartner inclusion criteria, assigns equal value to each one, and uses the resulting 30 percent to apportion MobileIron's profits. Weinstein does no investigation into whether any of the criteria is more important than others, or how strongly each criterion is tied to the patents. This is insufficient.").

Mr. Weinstein did not test his model for missing variables.  However, as Defendants' expert has shown, introducing just one of the omitted variables dramatically alters the results, confirming the instability and extreme bias present in Mr. Weinstein's model.  Namely, Defendants' expert added RAM as an independent variable in the regression for smartphone

prices and the coefficient estimate for the processor speed variable dropped from ▇▇▇▇, or ▇▇▇▇ of the coefficient used by Mr. Weinstein as the key driver of his profit split damages. Ex. 9 at 18. Making this change alone, Mr. Weinstein's minimum royalties for Samsung and Qualcomm would be reduced by approximately ▇▇▇▇. *Id.* The vast majority of the hundreds of other omitted variables were never tested by Mr. Weinstein despite the fact that, as discussed below, Mr. Weinstein had the data in his possession yet never produced it to the Defendants.

The data used by Mr. Weinstein for his regression also reflects retail prices of smartphones and tablets that are ▇▇▇▇ higher than Samsung's actual selling prices. Compare Becker Exhibit SLB-14 (Galaxy S6 retail price averaged $692.95 in 2015, $556.21 in 2016) with Weinstein Ex. 11.5 (actual selling price: ▇▇▇▇ in 2015, ▇▇▇▇ in 2016). Leaving aside the fact that this retail-to-wholesale discrepancy alone improperly inflates Mr. Weinstein's claim to a share of Samsung's (as opposed to Walmart's or Amazon's) profits, Mr. Weinstein has no basis and no analysis to argue that the selling prices achieved by Samsung, although lower, respond in the same way to changes in processor speed (or any other feature). This is a fatal disconnect in Weinstein's model that cannot be corrected by simply arguing that one can ask the jury to give his damages a ▇▇▇▇ haircut to adjust for the wholesale-to-retail price difference.

In view of the *Daubert* factors, Mr. Weinstein's regression opinions must be stricken. Mr. Weinstein's opinions have not and cannot be tested, the type of regression he uses is subject to a known critical bias, and his error rate is wildly unacceptable (as illustrated by Dr. Becker's sample calculation). *See Stragent, LLC*, 2014 U.S. Dist. LEXIS 106167, at *8 ("Key considerations are: whether the expert's theory 'can be (and has been) tested'; whether 'the theory or technique has been subjected to peer review and publication'; the 'known or potential

rate of error'; and the 'general acceptance' . . . of a relevant scientific community.") (alteration in original) (quoting *Daubert* at 593-94).

                        b.       **Mr. Weinstein's Regression Opinions Should Be Stricken Based on Failure To Disclose the Underlying Data**

Fed. R. Civ. P. 26(a)(2)(B)(ii) requires an expert report contain "the facts or data considered by the witness in forming them . . . ." Plaintiff and Mr. Weinstein have failed to comply with respect to Mr. Weinstein's regression analysis. Plaintiff served Mr. Weinstein's expert report on February 5, but did not disclose the underlying data from Strategy Analytics that Mr. Weinstein relied upon. On February 8, Defendants informed Plaintiff of the deficiency and demanded all data used for the regression analysis in native form, including statistical code. Ex. 4. Plaintiff failed to respond. On February 15, Defendants again demanded the raw data from Plaintiff, noting that they had already been prejudiced by the delay. *Id.* Subsequently, 10 days after Mr. Weinstein's report was served, Plaintiff produced a data file containing only 14 of the variables from the 300+ available from SpecTrax. Ex. 5. Plaintiff represented that "all the data reviewed or relied upon was produced." Ex. 4.

To attempt to alleviate the prejudice to Defendants without involving the Court, Plaintiff agreed that Defendants would be given an additional week to serve a supplemental rebuttal report on regression. Ex. 4. However, after Defendants served the supplemental report on March 9, Plaintiff attempted to back out of the agreement for no apparent reason other than to try to prevent Dr. Becker from being able to testify regarding the gross flaws in Mr. Weinstein's regression analysis. *Id.* Further, during Mr. Weinstein's March 14 deposition, ***he revealed that his firm has all the data for the hundreds of omitted variables and has not produced it***. Ex. 3, Tr. at 107:12-108:15 ("[REDACTED]

[REDACTED]

Case 2:16-cv-01314-JRG   Document 246   Filed 03/21/18   Page 10 of 17 PageID #:  15182



.").

Plaintiff represented that it had produced all of the data relied upon by Mr. Weinstein. As noted above, Mr. Weinstein has testified that he relied on only the nine features included in the one specification of his model that results in his ▮ billion damages claim. Thus, both Mr. Weinstein and Plaintiff have confirmed that Mr. Weinstein did not test his hedonic regression model for the existence of and extent of missing variable bias, a well-known issue. This alone demonstrates conclusively that Mr. Weinstein's regression model should be excluded. To the extent Plaintiff argues that Mr. Weinstein did test his regression, Plaintiff's continued withholding of relevant data regarding the hundreds of omitted variables, and gamesmanship in regard to Defendants' supplemental regression report are further grounds for excluding his model.

