RESTRICTED – ATTORNEYS' EYES ONLY

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| KAIST IP US LLC, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | NO. 2:16-cv-01314-JRG-RSP |
| | § | |
| SAMSUNG ELECTRONICS CO., LTD.; | § | JURY TRIAL DEMANDED |
| SAMSUNG ELECTRONICS AMERICA, | § | |
| INC.; SAMSUNG SEMICONDUCTOR, | § | |
| INC.; SAMSUNG AUSTIN | § | |
| SEMICONDUCTOR, LLC; | § | |
| GLOBALFOUNDRIES INC.; | § | |
| GLOBALFOUNDRIES U.S. INC.; and | § | |
| QUALCOMM INC., | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO
STRIKE THE EXPERT REPORT OF DR. STEPHEN BECKER**

RESTRICTED – ATTORNEYS' EYES ONLY

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ........................................................................................................ 1

II.    ARGUMENT .............................................................................................................. 1

     A.     Dr. Becker Properly Relied On A Fact Witness To Rebut Plaintiff's Newly
          Disclosed Damages Theory ............................................................................ 1

         1.     Dr. Becker Is Not a Conduit for "Expert Testimony" from Mr.
             Samavedam ........................................................................................ 2

         2.     Mr. Samavedam Did Not Withhold Information ....................................... 3

     B.     Dr. Becker's Analysis of the Intel License and Negotiation History is
          Proper ............................................................................................................. 5

     C.     Samsung's FinFET Patents Are Relevant To Dr. Becker's Opinions As
          Non-Infringing Alternatives That Existed in the Prior Art ................................ 8

     D.     Dr. Becker Does Not Rely On Any "Previously Unidentified" Non-
          Infringing Alternatives .................................................................................. 11

     E.     Dr. Becker Provided A Sufficient Basis for His Opinion That the
          ███████████████████ Is A Comparable Agreement ................................... 13

III.    CONCLUSION ........................................................................................................ 15

RESTRICTED – ATTORNEYS' EYES ONLY

## TABLE OF AUTHORITIES

Page

**Cases**

*Abbott Point of Care, Inc. v. Epocal, Inc.*,
  868 F. Supp. 2d 1310 (N.D. Ala. 2012) .................................................................11

*Advanced Tech. Incubator, Inc. v. Sharp Corp.*,
  No. 5:09-CV-135, 2010 WL 11451797 (E.D. Tex. Mar. 31, 2010) .........................9

*Beneficial Innovations, Inc. v. Advance Publ'ns, Inc.*,
  No. 2:11-CV-229-JRG-RSP, 2014 WL 12603495 (E.D. Tex. July 9, 2014) .........................12

*CardSoft, Inc. v. Verifone Sys., Inc.*,
  No. 2:08-CV-98-RSP, 2012 WL 1995302 (E.D. Tex. June 4, 2012) .......................9

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
  No. CIV.A. 09-290, 2012 WL 6562221 (W.D. Pa. Dec. 15, 2012), *aff'd*, 807
  F.3d 1283 (Fed. Cir. 2015) ......................................................................................7

*Commonwealth Sci. & Indus. Research Org. v. Cisco Sys., Inc.*,
  809 F.3d 1295 (Fed. Cir. 2015) .............................................................................6, 9

*Cook Inc. v. Endologix, Inc.*,
  No. 1:09-CV-01248-TWP, 2012 WL 4514036 (S.D. Ind. Oct. 1, 2012) ...............11

*Drone Techs., Inc. v. Parrot S.A.*,
  No. 14CV0111, 2015 WL 12752847 (W.D. Pa. Apr. 9, 2015) ...............................6

*Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*,
  No. 2:15-CV-00011-RSP, 2017 WL 5137401 (E.D. Tex. Nov. 4, 2017)............................5, 8

*Hochstein v. Microsoft Corp.*,
  No. 04-73071, 2009 WL 2022815 (E.D. Mich. July 7, 2009) ................................11

*In Cameco Indus. v. La. Cane Mfg., Inc.*,
  No. 92-3158, 1995 WL 468234 (E.D. La. July 27, 1995) ......................................11

*Intelligent Verification Sys., LLC v. Microsoft Corp.*,
  No. 2:12-CV-525, 2015 WL 1518099 (E.D. Va. Mar. 31, 2015).............................9

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
  694 F.3d 51 (Fed. Cir. 2012) ............................................................................14, 15

*Open Text S.A. v. Box, Inc.*,
  No. 13-cv-04910-JD, 2015 U.S. Dist. LEXIS 11318 (N.D. Cal. Jan. 29, 2015) ......................3

