**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| KAIST IP US LLC,<br><br>        Plaintiff and Counterclaim-Defendant,<br><br>        v.<br><br>SAMSUNG ELECTRONICS CO., LTD.;<br>SAMSUNG ELECTRONICS AMERICA, INC.;<br>SAMSUNG SEMICONDUCTOR, INC.;<br>SAMSUNG AUSTIN SEMICONDUCTOR, LLC;<br>GLOBALFOUNDRIES, INC.;<br>GLOBALFOUNDRIES U.S. INC.; and<br>QUALCOMM INC.,<br><br>        Defendants and Counterclaim-Plaintiffs. | Case No.: 2:16-cv-01314-JRG-RSP<br><br>JURY TRIAL DEMANDED<br><br>Honorable Rodney Gilstrap |

**<u>MOTIONS *IN LIMINE* BY KAIST IP US</u>**

1455689.9

KIPB LLC, formerly known as KAIST IP US LLC ("KAIST IP US"), hereby moves *in limine* ("MIL") to preclude Defendants and their attorneys and witnesses from raising, referencing, or averring, either directly or indirectly, the matters set forth below, unless and until such matters have first been called to the attention of and ruled upon by the Court out of the presence of the jury.  Reference to the matters set forth below is likely to prejudice KAIST IP US to an extent that it could not be cured by an instruction from the Court.

## Agreed MILs

While meeting and conferring, counsel for Defendants indicated that they do not oppose KAIST IP US's motions *in limine* on the following matters:

**MIL 1.  That Defendants cannot infringe because they have their own patents**.

**MIL 2.  Advice of counsel.**

**MIL 3.  Fee arrangements with counsel or litigation financing.**

**MIL 4.  An expert's prior exclusions by *Daubert* or by motions *in limine*.**

**MIL 5.  The alleged workload of the PTO or any attempt to disparage the PTO.**

## Opposed MILs

While meeting and conferring, counsel for Defendants indicated that they oppose KAIST IP US's motions *in limine* on the following matters:

**MIL 6.  Comparing accused products to the preferred embodiments of the patents.**

It is well-settled that "[i]nfringement, literal or by equivalents, is determined by comparing an accused product not with a preferred embodiment described in the specification, or with a commercialized embodiment of the patentee, but with the properly and previously construed claims in suit."  *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc); *see also Johnson & Johnson Assocs., Inc. v. R.E. Serv. Co.*, 285 F.3d 1046,

1052 (Fed. Cir. 2002) (same). Accordingly, any differences between preferred embodiments, on the one hand, and Defendants' accused products, on the other hand, are irrelevant to any issue before the jury. Defendants should not be permitted to make this sort of comparison or suggest that any differences between their products and the '055 Patent embodiments are relevant to the jury's infringement analysis. FED. R. EVID. 401-402.

Additionally, Defendants should not be permitted to identify differences between their products and the '055 Patent embodiments because the probative value of such evidence would be substantially outweighed by the danger of confusing the jury about how to properly evaluate whether an accused product infringes a patent claim. FED. R. EVID. 403; *Metaswitch Networks Ltd. v. Genbank US LLC*, No. 14-cv-744, 2016 WL 3618831, at *4 (E.D. Tex. Mar. 1, 2016) ("No party may argue that the claims are limited to a specific embodiment or compare an accused product to a specific embodiment to argue infringement or non-infringement, but parties may refer to an embodiment in the context of explaining the patent."). Therefore, Defendants should be precluded from any argument, testimony, evidence, reference to, or suggestion of these matters.

**MIL 7.   Any alleged prior development of bulk FinFETs by Defendants.**

KAIST IP US understands that Defendants intend to assert that they developed the bulk FinFET design accused in this case before Prof. Lee's filing of the Korean counterpart to the '055 Patent. However, Defendants produced no evidence of this alleged prior development of bulk FinFETs. In fact, Defendants refused to provide such discovery and did not disclose any non-infringement contention in this regard.

