**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

|  |  |
|---|---|
| KAIST IP US LLC, | |
| Plaintiff and Counterclaim-Defendant, | |
| v. | Case No.:  2:16-cv-01314-JRG-RSP |
| SAMSUNG ELECTRONICS CO., LTD.; SAMSUNG ELECTRONICS AMERICA, INC.; SAMSUNG SEMICONDUCTOR, INC.; SAMSUNG AUSTIN SEMICONDUCTOR, LLC; GLOBALFOUNDRIES, INC.; GLOBALFOUNDRIES U.S. INC.; and QUALCOMM INC., | JURY TRIAL DEMANDED  Honorable Rodney Gilstrap  *FILED UNDER SEAL* |
| Defendants and Counterclaim-Plaintiffs. | |

**OPPOSITION BY KAIST IP US TO DEFENDANTS' MOTION TO DISMISS**
**PURSUANT TO FED. R. CIV. P. 12(C) FOR LACK OF STANDING, AND OBJECTIONS**
**TO DECLARATIONS OF KYONGMAN KIM, YOUNGJOON LEE,**
**YOOSEOK KIM, AND JEONG KYU CHOE**

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     STATEMENT OF FACTS ....................................................................................3

III.    LEGAL STANDARD.............................................................................................5

IV.     ARGUMENT ..........................................................................................................6

      A.      The Court Should Strike the Samsung Declarations As Inadmissible Under the Federal Rules of Evidence ......................................................................6

      B.      The Court Should Strike the Choe "Declaration" as an Untimely, Unauthorized, and Unreliable Expert Report...........................................9

            1.      Defendants Failed to Disclose Mr. Choe's New Opinions Pursuant to  Rule 26 and the Court's Schedule...........................................9

            2.      Mr. Choe's Opinions Should Also Be Stricken As Unreliable For Being Based on Evidence He Has Neither Seen Nor Read. .....................11

      C.      Even If Credited, Defendants' Arguments and Evidence Cannot Void KAIST IP US's Standing to Bring this Action. ...................................12

            1.      The Presidential Decree, MOST Regulations, and Alleged Funding Contract Do Not Effect a Present Assignment As a Matter of Law ..........13

            2.      There Is No Evidence Tying The Alleged Contract To the Invention. ....................................................................................17

      D.      If U.S. Law Applies, Defendants' Standing Defense Fails As A Matter of Law. ....................................................................................................21

V.      CONCLUSION.....................................................................................................22

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ................................................................................................... 6

*Arachnid, Inc. v. Merit Indus., Inc.,*
    939 F.2d 1574 (Fed. Cir. 1991) ........................................................................... 14, 16

*Bianco v. Globus Medical, Inc.,*
    30 F.Supp.3d 565 (E.D. Tex. 2014) (Bryson, J.) ..................................................... 12

*Brown v. Barbacid,*
    436 F.3d 1376 (Fed. Cir. 2006) ............................................................................... 22

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ................................................................................................... 6

*Freedom Wireless, Inc. v. Boston Commun's Group, Inc.,*
    220 F.Supp.2d 16 (D. Mass. 2002) .......................................................................... 16

*Gander Mountain Co. v. Cabela's, Inc.,*
    2007 WL 2026751 (D. Minn. July 10, 2007) ......................................................... 12

*Gellman v. Telular Corp.,*
    2010 WL 5173213 (E.D. Tex. Dec. 14, 2010) .................................................. 14, 16

*Kassim v. City of Schenectady,*
    415 F.3d 246 (2d Cir. 2005) ....................................................................................... 8

*Krasnopivtsev v. Ashcroft,*
    382 F.3d 832 (8th Cir. 2004) ..................................................................................... 8

*Liles v. TH Healthcare, Ltd.,*
    2014 WL 1813312 (E.D. Tex. May 5, 2014) ............................................................ 5

*Lopez-Carrasquillo v. Rubianes,*
    230 F.3d 409 (1st Cir. 2000) ............................................................................... 8, 18

*Lusk v. Wells Fargo Bank, N.A.,*
    2012 WL 1841359 (E.D. Tex. May 21, 2012) .......................................................... 7

*Mahurkar v. C.R. Bard, Inc.,*
    79 F.3d 1572 (Fed. Cir. 1996) ................................................................................. 21

*Ramirez v. Autobuses Biancos Flecha Roja, S.A. De C.V.,*
    486 F.32d 493 (5th Cir. 1973) ................................................................................. 19

*Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.,*
    725 F.3d 1377 (Fed. Cir. 2013) ............................................................................... 11

*Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.,*
    2017 WL 1319553 (E.D. Tex. Apr. 10, 2017) ........................................................ 12

*St. Clair Intellectual Property Consultants, Inc. v. Palm, Inc.,*
    2009 WL 1220546 (D. Del. May 4, 2009)................................................................ 16

*U.S. ex rel. Howard v. Lockheed Martin Corp.,*
    2014 WL 1233081 (S.D. Oh. Mar. 25, 2014) ........................................................ 11

*U.S. v. Marshall,*
    762 F.2d 419 (5th Cir. 1985) ...................................................................................... 7

## Federal Rules

Fed. R. Civ. P. 12.......................................................................................................... 5, 22

Fed. R. Civ. P. 37............................................................................................................. 11

Fed. R. Civ. P. 56.............................................................................................................. 5

Fed. R. Evid. 1002 ......................................................................................................... 7, 8

Fed. R. Evid. 602 ........................................................................................................... 8, 12

Fed. R. Evid. 801 .............................................................................................................. 7

OPP. & OBJS. BY KAIST IP US TO DEFS.' STANDING MSJ

Plaintiff KIPB LLC, formerly known as KAIST IP US LLC ("KAIST IP US"), hereby opposes Defendants' Motion To Dismiss Pursuant to Fed. R. Civ. R. 12(c) for Lack of Standing. In addition, KAIST IP US respectfully requests that the Court strike and exclude the declarations of Jeong Kyu Choe (Dkt. No. 229-1), Kyongman Kim (Dkt. No. 233-1), Youngjoon Lee (Dkt. No. 233-2), and Yooseok Kim (Dkt. No. 233-3) in their entirety.

