IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| KAIST IP US LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 2:16-CV-01314-JRG-RSP |
| | § | |
| SAMSUNG ELECTRONICS CO., | § | |
| LTD., et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff moves, for three reasons, to exclude certain opinions of Dr. Vivek Subramanian, Defendants' technical expert on invalidity of the asserted claims. Pl.'s Mot. [Dkt. # 220]. First, Plaintiff contends Subramanian's report includes indefiniteness contentions already resolved by the Court during claim construction. *Id.* at 3–4. Second, Plaintiff contends the report includes a new and untimely indefiniteness contention that should not be considered. *Id.* at 4–5. Third, Plaintiff claims Subramanian's report raises new claim construction arguments to support enablement and written-description contentions. *Id.* at 5–9. After full briefing by the parties, the Court will **GRANT** the motion **IN PART**.

### A.   Defendants' "Old" Indefiniteness Contentions

Plaintiff contends Subramanian's report includes indefiniteness positions already considered and rejected by the Court. Pl.'s Mot. [Dkt. # 220] at 3–4. Defendants admit as

much, but contend the law obligates them to keep pressing those positions or risk a finding of waiver. Defs.' Resp. [Dkt. # 272] at 1–3. Defendants also note that, as of the time they filed their response, Judge Gilstrap had not ruled on their objections to the Court's claim construction order. *Id.* at 1–2. At the very least, Defendants ask the Court to hold that these arguments are not waived for appeal. *Id.* at 3.

Judge Gilstrap has since overruled Defendants' objections, Order [Dkt. # 388], and Defendants do not contest these issues have already been decided. Given that, Subramanian's testimony is not relevant and should be excluded under Fed. R. Evid. 402. Accordingly, the Court will **grant** this part of the motion.[1]

## B.     Defendants' "New" Indefiniteness Contention

Plaintiff contends Defendants raise a new indefiniteness contention concerning the "gate oxide layer" limitation, even though the local rules require disclosure of any indefiniteness arguments in a party's invalidity contentions. Pl.'s Mot. [Dkt. # 220] at 4–5 (citing Subramanian Rep. ¶ 1225). Defendants counter that nothing in the Docket Control Order (or any other order) prohibits them from raising indefiniteness arguments after claim construction. Def.'s Resp. [Dkt. # 272] at 3–4.

Regardless of whether Defendants' new contention is timely, indefiniteness is a question of law. *Alfred E. Mann Foundation for Scientific Research v. Cochlear Corp.*, 841 F.3d 1334, 1341 (Fed. Cir. 2016). Because Paragraph 1225 of Subramanian's report only

---

[1] The Court declines to address waiver because it is not the trial court's role to instruct an appellate court on whether a party has waived an issue for appeal.

pertains to indefiniteness, the Court will **grant** this part of the motion and preclude Defendants from offering argument or testimony corresponding to that paragraph.

C.    **Defendants' Enablement / Written Description Contentions**

Finally, Plaintiff contends Subramanian's report raises new enablement and written-description arguments concerning Claims 5–7 and Claim 15. Plaintiff asks the Court to exclude Subramanian's testimony relating to these arguments because Defendants take new claim construction positions. Pl.'s Mot. [Dkt. # 220] at 5. Defendants counter that the positions taken by Subramanian do not require claim construction and, even if they do, they are not untimely.

Whether a specification complies with the written-description requirement of 35 U.S.C. § 112 is a fact question. *Vas-Cath Inc. v. Mahurkar,* 935 F.2d 1555, 1563 (Fed. Cir. 1991); *Ralston Purina Co. v. Far-Mar-Co*, 772 F.2d 1570, 1575 (Fed. Cir. 1985). To fulfill the requirement, a patent specification must describe an invention in sufficient detail that one skilled in the art can clearly conclude that "the inventor invented the claimed invention." *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1572 (1997); *see also In re Gosteli*, 872 F.2d 1008, 1012 (Fed. Cir. 1989) ("[T]he description must clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed."). Thus, an applicant complies with the written description requirement "by describing the invention, with all its claimed limitations" using "such descriptive means as words, structures, figures, diagrams, formulas, etc., that set forth the claimed invention." *Lockwood*, 107 F.3d at 1572. Not surprisingly, "[t]he construction of the claims [is]

important to the written description analysis." *In re Katz Interactive Call Processing Patent Litigation,* 639 F.3d 1303, 1319–20 (Fed. Cir. 2011).

Unlike the written-description requirement, enablement is a question of law based on underlying factual findings. *MagSil Corp. v. Hitachi Global Storage Tech., Inc.*, 687 F.3d 1377, 1380 (Fed. Cir. 2012). An enabling specification teaches those skilled in the art "how to make and use the full scope of the claimed invention without 'undue experimentation.'" *Genentech, Inc. v. Novo Nordisk, A/S,* 108 F.3d 1361, 1365 (Fed. Cir. 1997) (quoting *In re Wright*, 999 F.2d 1557, 1561 (Fed. Cir. 1993)). To that end, the claim scope must be no more than the scope of the enablement. *MagSil Corp.*, 687 F.3d at 1381. And because enablement concerns claim scope, the proper construction of relevant terms is critical to resolving the issue. *See AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1241 (Fed. Cir. 2003) ("Because a patent specification must enable the full scope of a claimed invention, an enablement inquiry typically begins with a construction of the claims." (internal citations omitted)).

