IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| KAIST IP US LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 2:16-CV-01314-JRG-RSP |
| | § | |
| SAMSUNG ELECTRONICS CO., | § | |
| LTD., et al., | § | |
| | § | |
| Defendants. | § | |

## **MEMORANDUM OPINION AND ORDER**

In this patent case, Defendants move to exclude certain portions of Roy Weinstein's damages report. Defs.' Mot. to Exclude [Dkt. # 225]. Weinstein opines that Defendants owe at least $1.5 billion in damages for infringement. According to Defendants, however, "Weinstein's opinions are divorced from the patent-in-suit and violate basic principles of patent damages law articulated by the Federal Circuit." *Id.* at 2. After full briefing by the parties, the Court will **DENY** the motion.

* * *

Defendants identify five issues with Weinstein's report. First, they contend Weinstein uses a "wildly inaccurate" regression model. *Id.* at 3–8. Second, Defendants contend Weinstein's opinions are largely based on mobile devices rather than the accused processors and transistors, and thus don't use the smallest salable unit for royalty-calculation pur-

poses in contravention of Federal Circuit precedent. *Id.* at 8–9. Third, Weinstein purportedly calculates damages based on incremental benefits unrelated to the asserted patent. *Id.* at 10. Fourth, Defendants argue Weinstein's opinion regarding Qualcomm violates the territorial limitations on a United States patent. *Id.* at 11–12. Finally, Defendants claim Weinstein improperly attributes all cost savings from transitioning from a 28 nm to 14 nm FinFET to the asserted patent. *Id.* at 12.

### A. Weinstein's Regression Analysis

#### 1. *The Methodology*

Defendants first complain about Weinstein's conclusion that each 1% increase in processor speed for Samsung's devices that use the patented technology results in about one additional dollar of revenue. To reach that conclusion, Weinstein relies on David Witt's[1] opinion that the patented invention produces an increase of 18% to 25% in processor speed compared to the next best commercially viable alternative. Weinstein Rep. [Dkt. # 225-2] ¶ 164. From there, Weinstein uses regression analysis to measure the relationship between changes in processor speed and the price of Samsung's devices. *Id.*

Defendants criticize Weinstein's approach as modeling only nine device features out of hundreds, which supposedly leads to unreliable results. Defs.' Mot. [Dkt. # 225] at 4–5. Defendants' expert, for example, added RAM as a variable to Weinstein's regression analysis, which decreased the processor-speed variable by 40% and damages by $500 million.

---

[1] Plaintiff retained Witt to "assess the benefit of the 14 nm bulk FinFET transistors manufactured by Samsung and GlobalFoundries," Witt Rep. (Feb. 5, 2018) [Dkt. 235-4] ¶ 2.

*Id.* at 5–6. Defendants contend this shows the unreliability of Weinstein's approach.

Defendants specifically note *Stragent, LLC v. Intel Corp.*, No. 6:11-CV-00421, 2014 WL 12611339 (E.D. Tex. Mar. 12, 2014), and *Good Tech. Corp. v. Mobileiron, Inc.*, No. 5:12-CV-05826-PSG, 2015 WL 4090431 (N.D. Cal. 2015). In *Stragent*, Judge Dyk excluded an expert's analysis as unreliable because of his conclusion that 42% of the accused products' prices was attributable to a group of 19 features. *Stragent*, 2014 WL 12611339, at *2. The problem, however, was that the analysis stopped there, without any further analysis of what part of that 42% related to the accused feature. *Id.* Judge Dyk also noted the lack of information about the expert's method of selecting variables. *Id.* The *Good Technology* court analogized to *Stragent* in excluding Weinstein's report for a similar reason. *See Good Tech. Corp.*, 2015 WL 4090431, at *7 (noting that, in a manner similar to that rejected by Judge Dyk in *Stragent*, "Weinstein . . . counts up the ten Gartner inclusion criteria, assigns equal value to each one, and uses the resulting 30 percent to apportion MobileIron's profits [without] investigation into whether any of the criteria is more important than others, or how strongly each criterion is tied to the patents. This is insufficient.").

The *Stragent* and *Good Technology* courts' concerns are not present here. Both courts excluded the expert's testimony for not tying incremental value specifically to the patented feature with anything more than an arbitrary methodology. Weinstein's report does that, and thus contains no such flaw.

Defendants' addition of RAM as a factor in the regression analysis, and the corresponding reduction in damages of $500 million, seems a compelling counter-position to

Weinstein's position, but amounts to a disagreement between experts as to what variables should be considered. That goes to the weight to be given to the opinion rather than its admissibility. *See Bazemore v. Friday*, 478 U.S. 385, 400 (1986) ("While the omission of variables from a regression analysis may render the analysis less probative than it otherwise might be, it can hardly be said, absent some other infirmity, that an analysis which accounts for the major factors 'must be considered unacceptable . . . .' Normally, failure to include variables will affect the analysis' probativeness, not its admissibility.").

### 2. *Weinstein's Purported Failure to Disclose Underlying Data*

Defendants also contend Plaintiff failed to disclose certain underlying data upon which Weinstein relies. Defs.' Mot. [Dkt. # 225] at 7–8. Plaintiff responds that it attempted to provide the data immediately upon Defendants' request, and actually did provide the data within two weeks. Pl.'s Resp. [Dkt. # 266] at 11–12. Defendants reply that Plaintiff continues to withhold data and has plainly violated Fed. R. Civ. P. 26. Defs.' Reply [Dkt. # 305] at 2–3.

The Court finds that there has been no showing of prejudice from the minimal delay in production of the underlying data, and that the relief requested is not warranted.

### B. **The Smallest Salable Unit**

Defendants complain that, although the '055 Patent is directed to transistors, Weinstein improperly calculates damages using the price of smartphones and tablets. This, say Defendants, violates the Federal Circuit's mandate that damages be tied to the smallest salable unit. Defs.' Mot. [Dkt. # 225] at 8–9.

Plaintiff responds on two fronts. First, Weinstein's analysis properly apportions by relying on Kuhn's and Witt's opinions. Pl.'s Resp. [Dkt. # 266] at 12–14. Kuhn reported that the power and speed advancements gained by the 14 nm FinFETs are solely attributable to the claimed inventions. *Id.* at 12–13. Witt then quantified and valued those benefits as applied to Samsung's mobile devices, which amounts to proper apportionment. *Id.* at 13. Second, Plaintiff attacks Defendants' contention that Weinstein's per-device royalties are not properly apportioned because they vary between three classes of products—processors, tablets, and smartphones. *Id.* at 14. These are each different products, says Plaintiff, and consumers value the benefits of speed and energy efficiency differently for each of them. *Id.*

"[T]he smallest salable patent practicing unit principle states that a damages model cannot reliably apportion from a royalty base without that base being the smallest salable patent-practicing unit." *Commonwealth Scientific & Indus. Research Org.*, 809 F.3d 1295, 1302 (Fed. Cir. 2015). This is not a rigid rule, but rather an evidentiary tool intended to avoid jury confusion. *See, e.g.*, *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) ("[t]he point of the evidentiary principle is to help our jury system reliably implement the substantive statutory requirement of apportionment of damages to the invention's value"); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014) ("[R]eliance on the entire market value of the accused products . . . 'cannot but help skew the damages horizon for the jury.'"); *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694

F.3d 51, 56 (Fed. Cir. 2012) ("Admission of such overall revenues, which have no demonstrated correlation to the value of the patented feature alone, only serve to make a patentee's proffered damages amount appear modest by comparison, and to artificially inflate the jury's damages calculation beyond that which is 'adequate to compensate for the infringement.'" (quoting *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011)).

Here, Weinstein doesn't derive a per-unit royalty by applying a royalty rate to the price of the devices, so his analysis does not implicate these jury-confusion concerns. Rather, Weinstein concludes the sales prices of Samsung's devices increase by an amount tied to the benefits stemming from the accused processors. *See, e.g.*, Weinstein Rep. [Dkt. # 266-2] ¶ 168. This approach stays sufficiently clear of the concerns addressed by the "smallest salable unit" principle.

**C.    Weinstein's Reliance on Benefits Purportedly Not Tied to the '055 Patent.**

Next, Defendants attack Weinstein's purported failure to tie damages to the patent. Defs.' Mot. [Dkt. # 225] at 10. This part of the motion, however, is based on a separate challenge to David Witt's report. *See id.* ("Mr. Witt's estimates are unreliable. Accordingly, Mr. Weinstein's use of Mr. Witt's estimates is likewise inappropriate, and those opinions must be excluded."). The Court previously rejected that challenge, *see* Order [Dkt. # 415], which compels the same outcome here.

**D.    Weinstein's Opinions Regarding Qualcomm**

Defendants challenge Weinstein's damages analysis concerning Qualcomm chips

allegedly made by Globalfoundries and Samsung in the United States and sold to Qualcomm overseas. Defs.' Mot. [Dkt. # 225] at 11–12. Qualcomm, says Defendants, cannot be a direct infringer with respect to chips it never possessed in the United States. *Id.* at 11. There is also an issue of double counting, as Weinstein supposedly concludes Samsung and Globalfoundries owe damages for the same chips before they are sold to Qualcomm. *Id.* Plaintiff responds that each separate infringement requires a separate evaluation of damages. Pl.'s Resp. [Dkt. # 266] at 14–15.

This is an infringement issue rather than a damages issue. If Plaintiff cannot prove infringement concerning the chips sold to Qualcomm overseas—that is, if Plaintiff cannot prove Qualcomm's liability for acts prohibited under 35 U.S.C. § 271—this matter resolves itself at trial. For now, however, Weinstein must assume infringement. *See, e.g.*, Defs.' Opp'n to Pl.'s Mot. to Strike the Expert Report of Dr. Stephen Becker [Dkt. # 271] at 10 ("As a damages expert, [Becker's] report must assume infringement."). As such, the Court will not exclude this testimony simply based on Defendants' contention there is no infringement as to these chips.

### E. Weinstein's Cost-Savings Damages Analysis

Last, Defendants complain about Weinstein's reliance on Dr. Kuhn's opinion that 28 nm technology is the next-best non-infringing alternative and that the patented technology provides a 25% cost savings to a foundry relative to the 28 nm technology. Defs.' Mot. [Dkt. # 225] at 12. Specifically, Defendants criticize Weinstein's assumption that all costs saved in moving from a 28 nm node to a 14 nm bulk FinFET node are attributable to the

patent.

In arguing the cost savings are entirely attributable to the '055 Patent, Plaintiff notes Weinstein's reliance on Witt's and Kuhn's opinions that the '055 Patent is "foundational to bulk FinFET technology." *See* Weinstein Rep. [Dkt. # 226-2] ¶ 116 (citing Witt's report and a telephone conversation with Kuhn). Kuhn also opines that "[w]ithout the '055 Patent invention, Defendants would have no choice but to return to the transistor dimensions of the prior planar generation." *Id.* (citing Kuhn Rep. [Dkt. # 230-2] ¶¶ 346–47)

While these statements might ultimately prove incorrect, Weinstein's role in this litigation is not to make that determination, but rather to calculate damages based on Plaintiff's technical experts' analysis. That Weinstein might rely on such analysis as an input to his opinion does not, without more, make his own analysis unreliable under *Daubert*. The better approach is vigorous cross-examination of Weinstein and Kuhn rather than wholesale exclusion of Weinstein's opinion.

* * *

The Court **DENIES** the motion.

**SIGNED this 5th day of June, 2018.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE