# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| KAIST IP US LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 2:16-CV-01314-JRG-RSP |
| | § | |
| SAMSUNG ELECTRONICS CO., | § | |
| LTD., et al., | § | |
| | § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION

Defendants challenge Plaintiff's standing to have brought this lawsuit. Defs.' Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(c) [Dkt. # 229]. Although Defendants stipulate that Plaintiff is the record owner and assignee of U.S. Patent 6,885,055, Joint Final Pretrial Order [Dkt. # 323] at 12, they contest that Professor Jong-Ho Lee, the sole named inventor, ever had ownership in the claimed subject matter, and therefore Lee could not have assigned rights in the '055 Patent to Plaintiff.[1] Defendants claim title instead vested automatically in one of two Korean universities for which Professor Lee worked around the dates of conception and reduction to practice—Kyungpook National University (KNU) or

---

[1] In 2012, Professor Lee assigned a partial ownership interest in the patent to P&IB Co., Ltd. Joint Ownership Agreement (Feb. 22, 2012) [Dkt. # 295-3]. Lee and P&IB then assigned the entire interest to KAIST IP Co. Ltd. Assignment (July 12, 2016) [Dkt. # 295-5]. The next month, that entity assigned the '055 Patent to Plaintiff KAIST IP US LLC. Assignment (Aug. 9, 2016) [Dkt. # 295-6].

Wonkwang University.

The motion, however, should be **denied** for two reasons. First, specifically as to KNU, the subject matter has not been shown to be a work-related invention within the meaning of the applicable KNU IP regulation. Thus, KNU had no right to ownership even under its own policies. Second, even if the invention *was* a work-related invention as to either university, nothing in the regulations or legislation cited by Defendants operated to cause automatic vesting of patent rights away from Lee.

## I. BACKGROUND

The relevant "standing" facts date back to 2001, when Lee worked for Wonkwang University. Defs.' Motion [Dkt. # 229] at 2 (¶ 4). According to Lee, he offered the rights to his research, a particular type of transistor, to Wonkwang, but then assigned the subject matter to the Korea Advanced Institute of Science and Technology[2] (KAIST). Lee Dep. (Jan. 20, 2018) [Dkt. # 221-4] at 185:8–10 (understanding that "Wonkwang University didn't have the budget or supporting organization" to pursue the technology); Certificate of Assignment (Dec. 31, 2001) [Dkt. # 297-4] at PageID 19963.

The patent activity started the next year. In January 2002, KAIST filed a Korean patent application directed to the transistor. *See* Korean Patent 10-0458288 [Dkt. # 221-3] at (1). In February, Lee left Wonkwang for KNU. Lee Dep. (Jan. 20, 2018) [Dkt. # 221-4] at 197:9–12. In April, Lee built the first working embodiment of the transistor. *Id.* at 195:12–18. In August, KAIST assigned its rights in related foreign applications back to

---

[2] Although similarly named, this is a different entity than Plaintiff.

Lee. Confirmation of Overseas Patent Rights [Dkt. # 221-9].

In February 2003, Lee filed U.S. Application No. 10/358,981, which was directed to the same subject matter as, but did not claim priority to, the Korean application. *Compare* Korean Patent 10-0458288 [Dkt. # 221-3], *with* '055 Patent; *see also* Chong Rep. (Mar. 2, 2018) [Dkt. # 222] ¶ 47 (noting the specifications of the '055 Patent and Korean patent are virtually identical in technical scope, with only minor variances arising from translation of the Korean application into English). The asserted patent issued from the '981 Application in April 2005. '055 Patent at (21), (45).

Defendants contend Lee never held title to the subject matter because of certain regulations, decrees, and laws from around this time. Defendants allege, for example, that KNU's IP regulation vested all intellectual property rights arising from Lee's government-funded work after March 2002, including the '981 Application, in KNU. Defs.' Motion [Dkt. # 229] at 17–20. Defendants similarly contend regulations of South Korea's Ministry of Science & Technology (MOST), along with a presidential decree, require a recipient of government research funds, such as Professor Lee, to agree that all intellectual property would be owned by the university. *Id.* at 12–14 (citing Presidential Decree No. 17429 (eff. Mar. 30, 2002) [Dkt. # 297-29] at Art. 15; Specified R&D Project Processing Regs. (Sept. 1998) [Dkt. # 297-31]). Indeed, Defendants claim a number of reports prepared by or for Lee identify the "owner" of the patent rights as the "institution," thus supporting the notion that one of the universities owned the rights to the subject matter. *Id.* at 14–15 (citing a July

2002 report [Dkt. # 229-13]), 16 (citing an August 2003 report [Dkt. # 229-12], which specifically identifies the '981 Application), 19 (citing a July 2001 report [Dkt. # 229-12]).

Plaintiff responds that neither the Presidential Decree nor the MOST regulations operated as a present assignment of subject matter to either university. Pl.'s Resp. [Dkt. # 297] at 13–20. The Presidential Decree, Plaintiff says, required some future action to be taken by the university, of which there is no evidence. *Id.* at 13. The same holds true for the MOST regulations. *Id.* at 15. Thus, says Plaintiff, without evidence of an express assignment or some other action by Lee to effect transfer of patent rights, the Court should deny Defendants' motion.

## II.   APPLICABLE LAW

"In order to seek damages for infringement of a patent, a party must have standing at the inception of the lawsuit." *Sky Tech LLC v. SAP AG*, 576 F.3d 1374, 1379 (Fed. Cir. 2009). That means the plaintiff must demonstrate it held enforceable title to the patent when the lawsuit was filed. *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309–10 (Fed. Cir. 2003). Importantly, however, "[t]he recording of an assignment with the PTO . . . creates a presumption of validity as to the assignment and places the burden to rebut such a showing on one challenging the assignment." *SiRF Tech., Inc. v. I.T.C.*, 601 F.3d 1319, 1327–28 (Fed. Cir. 2010); *see also Dow Chem. Co. v. Nova Chems. Corp. (Canada)*, 458 Fed. App'x 910, 912 (Fed. Cir. 2012) ("There is no dispute that Dow is indeed the original assignee of the patents in suit and record title holder at the [PTO]. Therefore Dow is the presumed owner of the patents in suit."); *Smartflash LLC v. Apple, Inc.*, 2015

WL 11072177, at *5 (E.D. Tex. Feb. 3, 2015) (citing *SiRF Tech, Inc.* and *Dow Chem. Co.* and recognizing a presumption of validity to the recorded chain of title).

## III.   DISCUSSION

The Court should reject Defendants' standing challenge for two reasons. First, specifically as to KNU, the Court finds the '055 Patent was not directed to a work-related invention subject to any automatic vesting provisions of the MOST or KNU IP regulation. The KNU IP regulation only applies when the "inventive act relates to the past or present job duties of the inventor." KNU IP Regs. [Dkt. # 297-15] Art. 3 (defining "employee's invention"). Here, Lee filed the Korean application in January 2002, but was not employed by KNU until March 2002. Although Lee filed the '981 Application while working for KNU, the specifications of the two applications are virtually identical in substance. Thus, there was no additional "inventive act" concerning the subject matter that would implicate any automatic vesting provision. Lee simply decided to file a United States application directed to the same subject matter he conceived at least a year earlier while at Wonkwang.[3]

---

[3] Defendants argue that Lee's reduction to practice during his employment with KNU was sufficient to vest title in that university. Defs.' Motion [Dkt. # 229] at 17–18. But under both Korean and United States law, reduction to practice relates to priority of invention rather than ownership. *See Stanford v. Roche*, 563 U.S. 776, 786 (2011) (noting "that unless there is an agreement to the contrary, an employer does not have rights in an invention 'which is the original conception of the employee alone'"); *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227–28 (Fed. Cir. 1994) ("Conception is the touchstone of inventorship, the completion of the mental part of the invention."); *see also* Chong Decl. (Mar. 2, 2018) [Dkt. # 222-2] ¶ 45 ("[U]nder Korean law, the invention claimed in the '055 Patent was complete no later than the filing date of the Korean [application]."); *id.* ¶ 51

Second, even if the '981 Application was directed to a work-related invention, KNU's IP regulation only provides for a review committee to decide whether to take title to the invention. *See* KNU IP Reg. [Dkt. # 297-15] at Arts. 4, 5 (noting the IP Rights Review Committee will review whether to succeed to an employee's invention), 12 (noting the Cooperative Division must decide whether to take title within 60 days of receiving a report about the invention). In fact, the regulation provides a specific form of assignment for doing so. *Id.* at Art. 10; *see also* Certificate of Assignment [Dkt. # 297-15] at PageID 20074. When considered with the requirement of a conscious decision by KNU about taking title, this runs counter to the notion of any automatic vesting.

Nor are the Presidential Decree, Technology Development Promotion Act, or MOST regulations helpful to Defendants' cause. The Presidential Decree did not become effective until March 2002, after Lee assigned rights to KAIST and after KAIST filed the Korean application. In any event, the decree does no more than govern the relationship between the government and the research institution, as opposed to the relationship between the government and the inventor. Similarly, the Technology Development Promotion Act gives MOST the power to establish a research and development program, but does not by itself effect transfer of IP rights in government-funded projects to participating institutions. *See generally* Technology Development Promotion Act [Dkt. # 229-17]. And the MOST regulations simply define the necessary steps for carrying out government-funded research. *See*

---

(opining that "a Korean court would base the completion of the invention on the description of the specification" rather than reduction to practice).

Specified R&D Project Processing Regs. [Dkt. # 297-31] at Art. 1 ("These regulations are for the purpose of defining the specific matters necessary for efficiently carrying out specified R&D projects, pursuant to the regulations of the *Technology Promotion Act* . . . ."). Simply put, none of these operated to transfer the subject matter from Lee to either university.[4]

As for the research reports, neither Defendants nor the Court have any way of knowing whether these reports reflect a previous assignment, an expectation that the '055 Patent *would* be assigned, or a mistaken belief that it had already been assigned. Thus, they are insufficient to establish ownership vested with either university prior to the assignment from Lee to KAIST.

Clearly the regulations and legislation contemplate that the Korean government and universities would benefit from the research they support by at least giving the supervising institution the right to acquire ownership of any sponsored inventions. Defendants, however, have not established these regulations and legislation caused automatic vesting of ownership in either university. Absent some express assignment of rights, this compels a conclusion that Professor Lee retained ownership of both the Korean application and the '055 Patent. Accordingly, the Court should **deny** the motion.

---

[4] Neither university has asserted ownership of the '055 Patent in this proceeding. While that is not evidence on which to base a decision, one would expect either or both universities to vigorously assert any colorable claim of ownership given the damages at issue. Notably, the lack of such an assertion is consistent with the conclusion they have no such colorable claim.

## IV. RECOMMENDATION

Defendants agree Plaintiff is the record assignee and owner of the '055 Patent. Joint Final Pretrial Order [Dkt. # 323] at 12. They have not, however, shown that ownership of the asserted patent's subject matter vested with either KNU or Wonkwang by operation of law, and there is no express assignment from Lee to either university. Accordingly, Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(c) (Dkt. # 229) should be **DENIED**.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings, and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**SIGNED this 24th day of June, 2018.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE