IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| KAIST IP US LLC, § <br> § <br> Plaintiff § <br> § <br> v. § <br> § <br> SAMSUNG ELECTRONICS CO., LTD.; § <br> SAMSUNG ELECTRONICS AMERICA, § <br> INC.; SAMSUNG SEMICONDUCTOR, § <br> INC.; SAMSUNG AUSTIN § <br> SEMICONDUCTOR, LLC; § <br> GLOBALFOUNDRIES INC.; § <br> GLOBALFOUNDRIES U.S. INC.; and § <br> QUALCOMM INC., § <br> § <br> Defendants. § | NO. 2:16-cv-01314-JRG-RSP <br><br> JURY TRIAL DEMANDED |

**DEFENDANTS' MOTION TO STAY CASE
PENDING *EX PARTE* REEXAMINATION**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................... 1
II. BACKGROUND ....................................................................................................... 2
    A. Stage of the Proceedings in this Court .......................................................... 2
    B. Overview of Reexamination Proceeding ...................................................... 2
III. LEGAL STANDARD ............................................................................................... 4
IV. ARGUMENT ............................................................................................................ 6
V. CONCLUSION ....................................................................................................... 13

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cherokee Nation of Okla. v. United States*,
    124 F.3d 1413 (Fed. Cir. 1997) ................................................................................................4

*Clinton v. Jones*,
    520 U.S. 681 (1997) ..................................................................................................................4

*CyWee Grp., Ltd., v. Samsung Elecs. Co.*,
    No. 2:17-CV-00140-WCB-RSP, slip op. (E.D. Tex. Feb. 14, 2019) ....................5, 10, 11, 12

*EchoStar Techs. Corp. v. TiVo, Inc.*,
    No. 5:05-cv-81, 2006 WL 2501494 (E.D. Tex. July 14, 2006) ................................................4

*ePlus, Inc. v. Lawson Software, Inc.*,
    760 F.3d 1350 (Fed. Cir. 2014) .................................................................................................6

*Evolutionary Intelligence, LLC v. Apple, Inc.*,
    2014 U.S. Dist. LEXIS 2763 (N.D. Cal. Jan. 9, 2014) ...................................................6, 10, 11

*Flexiteek Ams., Inc. v. PlasTEAK, Inc.*,
    No. 08–60996–CIV, 2010 WL 2976859 (S.D. Fla. July 20, 2010) ........................................10

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
    721 F.3d 1330 (Fed. Cir. 2013) ..............................................................................................6, 7

*Image Processing Techs., LLC v. Samsung Elecs. Co.*,
    No. 2:16-cv-505, 2017 WL 7051628 (E.D. Tex. Oct. 25, 2017) ..............................................5

*Landis v. North Am. Co.*,
    299 U.S. 248 (1936) ..................................................................................................................4

*Murata Mach. USA v. Daifuku Co.*,
    830 F.3d 1357 (Fed. Cir. 2016) .................................................................................................5

*NFC Tech LLC v. HTC Am., Inc.*,
    No. 2:13-cv-1058 (E.D.Tex. Mar. 11, 2015) (Bryson, J.) ........................................................6

*NFC Tech. LLC v. HTC Am., Inc.*,
    No. 2:13-CV-1058-WCB, 2015 WL 1069111 (E.D. Tex. Mar. 11, 2015) ..............................5

*Norman IP Holdings, LLC v. TP-Link Techs., Co.*,
    No. 6:13-cv-384, 2014 WL 5035718 (E.D. Tex. Oct. 8, 2014) ................................................5

*Papst Licensing GmbH & Co., KG v. Apple, Inc.*,
    No. 6:15-cv-1095, 2018 WL 3656491 (E.D. Tex. Aug. 1, 2018) .............................................4

*Slip Track Sys., Inc. v. Metal Lite, Inc.*,
    159 F.3d 1337 (Fed. Cir. 1998) ............................................................................. 6, 11

*Smartflash LLC v. Apple Inc.*,
    621 F. App'x 995 (Fed. Cir. 2015) ............................................................................. 13

*Ultratec, Inc. v. CaptionCall, LLC*,
    611 F. App'x 720 (Fed. Cir. 2015) ............................................................... 4, 8, 10

*Ultratec, Inc. v. Sorenson Commc'ns, Inc.*,
    No. 13-cv-346-bbc, 2015 U.S. Dist. LEXIS 62561 (May 13, 2015) ............................. 7, 10, 12

*Veraseal LLC v. Wal-Mart Stores, Inc.*,
    No. 2:17-CV-00527-JRG (E.D. Tex. May 10, 2018) ............................................................ 10

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,
    No. C 12-05501 SI, 2014 U.S. Dist. LEXIS 4025 (N.D. Cal. Jan. 13, 2014) ......................... 12

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
    759 F.3d 1307 (Fed. Cir. 2014) ............................................................................. 10, 11

*WesternGeco L.L.C. v. ION Geophysical Corp.*,
    Nos. 2013-1527, 2014-1121, 2014-1526, 2014-1528, 2019 U.S. App. LEXIS
    998 (Fed. Cir. Jan. 11, 2019) ............................................................................. 8

**Other Authorities**

MPEP 2272 ............................................................................................................. 9

MPEP 2273 ............................................................................................................. 4, 9

MPEP 2281 ............................................................................................................. 3

## I. INTRODUCTION

There has been a dramatic shift in the landscape of this case. On June 18, 2019, the United States Patent and Trademark Office ("PTO") Examiners issued a 106-page, detailed and well-reasoned Final Office Action in the *ex parte* reexamination, rejecting all claims asserted in this action based on multiple independent grounds of invalidity, including anticipation and obviousness. The Examiners' exhaustive review included consideration of all of Plaintiff's arguments presented in a two-hour in-person interview, a 145-page response and a 301-page declaration by its trial expert, Dr. Kuhn. There is a high likelihood that the patent claims asserted in this case will be finally adjudicated invalid. It is well within this Court's discretion to stay the case, in light of this significant cloud over the validity of all asserted claims of the patent in suit.

The simplification of issues is considered paramount in this District when balancing factors to decide whether to grant a stay. A stay of this case would vastly simplify issues, if not obviate all of them, if the asserted claims are canceled, as was found by **three** PTO Examiners in the Central Reexamination Unit—two primary examiners and one supervisory patent examiner.[1] Under such circumstances, Defendants respectfully contend that it would not be an efficient or productive use of the Court's resources to decide the numerous pending, highly complex post-trial motions, which address virtually every contested issue from trial. Staying this case presents very limited prejudice to Plaintiff. As a non-practicing entity that does not compete with Defendants, Plaintiff would suffer no immediate or future losses, and, if successful, would be

---

[1] "The Central Reexamination Unit (CRU) oversees the examination and handling of all post-grant patent proceedings, including *ex parte* reexaminations, supplemental examinations, and reissue applications…. The CRU is staffed **with senior primary patent examiners** and supervisory patent examiners having a **wide range of technical expertise and advanced patent legal knowledge**." *See* https://www.uspto.gov/about-us/organizational-offices/office-commissioner-patents/office-deputy-commissioner-patent-37 (emphasis added).

fully compensated by monetary damages and interest.  In contrast, not staying this case would unnecessarily burden the Court and present significant prejudice to Defendants, requiring substantial resources to be potentially wasted on post-trial motions and an appeal on patent claims that now face a high likelihood of being canceled.  The most reasonable approach is to stay this case pending resolution of the *ex parte* reexamination.  Defendants, therefore, request that this motion to stay be granted.

## II.     BACKGROUND

### A.     Stage of the Proceedings in this Court

KIPB LLC, formerly KAIST IP US LLC, ("Plaintiff"), brought this lawsuit on November 29, 2016, alleging that Defendants infringe U.S. Patent No. 6,885,055 ("the '055 Patent").  Trial took place before this Court on June 11 through June 15, 2018.  The jury found the Samsung Defendants liable for willful infringement, the patent not invalid, and damages in the amount of $400,000,000.  *See* Dkt. 499.  Defendants subsequently filed post-trial motions for judgment as a matter of law and for a new trial on infringement, invalidity, willfulness, and damages.  *See* Dkt. 577-580.  Plaintiff in turn has filed motions for enhancement of damages, attorney's fees, and entry of judgment with pre-judgment interest.  *See* Dkt. 585–587.  A hearing before the Court on these seven motions is currently set for July 25, 2019.

### B.     Overview of Reexamination Proceeding

Defendants filed a request for *ex parte* reexamination on October 31, 2018, challenging the validity of all patent claims asserted at trial in the district court litigation (*i.e.*, '055 Patent,

claims 1–6, 11–13 and 15–17).[2] The Central Reexamination Unit (CRU) of the PTO evaluated this request and ordered reexamination on December 21, 2018, based on its finding of "substantial new questions of patentability." See Ex. 1 at 2.

On February 13, 2019, the PTO issued its first Office Action, rejecting all challenged claims based upon multiple, independent grounds of invalidity, including both anticipation and obviousness. Plaintiff responded on April 15, 2019, with a 145-page response and 301-page declaration from its trial expert, Dr. Kelin J. Kuhn. On May 9, 2019, Plaintiff participated in an interview—extended to two hours on Plaintiff's request—that included the following six participants: (1) PTO Primary Examiner Kenneth Whittington, (2) PTO Primary Examiner James A. Menefee, (3) PTO Supervisory Patent Examiner Hetul B. Patel, (4) Justin Poplin—attorney for Plaintiff in reexamination, (5) Andrew Choung—lead counsel for Plaintiff in this action, and (6) Plaintiff's expert, Dr. Kuhn.[3] After the two-hour interview, the PTO Examiners concluded that "no agreement as to the claims or their patentability thereof was reached during the interview," and wrote an Interview Summary that included a summary of the Examiners' discussion with Plaintiff's counsel and expert, along with a 56-page slide presentation provided by Plaintiff's counsel during the interview.

On June 18, 2019, the PTO Examiners issued a 106-page Final Office Action, again rejecting all asserted claims of the '055 Patent, on multiple, independent grounds of invalidity, including both anticipation and obviousness. See Ex. 2 at 103. Plaintiff can appeal these final

---

[2] The request was based on prior art references that had been disclosed during the litigation, but which were not presented at trial due to time constraints and consistent with practice in this District, along with other prior art references that were located post-trial in connection with proceedings in Korea over the Korean counterpart patent.
[3] Given the *ex parte* nature of the proceeding, no one from Samsung was permitted to attend or otherwise participate in the Examiner interview, in accordance with PTO rules. See MPEP 2281.

rejections to the Patent Trial and Appeal Board (PTAB) immediately. *See* PTO Manual of Patent Examining Procedure ("MPEP") 2273 ("The patent owner may appeal to the Board only after the final rejection of the claims.").

### III. LEGAL STANDARD

A district court has broad discretion to stay proceedings as part of its power to control its own docket. *See Clinton v. Jones*, 520 U.S. 681, 706 (1997).

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

*Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936); *see also Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997) ("The power of a federal trial court to stay its proceedings, even for an indefinite period of time, is beyond question."). Even at the post-verdict stage, "a district court is given considerable leeway in the exercise of its judgment in granting a stay . . . ." *Ultratec, Inc. v. CaptionCall, LLC*, 611 F. App'x 720, 721-22 (Fed. Cir. 2015) (citing cases).

In deciding whether to stay litigation pending reexamination, courts will consider: (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and a trial date has been set. *See, e.g., Papst Licensing GmbH & Co., KG v. Apple, Inc.*, No. 6:15-cv-1095, 2018 WL 3656491, at *2 (E.D. Tex. Aug. 1, 2018) (citing cases). Based on these factors, courts determine whether the benefits of a stay outweigh the inherent costs of postponing resolution of the litigation. *See EchoStar Techs. Corp. v. TiVo, Inc.*, No. 5:05-cv-81, 2006 WL 2501494, at *1 (E.D. Tex. July 14, 2006).

Judge Bryson of the Federal Circuit, sitting by designation in the Eastern District of Texas, looked to the policy underlying the stay factors set by Congress for Covered Business Method (CBM) proceedings, and concluded that a fourth factor is essential to the stay analysis in contexts of post-grant validity challenges before the PTO. *CyWee Grp., Ltd., v. Samsung Elecs. Co.*, No. 2:17-CV-00140-WCB-RSP, slip op. at 4 (E.D. Tex. Feb. 14, 2019) (granting stay after close of discovery and a few months before trial, even though *inter partes* reviews were instituted on less than all challenged claims, and no claims were rejected or found invalid). Namely, Judge Bryson concluded that this "fourth factor, which requires an inquiry into whether a stay will reduce the burden of litigation on the parties and the court, indicates that special attention should be given to minimizing the burdens of litigation." *Id*. Judge Bryson considered the fourth factor as part of the "simplifying the issues" factor. *Id*.; *see also NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-CV-1058-WCB, 2015 WL 1069111, at *2 (E.D. Tex. Mar. 11, 2015) ("[S]pecial attention should be given to minimizing the burdens of litigation").

While these factors inform the Court's inquiry, the factors are "not a prescriptive template," and the analysis is not limited to them. *CyWee Grp.*, No. 2:17-CV-00140-WCB-RSP, slip op. at 6. Instead, the analysis is conducted on a case-by-case basis, viewing the totality of circumstances. *See Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1362 (Fed. Cir. 2016) (finding that the court has the "discretionary prerogative to balance considerations beyond those captured by the three-factor stay test"); *Norman IP Holdings, LLC v. TP-Link Techs., Co.*, No. 6:13-cv-384, 2014 WL 5035718, at *2 (E.D. Tex. Oct. 8, 2014) ("[U]ltimately the Court must decide stay requests on a case-by-case basis."); *Image Processing Techs., LLC v. Samsung Elecs. Co.*, No. 2:16-cv-505, 2017 WL 7051628, at *1 (E.D. Tex. Oct. 25, 2017) ("motions to stay are highly individualized matters"). "A stay may also be granted in order to avoid inconsistent

results, obtain guidance from the PTAB, or avoid needless waste of judicial resources."
*Evolutionary Intelligence, LLC v. Apple, Inc.*, 2014 U.S. Dist. LEXIS 2763, at *7 (N.D. Cal. Jan. 9, 2014).

## IV. ARGUMENT

The totality of circumstances, including the above factors, weighs in favor of a stay.

*First*, a stay would substantially simplify issues and foster judicial economy. Simplification of the issues is the **most important factor**, *NFC Tech LLC v. HTC Am., Inc.*, No. 2:13-cv-1058 (E.D.Tex. Mar. 11, 2015) (Bryson, J.), and favors a stay here. In particular, cancellation of the asserted claims would be binding and dispositive of the entire case; it would also resolve all issues raised in the post-trial motions. *See ePlus, Inc. v. Lawson Software, Inc.*, 760 F.3d 1350, 1355-57 (Fed. Cir. 2014) (vacating permanent injunction, contempt finding and damages award after PTO canceled infringed claim); *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013) ("[W]hen a [patent] claim is canceled, the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes moot."); *Slip Track Sys., Inc. v. Metal Lite, Inc.*, 159 F.3d 1337, 1341 (Fed. Cir. 1998) (stays justified where "the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were canceled in the reexamination, would eliminate the need to try the infringement issue.").

Simplifying the issues and judicial economy weigh heavily in the balance, even in a case that has reached the post-verdict stage. In an analogous case from the Western District of Wisconsin, Judge Crabb granted a stay in similar circumstances, concluding that the benefit from a stay pending an appeal from the PTAB proceedings outweighed any prejudice to the patent owner even though the case was at an advanced stage post-trial. In particular, Judge Crabb noted that there were numerous pending post-trial motions requiring a decision on virtually every

contested issue in the case, including infringement, validity and damages, and that the appeal from the PTAB's cancellation decision could dispose of the entire case. *Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, No. 13-cv-346-bbc, 2015 U.S. Dist. LEXIS 62561, at *6 (May 13, 2015). That is exactly the circumstance here. Judge Crabb found that the PTO's guidance on validity of the patent was "important" and that a stay would "simplify the case, avoid a needless waste of judicial resources and prevent inconsistent results between the inter partes review and this litigation." *Id.* at *10.

In *Ultratec v. Sorenson*, Judge Crabb found that the prospect of invalidating all asserted claims militated in favor of a stay even though the jury had rendered its verdict and post-verdict motions had been briefed. In distinguishing her two previous denials of a request for a stay, Judge Crabb recognized that "the Federal Circuit has made clear that patent cancellation has a binding effect on pending district court litigation." *Id.* at *11 (citing *Fresenius*, 721 F.3d at 1340). The binding effect applies even if the issue of validity was finally decided in the district court litigation and upheld on appeal. *Fresenius*, 721 F.3d at 1340. Judge Crabb thus concluded that it would be a waste of resources to continue judicial proceedings that have a substantial chance of being mooted by the PTAB: "As long as any portion of this case remained open at the time the court of appeals ruled on the board's final decisions (which is highly likely given the timing of the appeals processes), cancellation of the patent claims would moot plaintiffs' infringement claims." *Ultratec v. Sorenson*, 2015 U.S. Dist. LEXIS 62561 at *12.

The Federal Circuit upheld the post-verdict stay in *Ultratec v. Sorenson*. In reaching that result, the Federal Circuit reasoned that "guidance from related PTO proceedings can play a critical role in determining whether to stay proceedings," and quoted its prior precedent finding a stay justified "'because the outcome of the reexamination would be likely to assist the court in

determining patent validity and, if the claims were canceled in the reexamination, would eliminate the need to try the infringement issue.'" *Ultratec v. CaptionCall*, 611 F. App'x at 722 (quoting *Slip Track Sys.*, 159 F.3d at 1341). The Federal Circuit stated that "[t]he extent of remaining post-judgment motions in this case plausibly favors a stay," and that the patentees "cite no authority that precludes a district court from staying proceedings once a jury has rendered a verdict, while the district court and Respondents cite contrary cases." *Id.* Indeed, the Federal Circuit noted that it had previously "direct[ed] [a] district court to grant a stay of damages and injunction proceedings pending appeal of PTO reexamination after [the] jury had rendered its verdict." *Id.* (citing *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 996 F.2d 1236, 1993 WL 172432 at *1 (Fed. Cir. 1993) (unpublished)). In light of these considerations, the Federal Circuit concluded that it was within Judge Crabb's discretion to enter a post-verdict stay.

These same considerations favor a stay here. Given the substantive detail, extent and thoroughness of the rejections by three experienced Examiners, on multiple and independent grounds of invalidity for all asserted claims, it is highly likely that the asserted claims will ultimately be invalidated and canceled. Indeed, at a minimum, if even one of the 12 asserted claims is canceled, there would be a new trial since the special verdict form in this case did not identify which of the 12 asserted claims the jury found infringed, Dkt. 499. *See WesternGeco L.L.C. v. ION Geophysical Corp.*, Nos. 2013-1527, 2014-1121, 2014-1526, 2014-1528, 2019 U.S. App. LEXIS 998, at *12-13 (Fed. Cir. Jan. 11, 2019) (remanding case to the district court after the PTAB found four of six asserted patent claims unpatentable, reasoning that "[t]he jury instruction and verdict form did not instruct the jury to award damages based separately on infringement of each of the asserted claims" and "[t]he general rule is that when a jury was told it

could rely on any of two or more independent legal theories, one of which was defective, the general verdict must be set aside").

This Court is facing seven complex post-trial motions raising a multitude of difficult issues. This Court would have to expend substantial effort resolving those motions that would be completely wasted in the likely event that at least some claims are canceled. In addition to its motions for judgment as a matter of law, Samsung has raised substantial grounds for a new trial on all issues. If the Court were to grant a new trial, the time and resources of the Court, the jury, and the parties expended in that retrial would be for naught, if the cancellation of claims is subsequently upheld. If the Court were to resolve the post-trial motions without granting a new trial, the losing side would inevitably appeal the judgment, requiring substantial expenditure of time and resources of the parties and the Court of Appeals that would likewise be wasted if the claims were ultimately canceled.[4] In fact, the timelines for the two separate appeals from the PTAB and this Court to the Federal Circuit would likely overlap, and the Federal Circuit would likely wait to decide the appeal from this Court's judgment until after it decides the PTAB

---

[4] Absent delay tactics by Plaintiff in the PTAB, the PTAB appeal will be resolved in a matter of months. The PTO "intend[s] that prosecution before the examiner in a reexamination proceeding will be concluded with the final action." MPEP 2272. Thus, KIP can file its notice of appeal to the PTAB anytime and was able to do so since June 18. *See* MPEP 2273 ("The patent owner may appeal to the Board only after the final rejection of the claims."). PTAB Appeals of decisions by the CRU, such as the final rejections here, take 5-8 months on average to complete, with the number trending downward. *See* PTAB, Appeal and Interference statistics (May 31, 2019), at slide 4 (showing an average pendency of 5.7 months in 2019 and 8.1 months in 2018 for CRU appeals at the PTAB, *available at* https://www.uspto.gov/sites/default/files/documents/appeal_and_interference_statistics_may2019.pdf. Given these statistics, Plaintiff could proceed with its notice of appeal filing and have the PTAB appeal decided by the end of this year.

appeal. Thus, proceeding with post-trial motions now would not be an efficient or productive use of this Court's resources. [5]

Minimizing the burden on the Court and the parties is a critical consideration, especially where the potential outcome is final disposition of the entire case. *See VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1314 (Fed. Cir. 2014) (noting that reexamination could "dispose of the entire litigation: the ultimate simplification of issues."); *Evolutionary Intelligence*, 2014 U.S. Dist. LEXIS 2763, at *7 (noting the value in "avoid[ing] needless waste of judicial resources"). Judicial economy thus strongly favors a stay. *See Ultratec v. Sorenson*, 2015 U.S. Dist. LEXIS 62561, at *14;[6] *Veraseal LLC v. Wal-Mart Stores, Inc.*, No. 2:17-CV-00527-JRG (E.D. Tex. May 10, 2018); *Flexiteek Ams., Inc. v. PlasTEAK, Inc.*, No. 08–60996–CIV, 2010 WL 2976859, at *5-6 (S.D. Fla. July 20, 2010) (terminating permanent injunction and staying execution of final judgment and post-judgment discovery pending appeal of final decision in *ex parte* reexamination).

***Second***, a stay would allow the Court to benefit from the PTAB's objective analysis and expertise, particularly where the asserted patent, prior art and state of the art as known to a person of ordinary skill are complex and nuanced. *See CyWee Grp.*, No. 2:17-CV-00140-WCB-

---

[5] Even if an appeal from this Court is decided by the Federal Circuit before it rules on an appeal from the PTAB, the verdict in this case would still be vacated by an affirmance of cancellation by the PTO if there is anything left for this Court to decide in this case following the Federal Circuit appeal. In other words, given the complex issues in this case, there is a strong possibility that the Court's resources spent resolving all post-trial issues are wasted even if the Federal Circuit rules on an appeal from this Court before it decides an appeal from the reexamination.

[6] In *Ultratec v. Sorenson*, the PTAB had already rendered a decision at the time of the stay, and both the district court and the Court of Appeals found the advanced stage of the IPR proceedings there to mitigate the prejudice to the patentee as a direct competitor of the defendant. *Ultratec v. CaptionCall*, 611 F. App'x at 722-723; *Ultratec v. Sorenson*, 2015 U.S. Dist. LEXIS 62561 at *14. But here, the timing of the PTAB proceeding is ***irrelevant*** since delay does not prejudice Plaintiff as a non-practicing entity. *See infra* at 10.

RSP, slip op. at 19 ("Finally, even if the PTAB does not invalidate any of the claims in the pending IPR proceedings, the expertise of the PTAB judges in this field of art is likely to be of considerable assistance to the Court in this complex case."); *Slip Track Sys.*, 159 F.3d at 1341 ("The stay was justified in that case because the outcome of the reexamination would be likely to assist the court in determining patent validity"). For example, prior art *Mizuno* (Japanese Published Patent Application No. 1996-139325) relied on by the PTO Examiners is related and substantially similar to U.S. Patent No. 5,844,278 ("*US Mizuno*"),[7] which was the primary prior art reference asserted in Defendants' invalidity arguments at trial, and is at issue in Defendant's motions for JMOL and new trial on invalidity. Even if all claims are not canceled, this Court will benefit from the PTAB's guidance. *See Evolutionary Intelligence*, 2014 U.S. Dist. LEXIS 2763, at *7 ("A stay may also be granted in order to . . . obtain guidance from the PTAB . . . .").

*Third*, a stay will not prejudice Plaintiff. Plaintiff is a non-practicing entity, comprised of two principals, and does not compete with the Defendants. Courts have consistently found that there is no prejudice to a non-practicing entity for any delay, since the entity would be compensated by damages and pre- and/or post-judgment interest if the patent turned out to be not invalid. *See, e.g., VirtualAgility*, 759 F.3d at 1318 (finding no undue prejudice, since a stay "only delays realization of . . . damages"); *CyWee Grp.*, No. 2:17-CV-00140-WCB-RSP, slip op. at 9-10; *see also Stragent LLC v. BMW of N. Am, LLC*, No. 6:16-cv-446, 2017 WL 3709083, at *2 (E.D. Tex. July 11, 2017) ("mere delay in collecting those damages does not constitute undue

---

[7] In the reexamination, the PTO found that *Mizuno* and *US Mizuno* were substantially the same disclosures. *See* Ex. 2, (Order Granting Request for *Ex Parte* Reexamination) at 29 ("Examiners additionally find that *Mizuno* and the *US Mizuno* Patent have identical figures (albeit renumbered) and substantially the same disclosures, except for the redrafting for the figure changes.").

prejudice" (quoting *Crossroads Sys., Inc. v. Dot Hill Sys. Corp.*, No. 13-ca-1025, 2015 WL 3773014, at *2 (W.D. Tex. June 16, 2015))).

In addition to monetary damages, Plaintiff's affiliated company in Korea has been able to leverage the jury's verdict in this case to enter into favorable settlements and licensing deals with Apple and TSMC in related proceedings in Korea. *See* Exs. 3 and 4. The compensation that Plaintiff has derived (and will derive) from settlements, which presumably include a non-refundable cash component, also weighs against any finding of imminent prejudice.

*Finally*, there is no tactical disadvantage to Plaintiff. Tactical disadvantage may occur, for example, where the parties are direct competitors and a lack of an injunction could bestow advantages in the marketplace. *See, e.g.*, *Verinata Health, Inc. v. Ariosa Diagnostics, Inc*., No. C 12-05501 SI, 2014 U.S. Dist. LEXIS 4025, at *3 (N.D. Cal. Jan. 13, 2014). But the benefits of a stay can outweigh even a tactical disadvantage to direct competitors: the parties in *Ultratec v. Sorenson* were direct competitors, and the Court still found that the benefit of a stay outweighed far greater prejudice than Plaintiff would ever face here, such as loss of market share. *Ultratec v. Sorenson*, 2015 U.S. Dist. LEXIS 62561 at *14.

Furthermore, there is no risk of tactical disadvantage in this litigation; the post-trial motions are all fully briefed. *See CyWee Grp.*, No. 2:17-CV-00140-WCB-RSP, slip op. at 12. Finally, Defendants can hardly be accused of withholding prior art from this litigation or seeking to place Plaintiff at a tactical disadvantage in the PTO proceedings; the pending reexamination (although requested by Samsung) is *ex parte*, and Samsung cannot participate.

As a result, there is no prejudice to Plaintiff whatsoever by a stay of this case, whether in the form of financial or strategic disadvantage. In contrast, denying a stay would require Defendants either to conduct a new trial (if this Court grants that relief) or potentially appeal a

final judgment. None of those expenditures would be necessary if the patent claims are ultimately canceled. Thus, the relative prejudice to Defendants is substantial.

These considerations, combined with all the benefits conferred on the Court in the conservation of judicial resources and simplification of issues, demonstrate that a stay of this case is the most appropriate, fair and efficient action at this time under the totality of circumstances.[8]

## V.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court stay this case until final determination of the PTO's rejections at the Federal Circuit, or alternatively, until a decision by the PTAB, after which the parties submit a status report and the Court decides whether to proceed with post-trial motions or continue the stay through appeal.

---

[8] During the telephonic conference yesterday, Plaintiff placed primary reliance on *Smartflash LLC v. Apple Inc.*, 621 F. App'x 995 (Fed. Cir. 2015), a wholly distinguishable case. In *Smartflash*, the PTAB had merely instituted review under the special procedures for Covered Business Method (CBM) patents; there was no agency finding (as here) that all asserted claims were invalid. Moreover, the Court's decision turned on facts peculiar to the record in that case and strategic considerations in the filing of CBM petitions that are inapplicable to *ex parte* reexaminations, and the Court had already ruled on post-trial motions. *See id.*

Dated: June 26, 2019　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　/s/ Allan M. Soobert
　　　　　　　　　　　　　　　　　　　　Allan M. Soobert
　　　　　　　　　　　　　　　　　　　　Blair M. Jacobs
　　　　　　　　　　　　　　　　　　　　Stephen B. Kinnaird (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　PAUL HASTINGS LLP
　　　　　　　　　　　　　　　　　　　　875 15th Street, N.W.
　　　　　　　　　　　　　　　　　　　　Washington, DC 20005
　　　　　　　　　　　　　　　　　　　　Telephone:  (202) 551-1700
　　　　　　　　　　　　　　　　　　　　Facsimile:  (202) 551-1705
　　　　　　　　　　　　　　　　　　　　allansoobert@paulhastings.com
　　　　　　　　　　　　　　　　　　　　blairjacobs@paulhastings.com
　　　　　　　　　　　　　　　　　　　　stephenkinnaird@paulhastings.com

　　　　　　　　　　　　　　　　　　　　Christopher W. Kennerly
　　　　　　　　　　　　　　　　　　　　Joseph J. Rumpler, II
　　　　　　　　　　　　　　　　　　　　PAUL HASTINGS LLP
　　　　　　　　　　　　　　　　　　　　1117 S. California Avenue
　　　　　　　　　　　　　　　　　　　　Palo Alto, CA 94304
　　　　　　　　　　　　　　　　　　　　Telephone:  (650) 320-1800
　　　　　　　　　　　　　　　　　　　　Facsimile:  (650) 320-1900
　　　　　　　　　　　　　　　　　　　　chriskennerly@paulhastings.com
　　　　　　　　　　　　　　　　　　　　josephrumpler@paulhastings.com

　　　　　　　　　　　　　　　　　　　　Ariell Bratton (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　PAUL HASTINGS LLP
　　　　　　　　　　　　　　　　　　　　4747 Executive Drive, 12th Floor
　　　　　　　　　　　　　　　　　　　　San Diego, CA 92121
　　　　　　　　　　　　　　　　　　　　Telephone: (858) 458-3000
　　　　　　　　　　　　　　　　　　　　Facsimile: (858) 458-3005

　　　　　　　　　　　　　　　　　　　　ariellbratton@paulhastings.com

　　　　　　　　　　　　　　　　　　　　Soyoung Jung (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　PAUL HASTINGS LLP
　　　　　　　　　　　　　　　　　　　　515 South Flower Street, 25th Floor
　　　　　　　　　　　　　　　　　　　　Los Angeles, CA 90071
　　　　　　　　　　　　　　　　　　　　Telephone: (213) 683-6000
　　　　　　　　　　　　　　　　　　　　Facsimile: (213) 627-0705
　　　　　　　　　　　　　　　　　　　　soyoungjung@paulhastings.com

　　　　　　　　　　　　　　　　　　　　Grant N. Margeson
　　　　　　　　　　　　　　　　　　　　PAUL HASTINGS LLP
　　　　　　　　　　　　　　　　　　　　101 California Street, Forty-Eighth Floor
　　　　　　　　　　　　　　　　　　　　San Francisco, CA 94111

        Telephone: (415) 856-7000
        Facsimile: (415) 856-7100
        grantmargeson@paulhastings.com

        Melissa R. Smith
        Texas State Bar No. 24001351
        Harry L. Gillam, Jr.
        Texas State Bar No. 07921800
        GILLAM & SMITH, LLP
        303 S. Washington Ave.
        Marshall, TX 75670
        Telephone:  (903) 934-8450
        Facsimile:  (903) 934-9257
        melissa@gillamsmithlaw.com
        gil@gillamsmithlaw.com

        COUNSEL FOR DEFENDANTS SAMSUNG ELECTRONICS CO., LTD.; SAMSUNG ELECTRONICS AMERICA, INC.; SAMSUNG SEMICONDUCTOR, INC.; SAMSUNG AUSTIN SEMICONDUCTOR, LLC; GLOBALFOUNDRIES INC.; GLOBALFOUNDRIES U.S. INC.; and QUALCOMM INCORPORATED

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on this 26th day of June, 2019. As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and by email.

*/s/ Allan M. Soobert*
Allan M. Soobert

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rules CV-7(h) and (i), counsel for the parties met and conferred on June 26, 2019. Plaintiff indicated that it opposes this motion.

*/s/ Allan M. Soobert*
Allan M. Soobert