      **2.    Mr. Weinstein Does Not Tie Damages To The Smallest Saleable Unit or Properly Apportion Damages**

"[T]he governing rule is that the ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more." *Ericsson, Inc. v. D–Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). Accordingly, district courts regularly exclude damages opinions that are not tied to the smallest saleable unit or properly apportioned. Indeed, Mr. Weinstein's opinions have previously been excluded by this district for this very reason. *See VirnetX Inc. v. Cisco Systems, Inc.*, No. 6:10-CV-417, slip op. at 4 (E.D. Tex. Mar. 1, 2013) (excluding portions of Roy Weinstein's opinion, finding that "Mr.

Weinstein made no sincere attempt to tie VirnetX's damages to the smallest saleable patent-practicing unit.").

The asserted patent in this case relates to a specific type of transistor. Ex. 7. Plaintiff's infringement contentions focused on a single Exynos processor. Ex. 8. Nevertheless, Mr. Weinstein calculates damages using the retail price of smartphones and tablets. Ultimately, Mr. Weinstein concludes that Plaintiff is entitled to ▬ of damages in smartphone and tablet profits. Ex. 1 at 5-10. Rather than working from a base of wafers (or even chips), Weinstein starts all the way downstream at the retail sale of a finished smartphone or tablet and purports to divine the influence of a single transistor-focused patent on the selling price of a smartphone. *Id.* These opinions are not tied to the smallest saleable unit and should be excluded.

Plaintiff cannot claim that Mr. Weinstein has apportioned out unpatented features. Notably, Mr. Weinstein's offers a per-device running royalty that changes depending on whether the device is a bulk FinFET chip, a smartphone, or a tablet, even though all three devices contain the same accused technology. *See* Ex. 3, Tr. at 89:11-15 ▬

▬

▬ ). For example, Mr. Weinstein's opinion is that Samsung should pay ▬ in damages per smartphone, ▬ in damages per tablet, and ▬ per accused chip. Ex. 1 at 107-108. Thus, Mr. Weinstein increases his royalty for an accused chip more than seven fold if the identical chip is incorporated into a smartphone. Plainly, Mr. Weinstein's calculations capture more than the patented features and must be excluded.

### 3. Mr. Weinstein's Profit Damages Rely On "Benefits" That Are Not Tied To The Asserted Patent

It is a bedrock principle that a damages expert's testimony must be tied to asserted patent. *See VirnetX, Inc. v. Cisco Systems, Inc.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014) ("[A] reasonable royalty analysis requires a court to . . . carefully tie proof of damages to the claimed invention's footprint in the market place.") (alteration in original); *Commonwealth Scientific & Indus. Research Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1304 (Fed. Cir. 2015) ("patent holder should only be compensated for the approximate incremental benefit derived from his invention . . . ."). Mr. Weinstein offers opinions that run afoul of this basic rule and, accordingly, should be excluded.

Mr. Weinstein's profit damages calculations assume that the patent-in-suit provides a ▆▆▆ increase in processor speed and ▆▆▆ increase in power efficiency. Ex. 1 at 98-100. Mr. Weinstein received these numbers from Mr. Witt and states they represent the "incremental benefits provided by the Patent-in-Suit." *Id.* at 84; *see also* Ex. 3, Tr. at 83:6-84:16 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. However, as explained in a separate *Daubert* motion being filed concurrently, Mr. Witt's opinions have nothing to do with the patent-in-suit. Indeed, Mr. Witt did not analyze the patent-in-suit or discuss it in his report, much less compare the incremental benefit of the patented technology to the prior art. *See* Daubert Motion Against Witt. Rather, Mr. Witt assumed that all speed and power efficiency advancements between a prior planar node and 14 nm bulk FinFET node are attributable to the patent-in-suit. *See id.* Because this assumption is not based on actual analysis of the patent (and is divorced from reality), Mr. Witt's estimates are unreliable. Accordingly, Mr. Weinstein's use of Mr. Witt's estimates is likewise inappropriate, and those opinions must be excluded.

4.   **Mr. Weinstein's Damages Opinions Regarding Qualcomm Contradict Basic Patent Law**

The vast majority of Mr. Weinstein's ▮▮▮▮▮▮ in profit damages as to Qualcomm is based on chips made by Globalfoundries and Samsung in the United States and sold to Qualcomm overseas. Ex. 1 at 3-4 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ). This violates basic principles of territorial limits and patent exhaustion. Mr. Weinstein's opinions are all based on direct infringement (*i.e.*, making, selling, using, importing, or offering under 35 U.S.C. § 271). *Id.* at 29; Ex. 3 at 23:14-17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ . But Qualcomm cannot be a direct infringer with respect to chips it never possesses in the United States. *See* 35 U.S.C. § 271(a) ("whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.").

Further, Mr. Weinstein opines that Samsung and Globalfoundries also owe damages for these same chips before they are sold to Qualcomm overseas. Ex. 1 at 3-4.[2] Thus, Mr. Weinstein's opinion of a second royalty from Qualcomm violates the rule against double recovery from a downstream customer. *See In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1366 (Fed. Cir. 2014) ("if Secure Axcess were to collect royalties from Nintendo, this would preclude suit against the Retailers."); *Cellular Communications Equipment LLC v. Apple Inc.*, No. 6:14-cv-251, slip op. at 5 (E.D. Tex. August 26, 2016) ("[I]f [the manufacturer] is found liable and

---

[2] As listed in his damages summary, Mr. Weinstein opines that Samsung and Qualcomm both owe damages for chips Samsung makes for Qualcomm in the U.S. (items 1b and 3a). Likewise, Mr. Weinstein opines that Globalfoundries and Qualcomm both owe damages for chips Globalfoundries makes for Qualcomm in the U.S. (items 2a and 3a).

[the patentee] does collect damages from [the manufacturer], [the patentee] cannot then in turn collect damages from the [customer-reseller], because [the patentee] cannot receive a double recovery for the same sales.").

Therefore, Mr. Weinstein's opinions regarding Qualcomm contradict basic patent law and should be excluded.

### B. Mr. Weinstein's Cost Savings Damages Opinions Should Be Excluded

As discussed above, a damages expert's testimony must be tied to asserted patent. *See VirnetX*, 767 F.3d at 1327; *Commonwealth Scientific*, 809 F.3d at 1304. As with his profit damages opinions, Mr. Weinstein's cost savings opinions violate this rule and should be excluded. Mr. Weinstein's cost savings damages calculations assume the patent-in-suit provides a ▇ cost savings to a foundry, in comparison to a 28 nm node. Ex. 1 at 101-102. Here, Mr. Weinstein relies on Dr. Kuhn's opinion that 28 nm technology is the next-best non-infringing alternative. *Id.* at 101. However, Mr. Weinstein's calculations assume that **all** costs saved in moving from a 28 nm planar node to a 14 nm bulk FinFET node are attributable solely to the patent-in-suit. Dr. Kuhn never offers this opinion (and, indeed, such an opinion would be incredible on its face). Rather, Dr. Kuhn estimates that there was ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 10 at 210 (emphasis added). And, more importantly, Dr. Kuhn's estimate is based on a general industry change from 28 nm to 14 nm, and is not tied to the patent-in-suit. Therefore, it follows that Mr. Weinstein's cost savings estimate is unreliable and should be excluded.

### V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to strike and exclude Mr. Weinstein's opinions regarding regression, damages based on

smartphone and tablet profits, the overstated benefits of the patent-in-suit, damages against Qualcomm, and alleged cost savings damages.

Dated: March 16, 2018

Respectfully submitted,

/s/ *Christopher W. Kennerly*
Allan M. Soobert
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, DC 20005
Telephone:  (202) 551-1822
Facsimile:  (202) 551-0222
allansoobert@paulhastings.com

Christopher W. Kennerly
Joseph J. Rumpler, II
PAUL HASTINGS LLP
1117 S. California Avenue
Palo Alto, CA 94304
Telephone:  (650) 320-1800
Facsimile:  (650) 320-1900
chriskennerly@paulhastings.com
josephrumpler@paulhastings.com

Jeffrey D. Comeau
PAUL HASTINGS LLP
4747 Executive Drive, 12th Floor
San Diego, CA 92121
Telephone: (858) 458-3000
Facsimile: (858) 458-3005
jeffreycomeau@paulhastings.com

Soyoung Jung (*pro hac vice*)
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone: (213) 683-6000
Facsimile: (213) 627-0705
soyoungjung@paulhastings.com

Melissa R. Smith
Texas State Bar No. 24001351
GILLAM & SMITH, LLP

        303 S. Washington Ave.
        Marshall, TX 75670
        Telephone:  (903) 934-8450
        Facsimile:  (903) 934-9257
        melissa@gillamsmithlaw.com

COUNSEL FOR DEFENDANTS SAMSUNG ELECTRONICS CO., LTD.; SAMSUNG ELECTRONICS AMERICA, INC.; SAMSUNG SEMICONDUCTOR, INC.; SAMSUNG AUSTIN SEMICONDUCTOR, LLC; GLOBALFOUNDRIES INC.; GLOBALFOUNDRIES U.S. INC.; and QUALCOMM INCORPORATED

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on this 16th day of March, 2018.  As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A).

        */s/ Christopher W. Kennerly*
        Christopher W. Kennerly

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rules CV-7(h) and (i), counsel for Defendants met and conferred with counsel for the Plaintiff on February 27 and 28 and March 8, 14, 15, and 16, 2018.  No agreement could be reached and these discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

        */s/ Christopher W. Kennerly*
        Christopher W. Kennerly

-15-

## CERTIFICATE OF AUTHORIZATION TO SEAL

I hereby certify that under Local Rule CV-5(a)(7), the foregoing document is filed under seal pursuant to the Court's Protective Order entered in this matter.

*/s/ Christopher W. Kennerly*
Christopher W. Kennerly