RESTRICTED – ATTORNEYS' EYES ONLY

## TABLE OF AUTHORITIES
(continued)

**Page**

*Procter & Gamble Co. v. Paragon Trade Brands, Inc.*,
  989 F. Supp. 547 (D. Del. 1997) ..................................................................................5

*Pulse Med. Instruments, Inc. v. Drug Impairment Detection Servs., LLC*,
  858 F. Supp. 2d 505 (D. Md. 2012) ............................................................................8

*TQP Devel., LLC v. Merrill Lynch & Co.*,
  No. 2:08-CV-471-WCB, 2012 U.S. Dist. LEXIS 112613, 2012 WL 3283354
  (E.D. Tex. Aug. 10, 2012) ..........................................................................................3

*VirnetX, Inc. v. Cisco Sys., Inc.*,
  767 F.3d 1308 (Fed. Cir. 2014) ..................................................................................9

*Wonderland NurseryGoods Co. v. Thorley Indus., LLC*,
  No. CIV.A. 12-196, 2014 WL 241751 (W.D. Pa. Jan. 22, 2014) ..............................9

RESTRICTED – ATTORNEYS' EYES ONLY

## I.      INTRODUCTION

Plaintiff's Motion to Strike the Expert Report of Dr. Stephen Becker, Defendants'

damages expert, should be denied.  First, Plaintiff's claim that Dr. Becker relied on undisclosed

evidence from a Globalfoundries witness is false; Dr. Becker relies on precisely what the witness

said at deposition.  Second, Plaintiff attacks Dr. Becker for evaluating the negotiation history of

the lone license to the asserted patent.  But this approach that has been deemed reliable by this

Court and others, and Plaintiff's own damages expert agrees.  Third, Plaintiff seeks to exclude

relevant prior art, non-infringing alternative patents because they are owned by Samsung.  But

this Court and others have approved the use of such evidence.  Fourth, Plaintiff alleges that Dr.

Becker relies on two non-infringing alternatives that were "previously unidentified."  This is also

false; both were properly disclosed, as confirmed by Defendants' contentions and Plaintiff

counsel's statements in depositions.   Finally, Plaintiff criticizes Dr. Becker's use of a

comparable FinFET patent agreement, even though such agreements are regularly admitted

under *Georgia-Pacific* factor 2.  As each of Plaintiff's alleged bases for exclusion is unfounded,

Defendants respectfully request that the Court deny Plaintiff's motion in its entirety.

## II.     ARGUMENT

### A.      Dr. Becker Properly Relied On A Fact Witness To Rebut Plaintiff's Newly Disclosed Damages Theory

In its opening damages expert report, Plaintiff revealed for the first time that it would

seek damages based on alleged cost savings purportedly attributable to the asserted patent.

Before that report, Plaintiff refused to disclose how it intended to claim damages in this case.  Ex.

1[1] (supplemental initial disclosures stating "KAIST IP US defers the disclosure of computation

of damages until the time for Expert Disclosures because it will rely on a damages expert."); Ex.

_____

[1] All exhibits are attached to the Declaration of Christopher W. Kennerly ("Decl.") filed herewith.

2 (refusing to answer interrogatory regarding reasonable royalties sought from Defendants).

Now, Plaintiff claims unfair surprise at Defendants' **rebuttal** damages expert report pointing out

that Plaintiff's damages expert, Mr. Weinstein, is flat wrong in alleging a cost savings.

Mr. Weinstein opined in his opening report that Defendants' accused 14 nm bulk FinFET

technology saves ███ in costs compared to the next best alternative.  Ex. 3.  Mr. Weinstein's

cost damages estimate is based on an unreliable methodology (*see* Dkt. No. 225), however, and

his conclusion is simply incorrect.  For example, as Dr. Becker explained in his rebuttal report,

the accused 14 nm bulk FinFET process is equivalent in cost (and perhaps more expensive) than

a different 14 nm SOI FinFET process (a non-infringing alternative).  Ex. 4, ¶¶ 144, 145, 307,

308.  Plaintiff's arguments to exclude these rebuttal opinions and underlying facts are insufficient.

Mot. at 2-5.  First, Plaintiff oddly argues that a Globalfoundries witness, Srikanth Samavedam, is

offering expert testimony through Dr. Becker.  *Id.*  Second, Plaintiff claims that Mr. Samavedam

withheld information during his deposition.  *Id.*  Plaintiff is wrong on both counts and its motion

should be denied.

### 1.    Dr. Becker Is Not a Conduit for "Expert Testimony" from Mr. Samavedam

Mr. Samavedam is a Globalfoundries engineer ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████  Dr. Becker confirmed these points

through a conversation with Mr. Samavedam and included cost estimates from Mr. Samavedam

in his rebuttal report.  Ex. 4, ¶¶ 144, 145, 307, 308.  This does not amount to "expert testimony"

from Mr. Samavedam, as Plaintiff claims.  And the fact that Dr. Becker did not purport to make

RESTRICTED – ATTORNEYS' EYES ONLY

the estimates himself is of no moment.[2]  Rather, "courts regularly permit experts to rely on lay

witnesses for estimates of design-around costs[,]" including with respect to non-infringing

alternatives.  *Open Text S.A. v. Box, Inc.*, No. 13-cv-04910-JD, 2015 U.S. Dist. LEXIS 11318, at

\*23 (N.D. Cal. Jan. 29, 2015) (denying motion to exclude expert opinion that relied on

Defendant employee for estimates regarding non-infringing alternative); *see also TQP Devel.,*

*LLC v. Merrill Lynch & Co.,* No. 2:08-CV-471-WCB, 2012 U.S. Dist. LEXIS 112613, 2012 WL

3283354, at \*2 (E.D. Tex. Aug. 10, 2012) (allowing expert to estimate design-around costs using

technical expert and a "senior manager of network engineering.").  Mr. Samavedam listed the

information he would look at to perform the cost comparison, none of which suggests scientific,

technical, or specialized knowledge is required.  Indeed, Plaintiff's own damages expert, Mr.

Weinstein, similarly relied on Mr. Samavedam's deposition for the same type of cost estimates

relating to 14 nm SOI FinFET and 14 nm bulk FinFET:



Ex. 3, ¶ 176, fn. 354 (emphasis added).  Plaintiff's argument that Dr. Becker acted as a conduit

for an undisclosed expert falls flat.

### 2.  Mr. Samavedam Did Not Withhold Information

Plaintiff next alleges that "Mr. Samavedam refused to testify about, and claimed to have

no knowledge of, the same categories of information that he has now provided to Becker" and

"disclaimed all knowledge of the information contained in the chart at his January 4 deposition."

---

[2] Plaintiff alleges that "Dr. Becker admitted in his deposition that he has no expertise in cost
evaluation for the technical processes described above[.]"  Mot. at 3.  As explained above, this
argument is a red herring.

Mot. at 2-4.  This is demonstrably incorrect.  As explained above, Dr. Becker relies on the fact

that 14 nm SOI FinFET was a commercially-feasible alternative to 14 nm bulk FinFET and that

the processes were roughly comparable in terms of manufacturing costs, which is exactly what

Mr. Samavedam said at deposition:



Ex. 5 (Tr. at 145:25–146:15) (emphasis added).  Plaintiff omits this unfavorable testimony from

its motion and, instead, cites testimony that has nothing to do with the information Dr. Becker

relied on.  Namely, Plaintiff quotes testimony indicating Mr. Samavedam was not familiar with

*Id.* at 4.  Plaintiff

cannot credibly argue that Mr. Samavedam refused to provide cost information at his deposition

given that, as discussed above, ***Plaintiff's own damages expert cites Mr. Samavedam's***

RESTRICTED – ATTORNEYS' EYES ONLY

***testimony for cost estimates between 14 nm SOI FinFET and 14 nm bulk FinFET***.  Ex. 3, fn. 354.[3]  Both of Plaintiff's alleged bases fail and its motion should be denied.

### B.   Dr. Becker's Analysis of the Intel License and Negotiation History is Proper

The most salient damages evidence in this case is a license to the patent-in-suit by Intel, the largest player in the bulk FinFET industry, for a ███████████████████.  Ex. 4, ¶ 92; *see also Procter & Gamble Co. v. Paragon Trade Brands, Inc.*, 989 F. Supp. 547, 607 (D. Del. 1997) ("Courts and commentators alike have recognized that the royalties received by the patentee under prior and existing licenses for patented technology is often the 'most influential factor' in determining a reasonable royalty").  The Intel license was negotiated by P&IB, a Korean entity representing the named inventor.  P&IB is the same entity that would have negotiated opposite Defendants in a hypothetical negotiation. ██████████████████████████████ ███████████████████████████████████████████ Dr. Becker relies on the Intel license itself as well as evidence from the negotiating history between P&IB and Intel.  Ex. 4, ¶ 202-221.  Plaintiff's motion to exclude Dr. Becker's straight-forward analysis of the P&IB/Intel negotiating history is merely an attempt to prevent the jury from hearing that, while Plaintiff now seeks billions in damages, Plaintiff's affiliate P&IB willingly accepted just ███████ from Intel to license the same patent under very similar circumstances.

First, Plaintiff attempts to portray Dr. Becker's analysis of the P&IB/Intel negotiation as a completely new and untested methodology.  This is plainly wrong.  As this district and others have recognized, license negotiating history is relevant to determination of a reasonable royalty. *Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, No. 2:15-CV-00011-RSP, 2017 WL 5137401, at *9 (E.D. Tex. Nov. 4, 2017) ) (denying motion to strike damages report that relied

---

[3] Plaintiff moved for leave to supplement its expert opinions regarding 14 nm bulk versus SOI processes to respond to Dr. Becker.  Dkt. No. 215.  As Defendants' opposition explains, leave should be denied.  Dkt. No. 258.

on Plaintiff's license offer to a third party, noting that "[t]he use of similar evidence has been condoned by the Federal Circuit in past cases."); *Commonwealth Sci. & Indus. Research Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1303 (Fed. Cir. 2015) ("the district court did not err in valuing the asserted patent with reference to end product licensing negotiations."); *Drone Techs., Inc. v. Parrot S.A.*, No. 14CV0111, 2015 WL 12752847, at *4 (W.D. Pa. Apr. 9, 2015) ("Defendants' positions when negotiating with Lee are relevant to Plaintiff's damages claims and the relevance of this evidence is not substantially outweighed by the risk of any factor identified in Federal Rule of Evidence 403.").  And Plaintiff's own damages expert agrees.  Ex. 6 (Tr. at 72:25-73:21)

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

        Here, ███████████████████████████        ████████.  Ex. 4, ¶ 202-221

Given that P&IB is a sophisticated patent licensing entity, it stands to reason that P&IB did not believe that the total licensing revenue it could obtain for the patent would exceed ████████. P&IB also offered a non-exclusive license to Intel for ████████, indicating its correct belief that Intel holds the lion's share of the bulk FinFET market.  *Id.*  The parties to the hypothetical negotiation would have been aware of this negotiation history and would have considered it, as Plaintiff's own expert confirms.  Ex. 6 (Tr. at 72:25-73:21).  Accordingly, Dr. Becker treats these as relevant data points in developing his damages opinion.  Ex. 4, ¶ 202-221.  Dr. Becker does not apply a "cap," as Plaintiff asserts.

        Second, Plaintiff alleges that Dr. Becker applies the wrong hypothetical negotiation date. Again, this is incorrect.  Dr. Becker, like Plaintiff's damages expert, analyzes a hypothetical negotiation occurring at the time of first alleged infringement for each Defendant in 2015.  *Id.,* ¶

RESTRICTED – ATTORNEYS' EYES ONLY

11.  The fact that the Intel licensing evidence is from 2012, does not render it unreliable.  Even Plaintiff's damages expert agrees that the parties to the hypothetical negotiation would have considered this evidence.  Ex. 6 (Tr. at 72:25-73:21).  Having acknowledged that the Intel licensing evidence is from 2012 and the hypothetical negotiation is in early 2015, Dr. Becker then devotes an entire section of his rebuttal report, titled "Timing of Intel Negotiations versus Hypothetical Negotiations with Defendants," to his consideration of whether that difference in time would affect the reasonable royalty negotiated with Defendants.  Ex. 4, ¶¶ 222-236.  Thus, Plaintiff's claim that Dr. Becker "performed no analysis" about the value of the patent in 2015 is plainly false.  *See* Mot. at 7.[4]  And Plaintiff cites no authority for its apparent position that highly relevant licensing evidence from just three years prior to the hypothetical negotiation is *per se* unreliable (which Plaintiff's own expert disagrees with).

Third, Plaintiff asserts that Dr. Becker's opinions about P&IB's negotiation with Intel should be excluded because he is not an expert in patent license negotiations.  Plaintiff cites no authority saying a damages expert must also be a patent license negotiation expert.  Indeed, other courts have rejected this argument.  S*ee Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, No. CIV.A. 09-290, 2012 WL 6562221, at *12 (W.D. Pa. Dec. 15, 2012), *aff'd*, 807 F.3d 1283 (Fed. Cir. 2015) (finding "an appropriately credentialed individual on the issue of intellectual property

---

[4] Similarly, Plaintiff wrongly says Dr. Becker "did nothing to compare the different positions of Intel, Qualcomm, and Samsung."  Mot. at 7.  For example, Dr. Becker explains in his report that

██████████████████████████████████████████████████████

*Id.*, ¶ 236.

RESTRICTED – ATTORNEYS' EYES ONLY

damages may testify at trial as to application of the Georgia–Pacific factors, including the artificial hypothetical negotiation, despite a lack of experience in actual negotiations."); *Pulse Med. Instruments, Inc. v. Drug Impairment Detection Servs., LLC*, 858 F. Supp. 2d 505, 510 (D. Md. 2012) (finding damages expert testimony admissible because "[n]o separate showing of expertise in negotiating is needed.").  Dr. Becker is well qualified to testify regarding a *Georgia-Pacific* analysis based on the licensing evidence in this case.  Dr. Becker holds an MBA with a concentration in finance, and a doctorate in public policy.  Ex. 4, ¶ 4.  He is Director of Applied Economics Consulting Group, Inc., which conducts economic and financial analysis for a wide variety of clients across a number of industries.  *Id.*  He has been engaged to assist in analyzing damages claims in numerous cases over the past 20+ years (*id.*, ¶ 5), and has testified as a damages expert in patent matters dozens of times, including at a number of trials in this district. *Id.,* Appx. B.

Fourth, Plaintiff rehashes its prior flawed arguments that the jury will be confused by Dr. Becker's opinions.  Plaintiff's disagreements with Dr. Becker's approach, while they lack merit, can be fully addressed through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof . . . ."  *See Ericsson Inc.*, 2017 WL 5137401, at *9 (denying motion to strike).

Plaintiff's motion should be denied in this regard as well.

**C.     Samsung's FinFET Patents Are Relevant To Dr. Becker's Opinions As Non-Infringing Alternatives That Existed in the Prior Art**

Plaintiff seeks to exclude testimony regarding Samsung patents that constitute relevant prior art and non-infringing alternatives.  Mot. at 11-13.  Dr. Becker discusses these patents in the context of *Georgia-Pacific* factor 13.  Ex. 4, ¶¶ 156, 167.  As Dr. Becker explains:

> Consideration of Factor 13 is required in order to focus the analysis on the incremental benefits provided by the asserted

RESTRICTED – ATTORNEYS' EYES ONLY

> patent(s). The reasonable royalty should be assessed and based on those benefits provided by the patented invention(s), as opposed to those provided by the alleged infringer or available from existing products or services.

*Id.,* ¶ 156.  This is entirely consistent with basic Federal Circuit law on damages.  *See VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014) ("[A] reasonable royalty analysis requires a court to . . . carefully tie proof of damages to the claimed invention's footprint in the market place.") (alteration in original); *Commonwealth Sci.,* 809 F.3d at 1304 (finding a "patent holder should only be compensated for the approximate incremental benefit derived from his invention . . . .").  In this vein, courts have recognized that a Defendant's own patents can be admissible as prior art or non-infringing alternatives (not to mention other bases for admissibility such as to rebut allegations of infringement under the Doctrine of Equivalents, to rebut allegations of copying and willfulness, etc.).  *See Advanced Tech. Incubator, Inc. v. Sharp Corp.*, No. 5:09-CV-135, 2010 WL 11451797, at *2 (E.D. Tex. Mar. 31, 2010) ("Defendants can use their own patents or third party patents to argue invalidity and lack of willfulness . . . ."); *CardSoft, Inc. v. Verifone Sys., Inc.*, No. 2:08-CV-98-RSP, 2012 WL 1995302, at *1 (E.D. Tex. June 4, 2012) ("Defendants may refer to [a prior art patent owned by one of the Defendants]."); *Wonderland NurseryGoods Co. v. Thorley Indus., LLC*, No. CIV.A. 12-196, 2014 WL 241751, at *2 (W.D. Pa. Jan. 22, 2014) (finding Defendants' patents admissible and relevant to Georgia-Pacific factor 13); *Intelligent Verification Sys., LLC v. Microsoft Corp.*, No. 2:12-CV-525, 2015 WL 1518099, at *11 (E.D. Va. Mar. 31, 2015) (denying motion *in limine* to exclude evidence of defendant's patents, noting "[a] defendant's patents are relevant to rebut a claim of willful infringement, and any relevance to the development process and damages defense will be determined based on the Defendants' factual context and proffered purpose of the evidence at trial.").

RESTRICTED – ATTORNEYS' EYES ONLY

Dr. Becker cites Samsung's early 2000s FinFET patents in order to rebut the outrageous position taken by Plaintiff's experts that every advance and benefit of bulk FinFET technology over planar FET technology is attributable solely to the asserted patent.  *See* Dkt. Nos. 225, 231.  Essentially, Plaintiff asserts that no FinFET patents existed in the prior art.  This is plainly not true (as admitted in the '055 Patent itself) and Defendants are entitled to rebut that position by presenting specific prior art FinFET patents, including Samsung's '813 Patent.

Plaintiff argues there is no evidence that Samsung practices its own patents.  *See* Mot. at 12.  But Samsung engineer Tai-su Park confirmed at deposition that Samsung's bulk FinFET technology practices Samsung's '813 Patent.  Ex. 8 (Tr. at 110:18-111:10).  Further, Dr. Subramanian has explained that these patents, such as the '813 Patent, are tied to Samsung's independent development of the accused technology.  Ex. 7, ¶¶ 242-245.  Regardless, Plaintiff cites no authority for its apparent position that a defendant's patent is inadmissible *per se* unless the defendant proves it has been practiced, with the same level of rigor required to prove that the defendant infringes the patent-in-suit.

Plaintiff also argues that Dr. Becker should not be allowed to present Samsung's patents as evidence of non-infringement.  *See* Mot. at 11-12.  Dr. Becker, of course, has no intention of opining about non-infringement.  As a damages expert, his report must assume infringement.  *See* Ex. 4, ¶ 10.  And, in general, neither Samsung nor any of its experts claims that Samsung's patents demonstrate non-infringement.  Plaintiff's arguments and cases on this point (*see* Mot. at 11-12.) completely miss the mark.

Finally, Plaintiff argues that while Samsung's FinFET patents are relevant, "they should still be excluded because of their significant potential to confuse the jury."  *Id.* at 12.  Plaintiff cites several cases from other districts, which are all inapposite and involved later-issued patents

-10-

of accused infringers offered for impermissible purposes, such as to support non-infringement. *In Cameco Indus. v. La. Cane Mfg., Inc.*, No. 92-3158, 1995 WL 468234, at *6 (E.D. La. July 27, 1995), Defendant sought to introduce its later-issued patent to demonstrate non-infringement: "Louisiana Cane argues that the patent is relevant because the application submitted in support of the patent details differences between its machine and the machine claimed in plaintiff's patent." *See also Abbott Point of Care, Inc. v. Epocal, Inc.*, 868 F. Supp. 2d 1310, 1329 (N.D. Ala. 2012) (distinguishing *Cameco*, finding evidence of Defendants own patents admissible, noting "the potential for jury confusion could be reduced by use of a limiting instruction.").  In *Hochstein v. Microsoft Corp.*, No. 04-73071, 2009 WL 2022815, at *2 (E.D. Mich. July 7, 2009), the court found that Microsoft's later patent was not admissible to show what features drove commercial success, but could be admissible to rebut Plaintiffs' doctrine of equivalents arguments.  In *Cook Inc. v. Endologix, Inc.*, No. 1:09-CV-01248-TWP, 2012 WL 4514036, at *5-6 (S.D. Ind. Oct. 1, 2012), the court found that "Endologix may present evidence of its own patents for the issues of infringement under the doctrine of equivalents and willful infringement."

Plaintiff's improper attempt to exclude relevant prior art and damages evidence relating to Samsung's FinFET patents should be denied.

## D. Dr. Becker Does Not Rely On Any "Previously Unidentified" Non-Infringing Alternatives

Plaintiff misleadingly suggests that it sent an interrogatory asking Defendants to identify non-infringing alternatives.  This is false.  Plaintiff's interrogatory sought Defendants' "position" regarding the appropriate amount of damages, including a vague reference about whether non-infringing alternatives exist:

> Identify and state the complete factual and legal basis for Your position relating to the theories, amounts, and methods of calculating the reasonable royalty to which KAIST IP US will be entitled if You are found liable for infringing the '055 Patent,

> including but not limited to Your position relating to the proper royalty base and the proper royalty rate for assessing damages for Your alleged infringement of the '055 Patent, the presence or absence of non-infringing alternatives, and the Person or Persons most knowledgeable about the relevant facts on which Your position is based, and all Documents, facts, or evidence concerning, or which allegedly support, provide a basis for, contradict, or otherwise are relevant to Your position.

Ex. 9 (Interrog. No. 13).  Defendants objected to this interrogatory as seeking premature expert opinions (Ex. 10), which Plaintiff never challenged.  Indeed, Plaintiff made the same objection to disclosing its damages position.  *See* Ex. 1; Ex. 2.  Plaintiff cannot claim that it genuinely sought identification of non-infringing alternatives through this interrogatory.

Moreover, Defendants ***did*** disclose the two non-infringing alternatives Plaintiff seeks to exclude, Samsung's '813 Patent and U.S. Patent No. 6,525,403 to Inaba ("Inaba").  These are both prior art references disclosed in Defendants' invalidity contentions (Ex. 14), interrogatory responses (Ex. 11), and invalidity expert report (Ex. 7).  As Dr. Becker explains in his rebuttal report, to the extent the '813 Patent and Inaba are not found to be invalidating, they represent non-infringing alternatives.  Ex. 4, ¶ 143.  Using prior art as a non-infringing alternative is well-established as an approved damages methodology.  *See, e.g., Beneficial Innovations, Inc. v. Advance Publ'ns, Inc.*, No. 2:11-CV-229-JRG-RSP, 2014 WL 12603495, at *3 (E.D. Tex. July 9, 2014) (denying motion to exclude damages expert, finding that damages opinions based on prior art as non-infringing alternative to be "sufficiently reliable . . . .").

Plaintiff's actions in this case confirm it was well aware of the '813 Patent and of Inaba.  Notably, Plaintiff specifically asked about both non-infringing alternatives during depositions of Defendants' Rule 30(b)(6) witnesses.  *See* Ex. 8 (Tr. at 110:18-113:10) (asking Tai-su Park about '813 Patent); Ex. 11 (Tr. at 188:19-189:12) (asking Dongwon Kim about Inaba); Ex. 12

(Tr. at 58:18-59:6) (Plaintiff's counsel commenting to witness that Inaba has "already been disclosed in this case").

Plaintiff's attempt to exclude evidence and testimony regarding these non-infringing alternatives should also be denied.

### E.    Dr. Becker Provided A Sufficient Basis for His Opinion That the ▇▇▇▇▇▇ Agreement Is A Comparable Agreement

The second *Georgia-Pacific* factor considers "[t]he rates paid by the licensee for the use of other patents comparable to the patent-in-suit."  Dr. Becker opined that a certain patent sale agreement between ▇▇▇▇▇▇▇▇▇▇▇▇ is sufficiently comparable under *Georgia-Pacific* factor 2.  *See* Ex. 4, ¶¶ 99—106, 193—194, 238—241.   Plaintiff now seeks to exclude Dr. Becker's opinions regarding this plainly relevant agreement.  *See* Mot. at 14.

As Dr. Becker explained, the agreement involved ▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇.  Ex. 4, ¶ 100.  Further, Defendants' technical expert Dr. Subramanian informed Dr. Becker "that one of the patents sold as part of this agreement – U.S. Patent No. 7,115,947 – is related directly to FinFET transistors and is technologically comparable to the [asserted patent]." *Id.*, ¶ 193.  The timing of the agreement ▇▇▇▇▇ also makes it relevant.  *See id.*, ¶ 240 ("The ▇▇▇ agreement would have been known to the parties at the hypothetical negotiations in the first half of 2015 and represents a market transaction for relevant patent rights at a time that the major semiconductor companies like Intel, Samsung, GlobalFoundries and TSMC were all pursuing bulk FinFET devices at or below the 22nm node").  Indeed, Dr. Becker opines that "the parties would be aware of the fact that ▇▇▇▇ acquired relevant technology in exchange for lump-sum consideration," providing "further evidence that the specific facts of this case support the use of a fully paid-up lump-sum license structure." *Id.*, ¶ 194.  Accordingly, this transaction is "economically comparable, as it reflects

-13-

RESTRICTED – ATTORNEYS' EYES ONLY

 acquiring technology specific to FinFET design and manufacturing processes at a time that is relevant to the hypothetical negotiation." *Id.*, ¶ 238. Thus, Dr. Becker concludes that, in his opinion, the ▮▮▮▮▮ lump-sum payment by ▮▮▮▮▮ provides a highly conservative and relevant market data point informing on the determination of the reasonable royalty. *Id.*, ¶ 241.[5]

As discussed above, Dr. Subramanian explained in his rebuttal report his basis for telling Dr. Becker one of the patents ▮▮▮▮▮▮▮▮▮▮ is technologically comparable:

> The '947 Patent generally relates to FinFET devices. Both patents relate to FinFET devices formed on a substrate and including a fin extending from that substrate. The '055 Patent limits its substrate to a bulk silicon material, while the '947 Patent does not limit the substrate material.
>
> * * *
>
> Both the alleged inventions of the '055 Patent and the '947 Patent represent, at most, an incremental improvement over the FinFET prior art. For example, the alleged invention of the '947 Patent "generally relates to Fin-type field effect transistors (FinFET) and more particularly to an improved FinFET structure that includes multiple gate dielectric thicknesses." See '947 Patent at 1:7-10. Further, similar the '055 Patent, which allegedly offers improvements over "conventional" FinFETs (see, e.g., '055 Patent at 6:11–26), the '947 Patent provides that its "invention . . . provides a method and structure which improves the performance of FinFETs." '947 Patent at 1:21–25. The expected use of both inventions would be in the fabrication of FinFET devices.

Ex. 13, ¶¶ 274—275 (alteration in original).

Plaintiff alleges incorrectly that Dr. Becker's analysis of the ▮▮▮▮▮ agreement is inadmissible under the standard set forth in *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51 (Fed. Cir. 2012). But the ▮▮▮▮▮ agreement is far different from the licensing

---

[5] Plaintiff's damages expert also analyzed the ▮▮▮▮▮ agreement under *Georgia-Pacific* factor 2. Ex. 3, ¶¶ 70-71; Weinstein Ex. 9. However, Plaintiff's expert cursorily concluded, without analyzing the underlying technology (which he is not qualified to do in any event), that none of Samsung's agreements were relevant. *Id.*, ¶ 71. A difference of opinion between the experts does not warrant excluding Dr. Becker's opinions here.

RESTRICTED – ATTORNEYS' EYES ONLY

evidence criticized in *LaserDynamics*.  In *LaserDynamics*, "no evidence shows that [a licensing survey] even involves a disc discrimination method [*i.e.*, comparable technology]."  *Id.* at 80.  Here, as Dr. Subramanian explained, the ███████████ agreement involved comparable FinFET technology.  In *LaserDynamics*, the licensing survey "was not even limited to any particular industry . . . ."  *Id.*  Here, as Dr. Becker explained, the ████████████████ was executed between two major innovators in the semiconductor industry, ██████████████████████ ████████████████  In *LaserDynamics*, the licensing evidence "cannot be reconciled" with the actual licenses to the patent-in-suit and served no purpose other than to "to increase the reasonable royalty rate above rates more clearly linked to the economic demand for the claimed technology."  *Id.* (quoting *ResQNet.com, Inc. v. Lansa, Inc.,* 594 F.3d 860, 872-73 (Fed. Cir. 2010)).  Here, Dr. Becker explained how the ███████ agreement █████████████████ ██████ is entirely consistent with the sole existing license to the asserted patent ███████ ████████████████.  Ex. 4, ¶¶ 260, 266.

Plaintiff criticizes Dr. Becker for allegedly not analyzing things such as whether "the patents at issue were ever used by ████████ "whether ███████ planned on using them in the near future," or the "[quantification of] what benefits, if any, were provided by the patents."  Mot. at 15.  Plaintiff cites no authority that these made-up issues must be addressed for a comparable license to be admitted.  In any event, analysis of the agreement by Dr. Becker and the underlying technology by Dr. Subramanian is more than sufficient.

For all of these reasons, Dr. Becker's opinions regarding the ███████████ agreement should not be excluded.

## III.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's motion in its entirety.

RESTRICTED – ATTORNEYS' EYES ONLY

Dated:  April 2, 2018

Respectfully submitted,

*/s/ Christopher W. Kennerly*

Allan M. Soobert
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, DC 20005
Telephone:  (202) 551-1822
Facsimile:  (202) 551-0222
allansoobert@paulhastings.com

Christopher W. Kennerly
Joseph J. Rumpler, II
PAUL HASTINGS LLP
1117 S. California Avenue
Palo Alto, CA 94304
Telephone:  (650) 320-1800
Facsimile:  (650) 320-1900
chriskennerly@paulhastings.com
josephrumpler@paulhastings.com

Jeffrey D. Comeau
PAUL HASTINGS LLP
4747 Executive Drive, 12th Floor
San Diego, CA 92121
Telephone: (858) 458-3000
Facsimile: (858) 458-3005
jeffreycomeau@paulhastings.com

Soyoung Jung (*pro hac vice*)
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone: (213) 683-6000
Facsimile: (213) 627-0705
soyoungjung@paulhastings.com

Melissa R. Smith
Texas State Bar No. 24001351
GILLAM & SMITH, LLP
303 S. Washington Ave.
Marshall, TX 75670
Telephone:  (903) 934-8450
Facsimile:  (903) 934-9257
melissa@gillamsmithlaw.com

RESTRICTED – ATTORNEYS' EYES ONLY

COUNSEL FOR DEFENDANTS
SAMSUNG ELECTRONICS CO., LTD.;
SAMSUNG ELECTRONICS AMERICA,
INC.; SAMSUNG SEMICONDUCTOR,
INC.; SAMSUNG AUSTIN
SEMICONDUCTOR, LLC;
GLOBALFOUNDRIES INC.;
GLOBALFOUNDRIES U.S. INC.; and
QUALCOMM INCORPORATED

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on this 2nd day of April, 2018.  As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and by email.

*/s/ Christopher W. Kennerly*
Christopher W. Kennerly

## CERTIFICATE OF AUTHORIZATION TO SEAL

I hereby certify that under Local Rule CV-5(a)(7), the foregoing document is filed under seal pursuant to the Court's Protective Order entered in this matter.

*/s/ Christopher W. Kennerly*
Christopher W. Kennerly