KAIST IP US asked Defendants through Common Interrogatory No. 4, for example, to "[i]dentify and describe in detail the research and development history relating to the Structure and Process of the FinFET Technology in the Infringing Instrumentalities …." Defendants

1455689.9

responses failed to identify or explain how they were allegedly developing the accused bulk FinFET technology before Prof. Lee. This topic was also the subject a motion to compel by KAIST IP US, yet Defendants still never produced any documents or evidence showing prior development. *See, e.g.*, Dkt. 126 at 6 ("Finally, for categories 8-10 [regarding the R&D history of bulk FinFET], Defendants' production is incomplete because, despite asserting that they were developing bulk FinFET technology by the early 2000s, Defendants have produced less than twenty documents regarding their technical development during this time period."); *see also* Dkt. 83 (moving to compel a detailed response to KAIST IP US's interrogatory re noninfringement). Defendants may not now assert that they previously developed the accused bulk FinFET technology in the absence of corroborating evidence. *Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1350 (Fed. Cir. 2001) ("It is well-established in our case law that a party claiming his own prior inventorship must proffer evidence corroborating his testimony."). Therefore, Defendants should be precluded from any argument, testimony, evidence, reference to, or suggestion of these matters.

### MIL 8. That the Accused Instrumentalities practice other patents.

KAIST IP US understands that Defendants intend to assert that the Accused Instrumentalities practice other patents. Defendants did not contend during discovery that the Accused Instrumentalities practice patents other than the '055 Patent. Moreover, to present evidence on this topic would require the Court to construe the claims of the other patents, and for experts to opine about whether those patents are practiced by the Accused Instrumentalities. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd,* 517 U.S. 370 (1996) ("An infringement analysis entails two steps. The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the

properly construed claims to the device accused of infringing.") (citation omitted). This would be a tremendous waste of time and the Court's resources for evidence with no probative value. Furthermore, its introduction would serve only to confuse the issues and mislead the jury. FED. R. EVID. 401-403; *see, e.g.*, *Ziilabs Inc., Ltd. v. Samsung Elecs. Co.*, No. 2:14-CV-203-JRG-RSP, 2015 WL 13617214, at *1 (E.D. Tex. Oct. 28, 2015) (granting exclusion of "argument, evidence, or testimony referencing evidence of Samsung's or others' patents and/or patent applications for purposes of arguing non-infringement"). Therefore, Defendants should be precluded from any argument, testimony, evidence, reference to, or suggestion of these matters.

**MIL 9.   Any alleged non-infringing alternatives that were not commercially available.**

KAIST IP US understands that Defendants intend to assert a number of allegedly non-infringing, commercially viable alternatives to the claimed invention. However, these alleged alternatives were not available during the time of the hypothetical negotiation. Specifically, none of the technologies known as 14 HP, 14 XM, 12 FDX, ETSOI, or TSMC's 10 nm bulk FinFET were commercially available in the 2014-2015 timeframe of infringement. Since commercially unavailable alternatives cannot, by definition, be non-infringing alternatives, they are irrelevant to the issues in this case and would only confuse the jury. *Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999) ("to be an acceptable non-infringing substitute, the product or process must have been available or on the market at the time of infringement"). Therefore, Defendants should be precluded from any argument, testimony, evidence, reference to, or suggestion of these matters.

**MIL 10. Lay testimony regarding invalidity or noninfringement.**

During deposition, a Globalfoundries Rule 30(b)(6) witness testified that Globalfoundries had determined that the '055 Patent was invalid, but then asserted privilege when asked about the

details of the investigation. Defendants cannot selectively waive privilege to use the information as a sword, then assert privilege as a shield. *Willy v. Admin. Review Bd.*, 423 F.3d 483, 497 (5th Cir. 2005) ("[W]hen a party entitled to claim the attorney-client privilege uses confidential information against his adversary (the sword), he implicitly waives its use protectively (the shield) under that privilege."); *see also Barry v. Medtronic, Inc.*, No. 1:14-CV-104, 2016 WL 3583620, at *6 (E.D. Tex. May 9, 2016) ("The implied waiver doctrine exists to prevent a party from using the attorney-client privilege as both a sword and a shield.").

This issue was the subject of a Motion to Compel filed by KAIST IP US on January 31, 2018. Dkt. 175 at 5-6. At the February 26, 2018 hearing on the Motion, counsel for Defendants represented that they would not rely on that investigation for any purpose in the litigation. *See* Hearing Tr., 94:21-96:7, Feb. 26, 2018. The presentation of such evidence would, therefore, be contrary to defense counsel's stipulation, in addition to being irrelevant and prejudicial. FED. R. EVID. 401-403. Therefore, Defendants should be precluded from any argument, testimony, evidence, reference to, or suggestion of these matters.

### MIL 11. Settlement discussions conducted under non-use NDA.

Under Rule 408, settlement negotiations and offers are inadmissible. During the 2014-2015 time period, KAIST IP US's predecessor conducted settlement discussions with Samsung. These discussions were conducted in anticipation of and as an effort to settle litigation. The parties signed a nondisclosure agreement on July 3, 2015. KAIST-004381 ("The information receiver shall not use the confidential information for any other purposes or uses than the purpose to receive the confidential information, without prior written consent of the information provider." (translated from Korean)). All settlement discussions from the date of that NDA and onward are not admissible. *See Charles E. Hill & Assocs., Inc. v. ABT Elecs., Inc.*, No. 2:09-CV-

313-JRG, Dkt. 232 at 5-6 (E.D. Tex. Apr. 4, 2012) (cautioning litigants about the reliability of settlement negotiations); *Mondis Tech., Ltd. v. LG Elecs., Inc.*, 2011 WL 1714304, at *5 (E.D. Tex. May 4, 2011) (this Court previously held that "unconsummated settlement and licensing negotiations with the patents-in-suit are not discoverable."). Therefore, Defendants should be precluded from any argument, testimony, evidence, reference to, or suggestion of these matters.

**MIL 12. Reference to KAIST IP US as an NPE or "patent troll."**

While meeting and conferring, counsel for Defendants indicated that they will not refer to KAIST IP US as a "troll" or use other pejorative characterizations to refer to KAIST IP US. However, counsel for Defendants indicated that they do intend to argue that KAIST IP US does not practice the '055 Patent. But KAIST IP US is a wholly-owned subsidiary of KAIST IP, which is a joint venture between KAIST and P&IB, set up to promote the technologies developed by Korean research institutes and universities. Beyond this fact, referring to KAIST IP US as a "non-practicing entity" has no place at trial. It has no bearing on the claims and issues in this case, and would only serve to prejudice the jury. *Mobile Telecomms. Techs., LLC v. ZTE (USA) Inc.*, No. 13-CV-946, 2016 WL 8260584, at *3 (E.D. Tex. Jul. 21, 2016) ("HTC SHALL NOT introduce any references, evidence, testimony (including expert testimony), or argument referring to MTel in a nefarious manner, including but not limited to any of the following: patent troll, troll, toll collector, pirate, stick up, hold up, shakedown, litigious, and being in the business of filing lawsuits."). Defendants should be precluded from any argument, testimony, evidence, reference to, or suggestion of these matters.

**MIL 13. Lump sum damages calculations, or implying that the calculations of damages experts result in, or that the jury may award, a "lump sum."**

Defendants should be barred from making any reference to the phrase "lump sum" when discussing damages because it is factually inaccurate, irrelevant, and unduly prejudicial to

1455689.9

KAIST IP US. FED. R. EVID. 401-403. KAIST IP US is concerned that Dr. Becker may attempt to characterize his damages opinion as a "lump sum" at trial. In claiming that his opinion is a "lump sum through trial," Dr. Becker makes a legal error because there is no such thing. *See Core Wireless Licensing S.a.r.L v. Apple Inc.*, No. 6:12-cv-00100-JRG, Dkt. 428 at 67-68 (E.D. Tex. Apr. 9, 2015) (describing that a lump-sum model is one in which the infringer pays a "one-time lump-sum payment … at the time of the hypothetical negotiation for a license covering all sales of the … licensed product, both past and future."); *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1300-01 (Fed. Cir. 2015) (describing a lump-sum license as compensating for all past and future infringement). Allowing Defendants or Dr. Becker to confuse the jury this way would unduly prejudice KAIST IP US. Therefore, Defendants should be precluded from any argument, testimony, evidence, reference to, or suggestion of these matters.

**MIL 14. Alleging relative importance of claim elements of the claims.**

Defendants should not be permitted to assert that any particular claim element of any claim of the patents-in-suit is more important than any of the other claim elements. Any such statements would be an incorrect assertion of law. The claims define the invention as a whole. *See, e.g.*, *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997) ("Each element contained in a patent claim is deemed material to defining the scope of the patented invention[.]"); *Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 788 F.2d 1554, 1556 (Fed. Cir. 1986) (finding that a patent claim is a total combination of elements viewed as a whole). Permitting such an allegation would pose a significant danger of irreversible prejudice, confusion of the issues, and misleading the jury, which could not be corrected by an instruction from the Court. FED. R. EVID. 403. Therefore, Defendants should be precluded from any argument, testimony, evidence, reference to, or suggestion of these matters.

**MIL 15. Comparing prior art to Plaintiff's infringement contentions or Samsung's products rather than to claims as construed by the Court.**

"An expert must compare the *construed* claims to the prior art." *TiVo, Inc. v. EchoStar Communs. Corp.*, 516 F.3d 1290, 1311 (Fed. Cir. 2008) (internal citations omitted) (emphasis added). Therefore, an expert may not present an opinion that compares the prior art to plaintiff's infringement analysis and such evidence is properly excluded from trial. *Id.* "[M]ere proof that the prior art is identical, in all material respects, to an allegedly infringing product cannot constitute clear and convincing evidence of invalidity. Anticipation requires a showing that each element of the claim at issue, properly construed, is found in a single prior art reference." *Zenith Elecs. Corp. v. PDI Comm. Sys., Inc.*, 522 F.3d 1348, 1363 (Fed. Cir. 2008); *see Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1322 (Fed. Cir. 2011) ("[T]he proper framework for challenging the validity of a patent is not for the accused to show that it is practicing the prior art, but to show that every element of the patent claims reads on a single prior art reference.").

Evidence of a patent holder's "view of the claims" as applied to the infringing products has no bearing on the question of validity, and should be excluded to avoid "possible jury confusion by ensuring that the invalidity inquiry [is] focused on the relationship between the prior art and the claims, as construed by the court." *TiVo*, 516 F.3d at 1312. Defendants plan to make arguments, and to have their invalidity expert, Dr. Subramanian, present certain invalidity opinions, that are exactly of the kind that were properly precluded in the *TiVo* case. *See* Dkt. 219 at 3-5. Rather than compare the prior art reference to the claims as construed, Dr. Subramanian compares the prior art to aspects of a Samsung product that Plaintiff accused in its infringement contentions.

Defendants should not be permitted to present evidence or argument of invalidity based on comparing the prior art to KAIST IP US's infringement contentions or to the accused

products. Such opinions are inadmissible under Rule 401 as irrelevant and under Rule 403 because they have no probative value and present substantial "danger of unfair prejudice, confusion of the issues, or misleading the jury." *Mobile Telecomms. Techs.*, 2016 WL 8260584, at *2 ("The parties SHALL NOT introduce any references, evidence, testimony (including expert testimony), or argument regarding, or inquire about or elicit any testimony comparing any accused instrumentality to any purported prior art device, prior art patent or any other prior art. The prior art should be compared only to the asserted claims."); Fed. R. Evid. 403; *TiVo*, 516 F.3d at 1311-12. Therefore, Defendants should be precluded from any argument, testimony, evidence, reference to, or suggestion of these matters.

### MIL 16.  Samsung's company character and achievements.

Samsung may not present generalized evidence and arguments about the how the company has made many innovative products and has received many awards, and the number of people it employs at its Texas offices and facilities. Such evidence is not relevant to any issue in this case. It has no relevance to whether Defendants infringe, whether the patents are valid, or the appropriate measure of reasonable royalty damages. It would be offered for only one purpose: to get the jury to admire Samsung and, hopefully, rule in its favor. Such evidence must be excluded as irrelevant and prejudicial, Fed. R. Evid. 401-403, and as improper character evidence. Fed. R. Evid. 404(a) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait"). Therefore, Defendants should be precluded from any argument, testimony, evidence, reference to, or suggestion of these matters.

### MIL 17.  Alleged failure to disclose prior art references to the Patent Office.

KAIST IP US understands that Defendants intend to assert that Prof. Lee failed to disclose certain prior art references to the Patent Office. Such evidence could only be relevant to

1455689.9

an affirmative defense of inequitable conduct.  However, no Defendant pled this defense.  *Jones v. Miles*, 656 F.2d 103, 108 n.7 (5th Cir. 1981) ("[A]n affirmative defense that is not asserted in a responsive pleading is generally deemed waived"); FED. R. CIV. PROC. 8(c).  Therefore, the introduction of such evidence would serve only to prejudice KAIST IP US, waste time, confuse the issues, and mislead the jury.  FED. R. EVID. 401-403.  Therefore, Defendants should be precluded from any argument, testimony, evidence, reference to, or suggestion of these matters.

**MIL 18.  Prosecution history for the Japanese patent application.**

KAIST IP US understands that Defendants intend to assert that the invention of the '055 Patent was rejected by the Japanese Patent Office.  This testimony would be irrelevant and prejudicial.  The Japanese application is not a part of the prosecution history of the '055 Patent and the '055 Patent does not rely on the Japanese application for priority or reference it in any way.  Therefore, the Japanese application is not relevant to claim construction and does not make the fact of infringement more or less likely.  *See Medtronic, Inc. v. Daig Corp.*, 789 F.2d 903, 907-08 (Fed. Cir. 1986) (giving little weight to the holding of a foreign tribunal regarding obviousness and noting that "[t]he patent laws of the United States are the laws governing a determination of obviousness/nonobviousness of a United States patent in a federal court.").  The introduction of testimony or evidence regarding the Japanese patent application would, therefore, serve only to waste time, confuse the issues, and mislead the jury.  FED. R. EVID. 401-403; *see also* KAIST IP US's Motion to Strike and Exclude Portions of the Rebuttal Expert Report of Vivek Subramanian, Ph.D. (Dkt. 219), 9-10.  Therefore, Defendants should be precluded from any argument, testimony, evidence, reference to, or suggestion of these matters.

**MIL 19.  Alleged sponsorship of Prof. Lee's unrelated research by Samsung.**

KAIST IP US understands that Defendants intend to assert that research projects by Prof.

Lee were purportedly sponsored by Samsung entities. In particular, Defendants may introduce evidence about a research project that was purportedly sponsored by the Samsung Science & Technology Foundation, and a research project involving high-frequency circuits that was purportedly sponsored by Samsung Semiconductor.  These research projects are not relevant to the issues in this case because the subjects of the research are unrelated to the technology at issue in this case. Moreover, the Samsung Science & Technology Foundation is a separate entity from the Samsung Defendants, and none of the Samsung Defendants are involved with the Foundation.  The introduction of this evidence, therefore, would serve only to waste time, confuse the issues, and mislead the jury.  FED. R. EVID. 401-403.  Defendants should be precluded from any argument, testimony, evidence, reference to, or suggestion of these matters.

### MIL 20.  Honoraria received by Prof. Lee from Samsung.

KAIST IP US understands that Defendants intend to assert that Prof. Lee was paid by Samsung to deliver lectures to its employees.  Such evidence is not relevant to the issues in this case, and its introduction is likely to confuse the jury, who may conflate these payments with compensation for rights to the '055 Patent. FED. R. EVID. 401-403.  Defendants should be precluded from any argument, testimony, evidence, reference to, or suggestion of these matters.

### MIL 21.  Massachusetts Institute of Technology (MIT).

KAIST IP US understands that Defendants intend to assert that MIT may have some claim to the invention of the '055 Patent.  KAIST IP US is the undisputed assignee of record of the '055 Patent.  KAIST IP US is thus the ***presumed owner*** of the '055 Patent, such that its assignment is entitled to a presumption of validity under Federal Circuit law.  *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1327-28 (Fed. Cir. 2010) ("The recording of an assignment with the PTO … creates a presumption of validity as to the assignment and places the burden to rebut such a showing on one challenging the assignment.").

1455689.9

KAIST IP US's Motion for Summary Judgment Against Defendants Based on Standing and Inventorship, Dkt. 221, addresses the ownership claims, including Defendants' contentions that Kyungpook National University and Wonkwang University may have some claim to the invention of the '055 Patent. As discuss in detail in that motion, it is well-settled that third-party equitable interests cannot defeat a patentee's standing. *Id.*, 8-10. Any reference to a potential ownership claim to the '055 Patent by MIT, therefore, would be irrelevant, unduly prejudicial, and misleading to the jury. FED. R. EVID. 401-403. Therefore, Defendants should be precluded from any argument, testimony, evidence, reference to, or suggestion of these matters.

Furthermore, Defendants should be precluded from any reference to U.S. Patent No. 7,304,336, assigned to MIT, which they appear to intend to suggest shows either earlier or simultaneous invention of the claims of the '055 Patent. The MIT Patent was not disclosed in any of Defendants' P.R. disclosures or expert disclosures. Defendants may not rely upon references not disclosed in their invalidity contentions. *See Allergan Sales, LLC v. UCB, Inc.*, No. 215CV01001JRGRSP, 2016 WL 9276265, at *1 (E.D. Tex. Nov. 7, 2016) (granting agreed motion in limine to exclude "Any theory of anticipation or obviousness that is not identified in Defendant's Patent Rule 3-3 disclosures"). Moreover, the MIT Patent is not relevant to any of the issues before the jury in this case.

**MIL 22. Undisclosed prior art.**

Under P.R. 3-3, Defendants were required to disclose all prior art. Defendants may not rely upon prior art not disclosed in their invalidity contentions. Therefore, Defendants should be precluded from raising or referring to prior art not disclosed in their P.R. 3-3 invalidity contentions. *Allergan Sales*, 2016 WL 9276265, at *1.

Respectfully submitted,

*/s/ Thomas P. Burke Jr.*
Andrew Y. Choung
Cal. Bar No. 203192 (admitted in E.D. Texas)
Rex Hwang
Cal. Bar No. 221079 (admitted in E.D. Texas)
Guy M. Rodgers
Cal. Bar No. 303229 (admitted in E.D. Texas)
Thomas P. Burke Jr.
Cal. Bar No. 288261 (admitted in E.D. Texas)
S. Desmond Jui
Cal. Bar No. 262200 (admitted *pro hac vice*)
GLASER WEIL FINK HOWARD
AVCHEN & SHAPIRO LLP
10250 Constellation Blvd., 19th Floor
Los Angeles, California 90067
Telephone:(310) 553-3000
Facsimile:(310) 556-2920
Email: achoung@glaserweil.com
Email: rhwang@glaserweil.com
Email: grodgers@glaserweil.com
Email: tburke@glaserweil.com
Email: djui@glaserweil.com

Jason Sheasby
Cal. Bar No. 205455 (admitted *pro hac vice*)
Charlotte Wen
Cal. Bar No. 313572 (admitted *pro hac vice*)
IRELL & MANELLA LLP
1800 Avenue of the Stars
Los Angeles, California 90067
Telephone:(310) 277-1010
Facsimile:(310) 203-7199
Email: jsheasby@irell.com
Email: cwen@irell.com

Charles Ainsworth
Texas Bar No. 00783521
Robert Christopher Bunt
Texas Bar No. 00787165
PARKER, BUNT & AINSWORTH PC
100 E. Ferguson St., Suite 1114
Tyler, Texas 75702
Telephone:(903) 531-3535
Facsimile:(903) 533-9687

1455689.9

        Email: charley@pbatyler.com
        Email: rcbunt@pbatyler.com

*Attorneys for Plaintiff and Counterclaim-Defendant KIPB LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on this April 6, 2018. As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A).

        */s/ Thomas P. Burke Jr.*
        Thomas P. Burke Jr.

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rules CV-7(h) and (i), counsel for KAIST IP US met and conferred telephonically with counsel for Defendants on April 6, 2018 in a good faith attempt to resolve the matters raised by these motions *in limine*. Except as otherwise indicated above, no agreement could be reached, and Defendants have indicated they oppose the relief requested by these motions *in limine*. Thus, these discussions have conclusively ended in an impasse and leave open issues for the Court to resolve.

        */s/ Thomas P. Burke Jr.*
        Thomas P. Burke Jr.