## I.    INTRODUCTION

It is undisputed that: (a) the Korean counterpart to U.S. Patent No. 6,885,055 ("the '055 Patent") was filed January 2002 when Prof. Lee was employed at Wonkwang University ("WKU") and is substantively identical to the '055 Patent; (b) Prof. Lee assigned worldwide rights in his invention to the Korea Advanced Institute of Science & Technology ("KAIST") after WKU declined to acquire the rights; and (c) there is no evidence of a present assignment of rights in the invention to WKU that pre-dates any of the assignments of record in the USPTO for the '055 Patent.  On these facts alone, Defendants' standing defense fails as a matter of law.

Defendants allege through hearsay that a contract exists between Prof. Lee and an entirely different university, Kyungpook National University ("KNU"), at which he did not even begin working until *after* he filed the application that is substantively identical to the '055 patent and *after* he assigned his invention to KAIST.  Even assuming that the alleged contract covers the '055 patent, it is not an immediate present assignment of rights in the '055 Patent.  As alleged, it gives KNU at most an equitable claim, which cannot impact standing as a matter of Federal Circuit law.  *See* Dkt. 221, KAIST IP US's Standing MSJ at 7, 9-10, 14-16.  Moreover, even if the law was on Defendants' side, because Defendants fail to allege any date of the alleged contract or even the subject matter, there is no material dispute of fact that it could even cover or apply to the claimed invention.

The Court, however, need not even reach these issues because of the dispositive evidentiary defects in Defendants' motion.  Defendants' sole "evidence" of a contract between KNU and Prof. Lee are the hearsay declarations of Samsung's in-house legal team and an untimely, undisclosed new expert report that purports to translate Korean regulations into English for the Court.  ████████████████████████████████████████████

████████████████████████████████████████████████████████████

Whoever is supplying these "translations" to the Court is certainly not Defendants' alleged "expert" Mr. Choe.

The self-serving declarations of Samsung's in-house legal team violate the best evidence rule, improperly rely on testimony to establish the contents of an apparent written agreement, and are hearsay.  The new declaration from Defendants' purported Korean-law expert, Jeong-Kyu Choe, seeks to present expert opinions based on this hearsay, none of which are contained anywhere in his expert report in this case – an expert report that was not even prepared by him because of his lack of English fluency.  Dkt. 227 at 3, 4.  Defendants did not seek permission to amend this Court's schedule or to serve a wholly new report after the February 5, 2018 deadline for expert disclosures and close of expert discovery.  Thus, these "declarations" should be stricken, which leaves Defendants' motion bereft of any support, admissible or otherwise.[1]

---

[1] On April 5, 2018, nearly three weeks after filing this motion to dismiss, Defendants filed a separate motion to stay this litigation.  Dkt. 287.  Defendants' new motion is also based on the hearsay declaration of a Samsung representative who allegedly *heard* that the KNU might file legal actions in Korea.  Dkt. 287, Defs.' Mot. to Stay, at 3, 8.  But the university has not confirmed this in any way.  These motions by Defendants are entirely inconsistent.  By now arguing that the "ownership issue" must first be resolved in Korea, Defendants' effectively concede that this motion to dismiss cannot on its face be sustained.

## II.    STATEMENT OF FACTS

1.     The undisputed background facts are set forth in KAIST IP US's motion for summary judgment, Dkt. 221.  Prof. Lee was a professor at WKU from March 1994 through February 2002.  Dkt. 221-2 at KAIST-018549.  He joined KNU in March 2002.  *Id.*  In September 2009, he joined Seoul National University ("SNU").  *Id.*

2.     The Korean counterpart to the U.S. patent-in-suit was filed on January 30, 2002 as Korean Patent Application No. 10-2002-0005325.  Dkt. 221-3 at 1.  The Korean application issued on November 12, 2004 as Korean Patent No. 10-0458288 ("Korean Counterpart Patent") to the Korea Advanced Institute of Science & Technology ("KAIST").  Dkt. 221-3 at 1.

3.      Defendants present no evidence that WKU has or is claiming any rights to Prof. Lee's invention.

4.     Thus, before Prof. Lee joined KNU, he had already assigned his invention to KAIST.

5.     

6.     The '055 Patent application was filed on February 4, 2003 and duly issued on

April 26, 2005 to Prof. Lee.  Dkt. 221-10.  Except for minor translation variances, the

specification of the '055 Patent is identical to the Korean Counterpart Patent.  Dkt. 221-3; Ex. 4,

3/2/18 Rebuttal Report of K. Kuhn at ¶ 77-78.

7.



8.      On February 22, 2012, Prof. Lee assigned a co-interest in the '055 Patent to P&IB

Co. Ltd. ("P&IB").  Ex. 6, KAIST-020747.  This assignment was duly recorded with the Patent

Office on March 5, 2012.  Dkt. 221-16 at KAIST-031196.  On September 27, 2012, Prof. Lee

and P&IB granted a nonexclusive license to the '055 Patent to Intel.  Dkt. 221-17.

9.     On July 12, 2016, Prof. Lee and P&IB jointly assigned the '055 Patent to KAIST IP.  Dkt. 221-15.  This assignment was duly recorded with the USPTO on July 20, 2016.  Dkt. 221-16 at KAIST-031195.

10.     On August 9, 2016, KAIST IP assigned the '055 Patent to KAIST IP US.  Dkt. 221-18.  This assignment was duly recorded with the USPTO on August 10, 2016.  Dkt. 221-16, KAIST-031195.

11.     Although Defendants appear to have placed extraordinary pressure on and attempted to improperly induce KNU employees to assist them in this case, *see* Dkt. 260, KAIST IP US's MTC at 1-7, 10-11, they present no evidence that KNU had a relevant contract with Prof. Lee, or is claiming rights in the patents.

## III.   LEGAL STANDARD

Under Rule 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial."  Fed. R. Civ. P. 12(c).  Rule 12(d) further provides that where "matters outside the pleadings are presented to and not excluded by the court," a Rule 12(c) motion "must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  "If the Court chooses to construe the motion as one for summary judgment, parties must be given notice to avoid unfair surprise."  *Liles v. TH Healthcare, Ltd.,* 2014 WL 1813312, at *1 (E.D. Tex. May 5, 2014) (Gilstrap, J.) (citations omitted).

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact as to those issues on which it bears the burden of proof at trial.  *Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 331 (1986).  "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence[.]"  *Id.* (emphasis omitted).  In resolving the motion, the court should construe all facts and inferences in favor of the non-moving party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

## IV.   ARGUMENT

The chain of title for the '055 patent has been duly record in the USPTO.  The recordation of Prof. Lee's assignment to KAIST IP US creates a presumption of validity against which Defendants carry the *sole* burden of proof to rebut.  *SiRF v. Tech., Inc. v. Int'l Trade Comm'n,* 601 F.3d 1319, 1327-28 (Fed. Cir. 2010).  Here, Defendants fail to do so.  Moreover, even if Defendants' "hearsay" evidence is credited, it cannot void KAIST IP US's standing under black letter Federal Circuit law.

### A.   The Court Should Strike the Samsung Declarations As Inadmissible Under the Federal Rules of Evidence

The only "evidence" that Defendants proffer to support the existence of an agreement between Professor Lee and KNU are three identical declarations from Samsung's legal team, who purport to have *seen* a government funding contract—the so-called Specific R&D Agreement—and to testify to certain of its terms.  Dkt. 233-1, K. Kim Decl. at ¶¶ 5-12, 14, 17; Dkt. 233-2, Y. Lee Decl. at ¶¶ 5-17; Dkt. 233-3, Y. Kim Decl. at ¶¶ 5-17.  The declarants fail to disclose: (1) the date of this alleged agreement; (2) whether it has any retroactivity clauses; and (3) the subject matter of the agreement.

The alleged contract has not been produced and the Samsung declarations violate the best evidence rule and the rule against using testimony to establish the contents of and give legal effect to an apparent written agreement, and are inadmissible hearsay.  Therefore, they should be

stricken.[2]  *See, e.g., U.S. v. Marshall*, 762 F.2d 419, 426 (5th Cir. 1985) (reversing admission of testimony to establish content of writings; testimony inadmissible due "to the hearsay nature of Ms. Stanlin's testimony when based on statements in records outside the evidence, Fed. R. Evid. 801, and to the admission of evidence as to the contents of a record without production of the document itself into evidence, Fed. R. Evid. 1002").

Defendants rely exclusively on these declarations to show the existence and content of the alleged funding contract.[3]  These declarations are textbook out-of-court statements offered "to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801.  This Court has excluded similar testimony purporting to establish the existence and contents of documents as inadmissible hearsay.  In *Lusk v. Wells Fargo Bank, N.A.*, the Court struck an affidavit purporting to set out facts obtained from an online database regarding plaintiff's loan, finding "these portions of the affidavit and the attached [printout] are inadmissible hearsay and lack appropriate foundation."  2012 WL 1841359, at *2 (E.D. Tex. May 21, 2012) (Mazzant, J).

 Defendants' declarations are also textbook violations of the best evidence rule.  Because the witnesses are testifying as to the content of the agreement, the rules of evidence require production of the alleged contract itself.[4]  "An original writing, recording, or photograph <u>is required in order to prove its content</u> unless these rules or a federal statute provides otherwise."  Fed. R. Evid. 1002 (emphasis added).

---

[2] The Samsung declarants also purport to establish the existence and contents of another un-produced document called the "Tera-Level Nano Development Project – Nano CMOS Development Report."  *See* Dkts. 233-1, 233-2, 233-3 at ¶ 10.  The various testimony on this unproduced document is defective for all of the same reasons.

[3] The Samsung declarations also rely on hearsay statements of KNU employees—compounding the problem with double hearsay.  *See* Dkts. 233-1, 233-2, 233-3 at ¶¶ 15-17.

[4] The Samsung declarants contend that the alleged contract is available, but that KNU has declined to provide the agreement.  Dkts. 233-1, 233-2, 233-3 at ¶ 17.

Compliance with the best evidence rule is no trivial matter.  Without production of the underlying agreement, KAIST IP US cannot confirm its contents, challenge its authenticity, or raise other evidentiary questions of admissibility.  In particular, the alleged contract is a *Korean-language* document, whose provisions the Samsung declarants purport to quote in English—with no certification, or any indication that their "translations" are accurate.  Admission of such testimony to show an agreement would abridge the basic evidentiary safeguards against foreign-language documents.  *See, e.g., Kassim v. City of Schenectady,* 415 F.3d 246, 251 (2d Cir. 2005) (affirming exclusion of "translation" as lacking foundations for accuracy or competence under Fed. R. Evid. 602, 702, and 901(a)); *Krasnopivtsev v. Ashcroft,* 382 F.3d 832, 839 (8th Cir. 2004) (foreign-language passport with no translation or certification deemed inadmissible); *Lopez-Carrasquillo v. Rubianes,* 230 F.3d 409, 413-414 (1st Cir. 2000) ("Because the deposition excerpt is in Spanish, and Lopez did not provide an English translation, we decline to consider it").

Defendants cannot circumvent the best evidence rule by relying on their declarants' so-called "personal knowledge."  The declarants lack personal knowledge of the alleged agreement.  This much is evident from their own words.  None of the declarants was a party to or involved in the formation of the alleged contract.  They admit to having read just a single provision ("Article 13"), do not claim to have read the document in its entirety or even any other parts, and cannot even provide a date for the alleged contract.  Dkt. Nos. 233-1, 233-2, and 233-3 at ¶ 8.  They simply do not qualify as percipient witnesses.  *See* Fed. R. Evid. 602.  The Samsung declarations should be stricken.

**B.    The Court Should Strike the Choe "Declaration" as an Untimely, Unauthorized, and Unreliable Expert Report.**

Defendants seek to proffer new expert testimony from Mr. Choe in support of their motion, in which he purports to opine on the so-called funding agreement.  *See* Dkt. 229-1.  Mr. Choe is Defendants' Korean law "expert" who previously submitted an expert report regarding Defendants' standing defenses.  *See* Dkt. 227-2, Expert Report of J. Choe.  There is no question that this "declaration" is a disguised untimely expert report.  But whether it is called an expert declaration or report, it should be stricken.

**1.    Defendants Failed to Disclose Mr. Choe's New Opinions Pursuant to Rule 26 and the Court's Schedule.**

Defendants' motion and Mr. Choe's declaration arrive nearly five weeks after the Court's February 5, 2018 deadline for service of opening expert reports, nearly seven weeks after the January 31, 2018 fact discovery deadline, and after the close of expert discovery.  *See* Dkt. 202, Docket Control Order at 3.  Mr. Choe proffered no opinions on the issue raised in this motion in his original report.  Moreover, since the passing of the deadline, Defendants did not request leave to amend this Court's docket control order or serve a supplemental report, or even give any notice whatsoever of this new report prior to Mr. Choe's deposition.

On March 14, 2018, when KAIST IP US deposed Mr. Choe on his originally disclosed— now apparently abandoned—opinions,

9



Mr. Choe made zero mention of a claim of ownership based on government funding

regulations and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

He failed to provide any testimony asserting government funding as a basis. ▮▮▮▮▮▮▮

Defendants may

not now disregard and disavow these representations and submit an entirely new expert report.[5]

Defendants cannot excuse their untimely disclosure by claiming the issue is new or based

on new discovery.  The government funding theory is one of several contentions that Defendants

have been peddling since early in this case.[6]  *See, e.g.,* Ex. 8, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[5] Mr. Choe never corrected any of his testimony, not even on redirect by defense counsel.

[6] All of the documents cited by Defendants in their motion were produced well before the deadline for expert disclosures.  *See* Dkt. 229-3, Soobert Decl. at ¶¶ 2-27 (documents cited).

███████████

Defendants simply failed to have Mr. Choe opine on this issue at the time he should have. *See* Fed. R. Civ. P. 26(a)(1)(A).  Under Rule 37, the burden is on Defendants to show their violation of Rule 26 was "substantially justified or harmless."  *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.,* 725 F.3d 1377, 1381 (Fed. Cir. 2013) (citing Fed. R. Civ. P. 37(c)(1)); Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").  But Defendants do not even attempt to make such a justification. Therefore, Mr. Choe's "declaration" should be disregarded and stricken.  *See, e.g., Rembrandt Vision Techs.,* 725 F.3d at 1382 (affirming exclusion of untimely expert testimony).  There is significant prejudice to KAIST IP US because it has had no opportunity to test via depositions the new opinions presented by Mr. Choe.

## 2.      Mr. Choe's Opinions Should Also Be Stricken As Unreliable For Being Based on Evidence He Has Neither Seen Nor Read.

Mr. Choe purports to opine on the legal implications of language in an alleged funding contract.  *See* Dkt. 229-1, Choe Decl. at ¶¶ 8-9, 76-78.  But Mr. Choe lacks any factual basis to do so – what he is in fact opining on, rather, are Samsung's hearsay declarations.  *See id.* at ¶¶ 76-78.  Though Mr. Choe alleges that he is "aware" of the agreement, this means little since he has not seen or read the document.  Instead, he merely parrots the Samsung declarants.  *See id.* at ¶¶ 77-78.  Courts have routinely held attempts by experts to opine in this fashion to be unreliable.  *See, e.g., U.S. ex rel. Howard v. Lockheed Martin Corp.,* 2014 WL 1233081, at *8 (S.D. Oh. Mar. 25, 2014) ("[T]he experts cannot testify as to whether Lockheed's conduct conformed to the requirements of a contract . . . that they have not read or with which they are

not otherwise familiar <u>because such an opinion would not be based on sufficient facts or data</u> <u>under Rule 702(b)</u>.") (emphasis added); *Gander Mountain Co. v. Cabela's, Inc.,* 2007 WL 2026751, at *6 n. 4 (D. Minn. July 10, 2007) (under Rule 702, rejecting opinions purporting to rely on agreement alluded to but not described).

Expert witness "testimony is not a vehicle by which evidence that is otherwise inadmissible may be introduced." *Bianco v. Globus Medical, Inc.,* 30 F.Supp.3d 565, 572 (E.D. Tex. 2014) (Bryson, J.) (citations, quotations omitted).  In *Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.,* 2017 WL 1319553 (E.D. Tex. Apr. 10, 2017), Judge Bryson excluded expert testimony for which, as here, the expert lacked an "apparent independent basis for knowledge" and merely "relay[ed] hearsay evidence from other sources." *Id.* at 11-12.  Mr. Choe's declaration fails for the same reasons.  *See id.*; Fed. R. Evid. 602 (witness may not "testify[ ] to the subject matter of [a] hearsay statement, as he has no personal knowledge of it.").

### C.     Even If Credited, Defendants' Arguments and Evidence Cannot Void KAIST IP US's Standing to Bring this Action.

Even if settled evidentiary law is ignored, and all "facts" alleged in Defendants' motion are taken as admissible and true, Defendants still fail to show that KNU has a present legal title that defeats standing.  The reasons for this are set out in KAIST IP US's motion for summary judgment on standing.  Dkt. 221 at 8-19.  Defendants fail to point to any evidence that there was *a present assignment* of title in the invention reflected in the Korean Counterpart patent and the '055 patent to KNU, or any other entity, before the date on which Professor Lee assigned these rights to KAIST.

Standing cannot be defeated by the existence of an equitable right in a patent, which is what the motion claims KNU possesses.  *See* Dkt. 221, KAIST IP US's Standing MSJ at, *e.g.*, 7-8.  The Federal Circuit held this to be the rule in *Cent. Admixture Pharmacy Servs.*:

> [T]he [third party] can choose to take action; thus, title to the patent may be voidable.  However, it is not void: title remains with the named inventors or their assignees.  Nothing in the statute, regulations, or our caselaw indicates that title is automatically forfeited.  The [third party] must take an affirmative action to establish its title and invoke forfeiture.

482 F.3d at 1352-53 (emphasis added); *see Sycamore IP Holdings,* 2018 WL 929691, at *4.

Even the Samsung declarants themselves confirm that KNU possesses nothing more than a discretionary, equitable claim and understood this to be the case:

> My colleagues and I were also informed at the March 14 meeting that Kyungpook National University planned to notify Prof. Lee in writing of its ownership of the '055 patent and that, if Prof. Lee did not return the '055 patent, Kyungpook National University planned to file a legal action to secure its ownership.

*See, e.g.,* Dkt. 233-1, Decl. of Y. Kim at ¶ 16 (emphasis added).  Because Defendants' motion only contends that KNU can try to secure ownership or file a legal action to acquire title, not that there was a present assignment to KNU that pre-dates Professor Lee's assignment to KAIST, it fails as a matter of law.  Claims of equitable rights cannot divest KAIST IP US of legal standing under Federal Circuit law.  *See* Dkt. 221, KAIST IP US's Standing MSJ at 19-20.

### 1.    The Presidential Decree, MOST Regulations, and Alleged Funding Contract Do Not Effect a Present Assignment As a Matter of Law

To effect a present assignment of an invention, this Court has held that a contract "must expressly provide for the assignment act to be effective at the time of agreement, by using language such as 'agrees to and does hereby grant and assign' or 'I will assign and do hereby assign.'" *Sycamore IP Holdings,* 2018 WL 929691 at *4.  Defendants have never identified any such language—not in the Kyungpook IP policy, and not now in Presidential Decree 17429, the MOST regulations, or alleged funding contract.

Article 15, Clause 2 of the Presidential Decree merely provides:

> [I]ndustrial property rights, research report copyrights, and other intangible products *shall be* owned by the supervisory research institute, following the determination of the agreements of the portion corresponding to the share of

13

government contribution.

Dkt. 229-2 at 5 (DEFTS_00000389) (emphasis added).   By its plain language, this is a future

right—not a present assignment.  Indeed, as KAIST IP US's expert Mr. Chong explains, this

language indicates that the supervisory research institute must take steps—i.e., future action—to

secure the invention.  Chong Decl. at ¶ 40-45.

Both the Federal Circuit and this Court have held that use of the phrase "shall" or "shall

be," as here, indicates only an agreement or promise to assign in the future, not a present

assignment.  *See, e.g., Arachnid, Inc. v. Merit Indus., Inc.,* 939 F.2d 1574, 1576-81 (Fed. Cir.

1991) (holding that "shall be the property" did not amount to present assignment or vest legal

title); *Sycamore IP Holdings,* 2018 WL 929691 at *5 (holding that ownership "shall reside" was

not a present assignment); *Gellman v. Telular Corp.,* 2010 WL 5173213, at *5 (E.D. Tex. Dec.

14, 2010) (Everingham, J.) (citing *Arachnid,* 939 F.2d at 1576-81) (holding same for "shall be

and remain the exclusive property").

The same is true of the MOST regulations.  Defendants' expert, Mr. Choe, purports to

"translate" Article 43 of these regulations as, "the portions corresponding to the share of

government contribution, of industrial property rights, publication rights of research reports and

prototypes, belong to the supervisory research institute."  Dkt. 229, Defs.' Mot. (citing Dkt. 229-

1, Decl. of J. Choe at ¶ 47); Dkt. 229-23, MOST Regulations at DEFTS_00001155 (rendered

translation).  As an initial matter, any "translation" by Mr. Choe is no translation at all, because

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

Thus, Defendants provide no admissible translation, much less a certified translation, of the MOST regulations.  Instead, the statements purportedly made by Mr. Choe are mystery "translations" rendered by undisclosed persons and therefore inadmissible.

There is a reason that Defendants did not supply any official translation of the MOST regulations.  When properly rendered, Article 43 provides only that rights *shall* belong to the supervisory research institute specifically *pursuant to subsequent agreements*, i.e., actual assignment agreements.  This is confirmed by KAIST IP US's expert, Mr. Chong (who is sufficiently fluent in written English, and is a retired Korean judge):

> In view of and conjunction with the [Technology Development Promotion Act] and [Presidential Decree], the MOST Regulation at most provides for the procedure and protocol that must subsequently be taken in order to secure any patent rights.  In practice, rights <u>shall</u> belong to the supervisory research institute specifically pursuant to subsequent agreements, such as actual assignment agreements.

Chong Decl. at ¶49 (emphasis added); *see also id.* at ¶¶ 48-49.

Defendants and Mr. Choe also entirely overlook Article 38 of these same regulations:

> The head of the supervisory research institute <u>shall take all necessary action</u> in using the R&D outcomes, including <u>security and management of industrial property rights</u>[.]

Dkt. 229-23 at DEFTS_00001152 (emphasis added).

This language indicates further "action" is required by the institute to "secure" rights to an invention.  Chong Decl. at ¶ 49.  In this case, further actions might be supplied, for example, by the alleged KNU IP regulation, on which Defendants originally based their entire standing defense, but now conveniently ignore.  This policy, if it is authentic, is a procedure that KNU has set up to handle intellectual property with its employees.  Ex. 12, 03/03/18 Expert Rebuttal Report of Y. Chong, ¶ 28; App. B, Chong Decl. at ¶ 28.  Simply put, if this policy is authentic, then it limits not just the rights of professors at KNU but also the rights of KNU itself.

Defendants' unauthenticated translation of this document expressly states it has the "purpose of specifying necessary items for intellectual property right's acquisition" at KNU.  Dkt. 221-28, KNU IP Regulation at DEFTS_00000355; Ex. 13, Exhibit 9a to 03/03/18 Expert Rebuttal Report of Y. Chong, KNU IP Regulation (KAIST IP US's translation) at Art. 1 ("The purpose of this regulation is to provide for the matters necessary for the acquisition, disposition, management, compensation and technology transfer of the intellectual property rights of the faculty, employees and other persons engaged in research work (hereafter 'employees, etc.' of Kyungpook National University (hereafter the University).").  And as discussed in KAIST IP US's motion for summary judgment, this policy by its express terms requires additional steps to be taken before rights can be acquired.  *See* Dkt. 221, KAIST IP US's Standing MSJ at 15-18.  It is not a present assignment; it is a promise of future conduct.

Courts including the Federal Circuit have held that an agreement requiring further, future acts to establish ownership, as here, does not effect a present assignment.  *See, e.g., Arachnid,* 939 F.2d at 1576-81 (no present assignment where agreement stated "all rights thereto *will be assigned* by IDEA . . . to CLIENT") (emphasis added); *St. Clair Intellectual Property Consultants, Inc. v. Palm, Inc.,* 2009 WL 1220546, at *11 (D. Del. May 4, 2009) (same where agreement required employee to perform further acts of disclosing invention, determining whether invention was useful, and assisting employer in obtaining patents); *Gellman,* 2010 WL 5173213 at *5 (same where agreement required inventor to "execute any and all assignments or other transfer documents which are necessary . . . to vest" rights in invention).

This is true even in the presence of language stating inventions "belong" to the promisee. *See, e.g., Freedom Wireless, Inc. v. Boston Commun's Group, Inc.,* 220 F.Supp.2d 16, 19-20 (D. Mass. 2002) (citing *Arachnid,* 939 F.2d at 1581) (agreement stating "all inventions belong . . . to

the Company" but requiring future acts "such as 'disclos[ing] the invention and 'perform[ing]

actions necessary to establish ownership" did not vest present legal title).  Thus, even though

Defendants attest that the alleged funding contracts says that industrial property rights "belong to

the supervisory research institute," the mere use of the word "belong" is not dispositive – even

assuming the Samsung declarations can be credited.  To be consistent with the applicable Korean

laws and regulations, including Article 38 of the MOST Regulations, it is clear that a further,

*actual assignment* is necessary to effect any transfer of rights.  Chong Decl. at ¶¶ 49-50.

### 2.    There Is No Evidence Tying The Alleged Contract To the Invention.

Even if the alleged funding contract on which Defendants rely for their motion did exist,

Defendants have failed to present any admissible evidence connecting this alleged contract to the

work disclosed in the '055 patent.  Defendants reference three "reports"—a "July 2001 Report,"

"July 2002 Report," and "August 2003 Report."  They then attempt to connect these reports to

the alleged funding agreement among KNU, Prof. Lee, and the government that is "evidenced"

solely by a series of self-serving declarations from Samsung executives.

But Defendants provide no information about: (1) date of the contract; or (2) the subject

matter of the research covered by the contract.  Indeed, the only precision in the Samsung

declarations is a remarkable recollection of a Korean language clause relating to intellectual

property rights, which was translated identically in all of the declarations by some unknown

person.  This "evidence" cannot sustain Defendants' defense, because the recordation of Prof.

Lee's assignment to KAIST IP US creates a presumption of validity against which Defendants

carry the *sole* burden of proof to rebut.  *SiRF v. Tech., Inc. v. Int'l Trade Comm'n,* 601 F.3d

1319, 1327-28 (Fed. Cir. 2010).

Defendants fail to allege any effective date for the alleged contract between KNU, Prof.

Lee and the government, or contend that it has retroactive application.  *See* Dkt. 229-1, Decl. of

J. Choe at ¶ 77; Dkt. 233-1, 233-2, 233-3 at ¶ 8.  But the alleged contract could not have come into effect until after Prof. Lee completed his invention and filed for the Korean counterpart patent in January 2002.  This is because the alleged contract purportedly involves KNU and Prof. Lee as an employee of KNU.  Prof. Lee did not join KNU until March 2002.  Thus, the alleged contract cannot pre-date Prof. Lee's invention and the assignment to KAIST.  Therefore, even if the alleged contract existed, it cannot have covered Prof. Lee's invention or voided the pre-existing assignment to KAIST.

Defendants reference to the "reports" do not salvage their position because they are not evidence of any particular rights to KNU in the inventions of the '055 patent.  Defendants provide only the Korean language version of the July 2001 Report, with no translation, certified or otherwise.  Their characterizations of the untranslated July 2001 report is not evidence and must be rejected.  *See, e.g., Lopez-Carrasquillo,* 230 F.3d at 413.  It is also irrelevant, because at this time Prof. Lee was at WKU, not KNU.  Defendants' motion presents the terms of an alleged contract with KNU, not WKU.  Defendants do not even have a hearsay declaration attesting to a contract involving WKU and Professor Lee.

The undisputed evidence of record in this case is that WKU declined to file for the inventions in the Korean Counterpart Patent and the '055 patent and there is zero evidence of any agreement by WKU, any government funding entity and Prof. Lee, obligating Prof. Lee to assign his invention to WKU.  Dkt. 221, KAIS IP US's Standing MSJ at 6.  The fact that WKU's own industry-academic cooperation division was not founded until 2004, Dkt. 221-6 at KAIST-028684, shows that WKU had no patent program in 2002-2003, and is further evidence that WKU could not have had any ownership rights in the '055 Patent.

████████████████████████████████████████████████

█████████████████   Therefore, these reports came after the invention was already

completed.  The claimed invention is fully disclosed in the Korean Counterpart Patent, *see* Ex. 4,

3/2/18 Rebuttal Expert Report of K. Kuhn at ¶¶ 77-78, a point that Defendants do not dispute.

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████

Defendants cite no evidence that the alleged funding agreement is governed by anything

other than Korean law.  *See, e.g., Ramirez v. Autobuses Biancos Flecha Roja, S.A. De C.V.,* 486

F.32d 493, 496 (5th Cir. 1973) ("In Texas, the law of the place where the contract is made

generally governs.") (citations omitted).  Indeed, a suggestion that Korean law does not apply to

the contract would be truly remarkable given that every party to the alleged contract is Korean,

one of the parties is the Korean government, and all work under the alleged contract was

performed in Korea.

By their plain terms, these reports merely set forth a wide range of activities and

anticipated projects for a variety of research topics.  ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████   *None* of

the research referenced in these reports is present in the '055 patent, because the '055 patent is

substantively identical to the Korean Counterpart Patent, which was filed before Prof. Lee joined

KNU and before any alleged contract was executed.  The March 25, 2003 press release cited by

Defendants not only postdates the filing date of the '055 Patent, it concerns fabrication, not

invention.  *See* Dkt. 229-24, Press Release at 1.



But that institution was KAIST, not KNU.  Not even Defendants

dispute that the original application was filed in the name of KAIST as the applicant.  This

confirms that "institution" does not mean KNU, contrary to Defendants' assertion.

The August 2003 draft report upon which Defendants rely is similarly deficient.

This is further evidence that the "box checking" in the report is neither conclusive of

nor an admission of the actual or acknowledged ownership rights.

**D.     If U.S. Law Applies, Defendants' Standing Defense Fails As A Matter of Law.**

It appears that Defendants' entire standing defense turns on the premise that because the

'055 patent does not on its face claim priority to the Korean Counterpart Patent, this must mean

that the invention date of the '055 patent is the February 2003 filing date of the United States

application because reduction to practice is required to have a complete invention under U.S.

law.  As an initial matter, U.S. law does not apply to interpreting a Korean contract between

Korean parties, one of whom is a Korean sovereign.  Indeed, Defendants' position is

contradictory since they seek to apply Korean statutes and regulations, and proffer the opinions

of a Korean law "expert."

But even if U.S. law did apply, Defendants' theory fails.  Under U.S. law, an invention

date is *the conception date* if there is diligence from conception to reduction to practice, either

actual or constructive.  *See Mahurkar v. C.R. Bard, Inc.,* 79 F.3d 1572, 1577 (Fed. Cir. 1996)

(interpreting 35 U.S.C. § 102(g) to hold that "priority of invention 'goes to the first party to

reduce an invention to practice unless the other party can show that it was the first to conceive

the invention and that it exercised reasonable diligence in later reducing that invention to

practice").  In this case, KAIST IP US disclosed the date of filing of the Korean Counterpart

Patent as conception, and also pled diligent reduction to practice through the filing date of the

U.S. application in February 2003.  *See* Ex. 10, KAIST IP US's 1/31/18 Supp. Resps. to Defs.'

First Set of Interrogatories (Nos. 1-10) at 6.  Professor Kuhn prepared a detailed analysis of the

publications out of Prof. Lee's laboratory and confirmed that they established diligence during

this period. Ex. 4, 3/2/18 Rebuttal Report Of K. Kuhn at ¶¶ 70-97. █████████████

████████████████████████████████████████████████████████████████

██

Defendants' claim that KAIST IP US's position on conception and constructive reduction to practice was not properly disclosed relies on artifice.  First, Defendants cite to an original response to the relevant interrogatory, not the supplemental response.  *See* Dkt. 229, Defs.' Mot at 3 ¶ 7 (citing "Ex. 5," Dkt. 229-8). ███████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

But lab notebooks from the relevant time period are not the only source of corroboration. *E.g., Brown v. Barbacid,* 436 F.3d 1376, 1380 (Fed. Cir. 2006) ("[D]iligence and its corroboration may be shown by a variety of activities, as precedent illustrates").  And Defendants ignore the utter silence of their own expert in response to Dr. Kuhn's detailed analysis of Prof. Lee's conception and diligent reduction to practice.  It is Defendants' burden to prove their standing defense.  In this case, KAIST IP US has put forward admissible and detailed evidence of conception and reduction to practice, and Defendants have presented no countervailing expert testimony.

## V.      CONCLUSION

Based on the foregoing, KAIST IP US respectfully requests the Court deny Defendants' motion, and strike and exclude the declarations of Jeong Kyu Choe (Dkt. 229-1), Kyongman Kim (Dkt. 233-1), Youngjoon Lee (Dkt. 233-2), and Yooseok Kim (Dkt. 233-3).  To the extent the Court does not deny Defendants' motion, KAIST IP US should be entitled to depose all of

the declarants.  *See* Fed. R. Civ. P. 12(d).


Date: April 9, 2018.                              Respectfully submitted,

                                                  */s/ Andrew Y. Choung*
                                                  Andrew Y. Choung
                                                  Cal. Bar No. 203192 (admitted in E.D. Texas)
                                                  Rex Hwang
                                                  Cal. Bar No. 221079 (admitted in E.D. Texas)
                                                  Guy M. Rodgers
                                                  Cal. Bar No. 303229 (admitted in E.D. Texas)
                                                  Thomas P. Burke Jr.
                                                  Cal. Bar No. 288261 (admitted in E.D. Texas)
                                                  GLASER WEIL FINK HOWARD
                                                    AVCHEN & SHAPIRO LLP
                                                  10250 Constellation Blvd., 19th Floor
                                                  Los Angeles, California  90067
                                                  Telephone: (310) 553-3000
                                                  Facsimile: (310) 556-2920
                                                  Email: achoung@glaserweil.com
                                                  Email: rhwang@glaserweil.com
                                                  Email: grodgers@glaserweil.com
                                                  Email: tburke@glaserweil.com

                                                  Jason Sheasby
                                                  Cal. Bar No. 205455 (admitted *pro hac vice*)
                                                  IRELL & MANELLA LLP
                                                  1800 Avenue of the Stars
                                                  Los Angeles, California  90067
                                                  Telephone: (310) 553-3000
                                                  Facsimile: (310) 556-2920
                                                  Email: jsheasby@irell.com

                                                  Charles Ainsworth
                                                  Texas Bar No. 00783521
                                                  Robert Christopher Bunt
                                                  Texas Bar No. 00787165
                                                  PARKER, BUNT & AINSWORTH PC
                                                  100 E. Ferguson St., Suite 1114
                                                  Tyler, Texas  75702
                                                  Telephone: (903) 531-3535
                                                  Facsimile: (903) 533-9687
                                                  Email: charley@pbatyler.com

Email: rcbunt@pbatyler.com

*Attorneys for Plaintiff and Counterclaim-*
   *Defendant KIPB LLC*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on April 9, 2018.  I further certify that all counsel of record, who have consented to electronic service are being served with a notice of filing of this document on April 9, 2018 via the Court's CM/ECF system.

*/s/ Andrew Y. Choung*
Andrew Y. Choung

## CERTIFICATION OF AUTHORIZATION TO FILE UNDER SEAL

The undersigned hereby certifies that, under L.R. CV-5(a)(7)(B), the foregoing document is filed under seal pursuant to the Court's Protective Order entered in this matter (Dkt. 54).

*/s/ Andrew Y. Choung*
Andrew Y. Choung