Claim construction, however, is not an issue with respect to Claim 15. The claim recites chamfered corners of the Fin active region resulting from "an oxidation and etching, or (and) annealing process." '055 Patent at 14:24–27. Defendants contend the claim scope exceeds the teachings of the specification because the claim recites only "oxidation," whereas the specification discloses oxidation *above 900 °C*. That might be true, but even if "oxidation" should have been construed by the Court, such a construction would not be material to the written-description question because the difference between the claim and

the specification is only the temperature during oxidation, regardless of whether or how "oxidation" should be construed.

Nor is claim construction an issue with respect to Claims 6–7. Each of these claims requires that "the contact resistance is reduced by selecting the size of a contact region which is in contact with said metal layer to be greater than the width of said Fin active region and/or the length of said gate." '055 Patent at 12:39–43; *see also id.* at 13:1–4. Defendants contend the specification doesn't support this limitation, disclosing only that "the width of the Fin active region *and* longer than the length of the gate." Pl.'s Mot. [Dkt. # 220] at 6–7 (emphasis added). Plaintiff does not, however, explain why this argument requires that the "and/or" language should be given anything other than its plain and ordinary meaning by a jury.

Plaintiff's position with respect to Claim 5 is more convincing. The claim recites "wherein the parasitic capacitance between said gate and bulk silicon substrate is reduced by selecting the thickness of said second oxidation layer to be between 20 nm and 800 nm." '055 Patent at 12:35–38. Defendants argue "the requirement of static selection of a thickness within a specific range does not provide any meaningful information for achieving the reduction of parasitic capacitance, particularly given its dependence on multiple variables—including thickness of the insulator, area (i.e., width and length) of the features, and permittivity of the insulator." Defs.' Resp. [Dkt. # 272] at 10. This argument comports with Subramanian's conclusion that reduction of parasitic capacitance does not depend "solely on selecting a thickness of the insulator in the recited range." *See*

Subramanian Rep. ¶ 1308.

The flaw in this argument stems from Defendants' focus on the intended result of reducing parasitic capacitance rather than on the structural requirement concerning thickness of the second oxidation layer. *See, e.g.*, Defs.' Resp. [Dkt. # 272] at 10 (noting "the requirement of static *selection* of a thickness within a specific range does not provide any meaningful information for achieving the *reduction* of parasitic capacitance" (emphasis in original)); Subramanian Rep. ¶ 1308 ("Whether such parasitic capacitance is reduced would depend not solely on selecting a thickness of the insulator i[n] the recited range."). From that faulty starting point, Defendants conclude the claim limitation doesn't satisfy the written-description or enablement requirements because the reduction can be achieved in more ways than just reducing the thickness of the insulator. *See, e.g.*, Defs.' Resp. [Dkt. # 272] at 10–11 ("The lack of specificity in the claimed requirement of reducing the parasitic capacitance by merely selecting one of multiple variables raises the question of whether undue experimentation would be needed to meet the claim."); Subramanian Rep. ¶ 1309 ("Simply 'selecting the thickness of said second oxidation layer to be between 20 nm and 800 nm' would not provide guidance to a POSA as to whether 'the parasitic capacitance is reduced.'").

But the proper focus is on structure rather than the intended result. Claim 5, after all, is directed to a device, and the specification describes an embodiment of that device having a second oxide layer with a thickness of between 20 nm and 800 nm to address the problem of high parasitic capacitance. '055 Patent at 5:52–55. While the limitation recites

the *result* of selecting that range, that result is not a structural limitation of the claim. *See C.R. Bard, Inc., v. M3 Sys., Inc.*, 157 F.3d 1340, 1350 (Fed. Cir. 1998) (noting a statement of intended use does not usually limit claim scope); *In re Stencel*, 828 F.2d 751, 754 (Fed. Cir. 1987) (noting statements of intended use "often, although not necessarily, appear in the claim's preamble"); *Ex parte Kearney*, Appeal No. 2010-002137, 2012 WL 1903202, *2 (B.P.A.I. May 23, 2012) (concluding the "wherein" clause within a limitation expressed a non-limiting intended use of the structure). Because his opinion is based on an incorrect interpretation of the limitation, the Court will **grant** the motion and exclude as irrelevant Dr. Subramanian's opinion that the specification does not provide guidance as to how the parasitic capacitance is reduced. *See* Subramanian Rep. ¶¶ 1308–09.

\* \* \*

The Court **GRANTS** the motion **IN PART**. Specifically, the Court **ORDERS** that Defendants may not offer argument or evidence concerning Paragraphs 1225 (relating to indefiniteness of the "gate oxide later" limitation), 1226–93 (relating to indefiniteness arguments already considered and rejected by the Court), and 1308–09 (relating to Claim 5's alleged failure to satisfy the written-description and enablement requirements of 35 U.S.C. § 112) of Dr. Subramanian's report before the jury. Otherwise, the Court **DENIES** the motion.

**SIGNED this 17th day of May, 2018.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE