# KAIST IP US LLC

## v.

# Samsung Electronics Co., LTD., et al.,

Defendants' Motion for JMOL on No Willfulness (Dkt. 578)

July 25, 2019

# JMOL of No Willfulness Should Be Granted

1) Essential Hafnium Oxide feature of 14nm FinFETs *was not disclosed* by anything Prof. Lee patented or described as his invention

2) No evidence of Copying

3) Plaintiff is *estopped* to argue that Samsung relied on the '055 patent or anything Professor Lee said

4) No evidence that Samsung acted "maliciously" or "acted like a pirate"

# Mere Intentional Or Knowing Infringement Insufficient; "malicious" "egregious" Conduct Required



"[S]uch [willfulness] findings 'are generally reserved for egregious cases of culpable behavior.' Indeed, as Justice Breyer emphasized in his concurrence, it is the *circumstances* that transform simple 'intentional or knowing' infringement into egregious, sanctionable behavior, and that makes all the difference."

*SRI Int'l, Inc. v. Cisco Sys., Inc.*, 918 F.3d 1368, 1381 (Fed. Cir. 2019) (quoting Halo) (vacating denial of JMOL of no willful infringement and remanding to consider whether there was substantial evidence occurring after knowledge of patent). Note: Section V of opinion (attorney's fees) modified on July 12, 2019



Requires more than simply knowing about the patent; there must be "*egregious*" or "*malicious*" behavior "*characteristic of a pirate*"

*Erfindergemeinschaft Uropep Gbr v. Eli Lilly & Co.*, No. 2:15-cv-1202-WCB, Dkt. 359 at 2, 5 (E.D. Tex. May 18, 2017) (granting JMOL for no willfulness)

# Actions Taken Before the Patent Issues Are Irrelevant



"To willfully infringe a patent, *the patent must exist* and one must have knowledge of it…. Filing an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents. What *the scope of claims in patents* that do issue will be *is something totally unforeseeable*."

*Diamond Grading Techs. Inc. v. Am. Gem Soc'y, 2:14-cv-1161-RWS-RSP, 2016 WL 3902482, at *2 (E.D. Tex. Mar. 30, 2016)*



"I will also instruct the jury that *before the date of issuance*, Plaintiff's product *was an unpatented product* (or something similar). Thus, I will make sure that *the jury does not find the Defendant acted willfully for non-infringing and lawful conduct*."

*Nox Med. Ehf v. Natus Neurology Inc.*, No. CV 15-709-RGA, 2018 WL 6629704, at *2 (D. Del. Apr. 12, 2018)

4

# Copying for Willfulness Is Typically Slavish Copying of a Competitor's Specific Product



"Under two non-disclosure agreements, Georgetown *disclosed* to Holland *the details of its Aurora system*. The only detail that was not shared was Georgetown's source code used to process the collected data."

*Georgetown Rail Equip. Co. v. Holland L.P.*, No. 6:13-CV-366-RWS, 2016 WL 3346084, at *17 (E.D. Tex. June 16, 2016)



"Defendant's *deliberate copying*, including that, a mere eight days *after learning about the patent*, Defendant *drafted a secret dossier* in which it *sought information regarding nineteen different aspects about Plaintiffs' technology*"

*Green Mt. Glass LLC v. Saint-Gobain Containers, Inc.*, 300 F. Supp. 3d 610, 621 (D. Del. 2018)



"Fairchild engaged in the *blatant copying* of [Power's] patented feature"

*Green Mt. Glass LLC v. Saint-Gobain Containers, Inc.*, 300 F. Supp. 3d 610, 621 (D. Del. 2018)

5

# No Willfulness Ground 1:

The Hafnium layer necessary for 14nm FinFETs is not attributable to Prof. Lee



# Professor Lee's 2002/2003 Papers Did Not Disclose High-K Layer

Prof. Lee Paper

PX-0669



Fig. 1 Body-tied FinFET structure for 3-dimensional device simulations.

- SiO$_2$ gate oxide
- No disclosure of any high-k dielectric

# In 2012, Prof. Lee Credited Intel, Not Himself, With Industry-Leading FinFET Because of High-K

**2012 Presentation**



PX0878



# "Groundbreaking" Hafnium— Avoided by Prof. Lee— Was Essential for a Commercially Viable 14nm Device

**Dr. Kuhn**



**Plaintiff's Expert Witness**

Q. So if he [Gordon Moore] said in 2007 this move to High-k Hafnium oxide was groundbreaking and the biggest development in transistor technology in the past 60 years, people would have known about that right?

A. Yes, sir.

. . .

Q. … And you need a High-k stack if you're getting down to 14 nanometers, don't you?

A. That's the general consensus, sir.

…

Q. Okay, In fact, it wouldn't work?

A. It would work, but I agree, it would have leakage problems.

Q. Okay. It couldn't be commercially viable, would it?

A. No, sir.

# Prof. Lee Did Not Teach a Hafnium Layer; He Wanted to Avoid It

Q. Why didn't you use and why didn't you and Samsung use a High-k gate oxide in your original devices?

A. At the time of my research, we wanted to show that we can create an advanced performance transistor structure without using High-k.

Prof. Lee





Prof. Lee never mentioned Hafnium/ High-K dielectric

Hafnium layer required at these dimensions

## No Willfulness Ground 2:

Samsung developed its FinFET devices independent of Prof. Lee and the '055 Patent

# Samsung Independently Developed Accused Products



- Samsung "**invested $300MM** in bringing the bulk FinFET technology to market."

  Dkt. 574, [FF114] (citing 6/13/18 AM (Kim) at 99:16-22)

- "**50-some Samsung research engineers** were involved in bulk FinFET research between 2003 and 2006."

  PDX5.4 (citing Park Dep. 98:10-13)

# Samsung Developed Its 14nm FinFET Technology Independent of Prof. Lee's Papers and Presentations

1. Prof. Lee's 2002-03 papers & presentations are not evidence of copying

   - Predated issuance and knowledge of the '055 Patent
   - Do not disclose critical dimensions
   - Co-authored by Samsung engineers

2. Dr. Kuhn's testimony on copying from the 2006 presentation merely mirrors her infringement analysis

   - disclosed prior art elements
   - did not reference '055 Patent
   - did not disclose Hafnium layer
   - different technology

3. Prof. Lee's 2012 presentation does not establish copying

   - *after* Samsung began offering FinFET technology to customers and product definition was completed
   - *after* Dr. Kim concluded did not infringe '055 Patent

# Prof. Lee's Pre-Patent Publications Are Irrelevant

1. Published *before* '055 Patent issued

2. Did *not* describe a complete, claimed invention

3. Co-authored by Samsung engineers, who were not involved in 14nm FinFET design


"To willfully infringe a patent, *the patent must exist* and one must have knowledge of it."

*Diamond Grading*, 2016 WL 3902482, at *2


"[E]vidence of copying [the patentee's product] is *legally irrelevant unless* the [product] is shown to be *an embodiment of the claims*.'"

*Amazon.com*, 239 F.3d at 1366

# Samsung Developed Its 14nm FinFET Technology Independent of Prof. Lee's 2006 Presentation

1. *Prof. Lee's 2002-03 papers & presentations are not evidence of copying*
   - *Predated issuance and knowledge of the '055 Patent*
   - *Do not disclose critical dimensions*
   - *Co-authored by Samsung engineers*

2. Dr. Kuhn's testimony on copying from the 2006 presentation merely mirrors her infringement analysis
   - disclosed prior art elements
   - did not reference '055 Patent
   - did not disclose Hafnium layer
   - different technology

3. Prof. Lee's 2012 presentation does not establish copying
   - *after* Samsung began offering FinFET technology to customers and product definition was completed
   - *after* Dr. Kim concluded did not infringe '055 Patent

16

# Dr. Kuhn Did <u>Not</u> Identify in Prof. Lee's Presentations the Limitation Added to Overcome the Prior Art

**Only identified these limitations from Claim 1**

**Did not identify limitation added to overcome prior art**

**USPTO: Prior art structure**

1.      (Currently Amended) A double-gate FinFET device, comprising:

a bulk silicon substrate;

a Fin active region which is a all-shape single crystalline sililcon on a surface of the bulk silicon substrate and connected to said bulk silicon substrate;

a second oxide layer which is formed up to a certain height of the Fin active region from the surface of bulk silicon substrate;

a gate oxide layer which is formed on both side-walls of the Fin active region protruded from said second oxide layer;

a first oxide layer which is formed on the upper surface of said Fin active region with a thickness greater or equal to that of the gate oxide;

a gate which is formed on said first and second oxide layer;

a source/drain region whcih is formed on both sides of the Fin active region except where said gate overlaps with the Fin active region; and

a contact region and a metal layer which are formed at said source/drain and gate contact region.

wherein the thickness of said gate oxide layer is between 0.5 nm and 10 nm, and the thickness of said first oxidation layer is between 0.5 nm and 200 nm.

PX-0596.187

# Dr. Kim Was Unaware of Prof. Lee's 2006 Presentation Because It Covered a Different Product

**Dr. Dongwon Kim**



**Samsung Master**

Q. Are you aware of changes that were made in the design of your product, 14-nanometer project, between 2006 and, say, when you presented the idea to Apple in 2009?

A. No, because in 2006, we're talking about the DRAM memory application. We were working on the logic devices, which is the reason why that I was not aware of this seminar in 2006.

*6/13/18 AM (Dr. Kim) 108:19-24*

**Dr. Kuhn**



**Plaintiff's Expert Witness**

Q. [S]o this [2006 Presentation] is being emphasized on DRAM, right?

A. That's what the title says, sir.

. . .

Q. … So the '055 patent that's being asserted in this case and the accused technology have nothing to do with DRAM?

A. This is not a DRAM patent, sir.

*6/15/18 AM (Dr. Kuhn) 189:2-12*

18

# Samsung Developed Its 14nm FinFET Technology Independent of Prof. Lee's 2012 Presentation

1. Prof. Lee's 2002-03 papers & presentations are not evidence of copying
   - Predated issuance and knowledge of the '055 Patent
   - Do not disclose critical dimensions
   - Co-authored by Samsung engineers

2. Dr. Kuhn's testimony on copying from the 2006 presentation merely mirrors her infringement analysis
   - disclosed prior art elements
   - did not reference '055 Patent
   - did not disclose Hafnium layer
   - different technology

3. Prof. Lee's 2012 presentation does not establish copying
   - *after* Samsung began offering FinFET technology to customers and product definition was completed
   - *after* Dr. Kim concluded did not infringe '055 Patent

# No Willfulness Ground 3:

# No Evidence That Samsung Launched Infringing Product with Malicious Intent

# Samsung Was Not Malicious, Wanton, or Pirate-Like

- Plaintiff had burden to present "circumstances" that transform "simple 'intentional or knowing' infringement into egregious, sanctionable behavior"

  *SRI Int'l*, 918 F.3d at 1380 (quoting *Halo*, 136 S. Ct. at 1936 (concurrence))

- Plaintiff presented no evidence that decision to launch 14nm FinFET was egregious, sanctionable behavior

- Samsung presented evidence that it believed there was no infringement years before challenged conduct

# Absence of Counsel Opinion Statutorily Irrelevant

KIP argues "there was not testimony that any of Samsung's patent counsel ever reached a good faith conclusion of non-infringement or invalidity,  . . .." Dkt. No. 580, p. 5.

 "Cisco's decision not to seek an advice-of-counsel defense is legally irrelevant …."

*SRI Int'l*, 918 F.3d at 1381

# The Court Found That the Dr. Kim Determined That the '055 Patent Was Not "Similar to Samsung's Bulk FinFET Technology"

**[FF143]**    Dongwon Kim testified that he reviewed the '055 Patent in 2013 but concluded, "[w]e thought that his patent was not quite important, so we did not pay really much attention to that."  (Dkt. No. 547-9, Ex. H at 113:25–114:8 (Deposition of Dongwon Kim) (testifying about Professor Lee's "bulk FinFET patent"); Dkt. No. 493, June 13, 2018 A.M. Trial Tr. at 109:13–23, 111:6–11, 112:7–18 (testifying as to the reasons he believed the '055 Patent was different than Samsung's 14 nm technology).)

**[FF148]**    At trial, he testified (as Samsung's corporate representative) that he believed the '055 Patent was not similar to Samsung's 14 nm bulk FinFET technology. The Court finds that

**[FF154]**    However, Dongwon Kim testified that he thought the '055 Patent was not "important." FF143. He also testified at trial that he did not believe the '055 Patent was similar to Samsung's bulk FinFET technology. *See id.*

# Dr. Kim Also Thought That Hafnium Was Critical and Was an Important Difference With the '055 Patent in 2012

**Dr. Dongwon Kim**



**Samsung Master**

Q. You mentioned Hafnium oxide. Is Hafnium oxide important in the design of your 14-nanometer bulk FinFET product?

A. Yes, it is extremely important.

. . .

Q. Is it possible to have a 14-nanometer bulk FinFET product without Hafnium oxide?

A. It is my view that it is not possible at all, absolutely not.

Q. Why -- why would it not be possible?

A. Because we are -- we are not able to satisfy the characteristics of the -- and the performance of a 14-nano product that we'd like to achieve just solely based upon silicon oxide alone.

Q. What would the performance problems be that would not allow you to satisfy your requirements?

A. Not only the leakage aspect but also the speed aspect. Those would not be satisfied at all.

6/13/18 AM (Dr. Kim) 113:12-114:9; *See also id.* 111:2-113:11

24

# Plaintiff's Motion for Enhanced Damages

# Samsung's Conduct Was Appropriate

- Enhanced damages requires egregious, pirate-like behavior:



"[E]nhanced damages ... are *not to be meted out in a typical infringement case*, but are instead designed as a *'punitive' or 'vindictive' sanction* for *egregious infringement behavior*. The sort of conduct warranting enhanced damages has been variously described in our cases as *willful*, *wanton*, *malicious*, *bad-faith*, *deliberate*, *consciously wrongful*, *flagrant*, or—indeed— *characteristic of a pirate*.

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016)

- Defendant must act "for no purpose other than to steal the patentee's business":



"The Court refers ... to a 'wanton and malicious pirate' who intentionally infringes another's patent—*with no doubts about its validity or any notion of a defense—for no purpose other than to steal the patentee's business.*"

*Halo*, 136 S. Ct. at 1936 (Breyer, J., concurring)

# *Read* 1: Samsung Independently Developed Accused Products



2003: '055 application  filed

2003-2009: Samsung's researches FinFET

2005: '055 patent issues

2006: Prof. Lee gives presentation to Samsung (doesn't disclose thickness limitation)

2007: Intel introduces Hafnium Oxide (not disclosed in '055 Patent or Prof. Lee's presentation)

Samsung introduces Hafnium in 32 nm products

2009-2012: Samsung defines FinFETs

2012: Samsung offers PDKs to customers

| 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 |

7 years of research     3 years of add'l development

- Samsung "**invested $300MM** in bringing the bulk FinFET technology to market."

Dkt. 574, [FF114] (citing 6/13/18 AM (Kim) at 99:16-22)

- "**50-some Samsung research engineers** were involved in bulk FinFET research between 2003 and 2006."

PDX5.4 (citing Park Dep. 98:10-13)

27

# *Read* 1: Samsung Independently Developed Accused Products

1.  Prof. Lee's 2002/2003 papers are irrelevant:
    – no testimony that Samsung copied from papers
    – pre-date '055 Patent
    – co-authored by Samsung engineers
    – decade before design of Accused Products finalized

2.  Prof. Lee's original lab design is irrelevant:
    – no testimony that compares lab design to claims

3.  Prof. Lee's 2006 & 2012 presentations are irrelevant:
    – 2006: *Not* relied on by Samsung; no reference to high-k layer
    – 2012: *After* Samsung already offered products and completed product definition

# *Read* 2: Samsung Had Good-faith Invalidity Defenses Years Before Challenged Conduct

Q.  … The gist of ==Samsung's [2011] presentation== was it felt that there was a question that the '055 patent could be potentially invalid?

A.  Rather than possibility of invalidity, ==our position was that it was highly likely that the patent would be invalid.==

Dkt. 607-2 (Seo) 46:18-24

**Mizuno\***                     **Hieda**



Dkt. 607-3 (Seo Dep. Ex. 8)

# *Read* 2: Samsung Had Good-faith Non-infringement Defense to Number of Gates Years Before Challenged Conduct

1. Dr. Kim also testified that Samsung thought it did not infringe preamble's number of gates:

> Q.  What's the factual basis for Samsung's contention that it does not infringe the '055 Patent?
> A.  Samsung does not use a double-gate.
> Q.  What type of gate does Samsung use?
> A.  We use a three-side shaped gate.
>
> Ex. 607-5 (Dongwon Kim) 303:17-22

2. Samsung proposed to construe the preamble as a limitation

Dkt. 179 at 9

3. Even Dr. Kuhn recognized this difference:

> a FinFET is sometimes referred to as a trigate FinFET. Other types of FinFET configurations are also available, such as so-called double-gate FinFETs, in which the conductive channel principally resides only along the two sidewalls of the fin (and not along the top of the fin). A complimentary

Dkt. 106-16, [0001]

30

# *Read* 3: Samsung's Litigation Conduct Was Reasonable



"[E]nhanced damages ... are ... designed as a 'punitive' or 'vindictive' sanction for egregious *infringement behavior*."

*Halo*, 136 S. Ct. at 1932



"[A]s the Court explains, *enhanced damages may not 'serve to compensate patentees' for infringement-related costs or litigation expenses*.... [A] different statutory provision, § 285, provides for the latter."

*Halo, 136 S. Ct. at 1937 (Breyer, J. concurrence)*

# *Read* 3: The Court Already Rejected Plaintiff's Allegations About Samsung's Conduct In Korea

1. Plaintiff repeats allegations from its motion to compel discovery that was already *denied* and *not objected to*:

> Having considered KAIST IP US LLC's Motion to Compel Discovery [Dkt. # 260] and
>
> the parties' related briefing, the Court **DENIES** the motion.
>
> **SIGNED this 23rd day of June, 2018.**

Order Denying Plaintiff's Motion to Compel Discovery (Dkt. 507)

2. Both sides contacted KNU (former employer of Prof. Lee)
   - Samsung merely asked KNU to assert colorable claim of ownership

3. Samsung complied with the Protective Order
   - Plaintiff identifies *de minimis* information ***non-confidential information*** disclosed in open court:
     i. KNU employees shown cover page of a KNU 2003 research report to help locate full report; only discussed after they found report
     ii. Single page of Prof. Lee's and Dr. Park's deposition transcripts shown merely to identify the date of reduction to practice

# *Read* 3: The Court Already Rejected Plaintiff's Allegations About Samsung's Conduct In Korea

1. Magistrate Payne allowed Mr. Choe's declaration on Korean law, without objection from Plaintiff:

> The Court **GRANTS** both Plaintiff's Motion to Exclude [Dkt. # 227] and Defendants' Motion to Exclude [Dkt. # 222], and the parties may not call these experts at trial. However, the Court will consider both declarations in determining any issues of Korean law.

2. Plaintiff deposed Mr. Choe:

   i. offered his *own, independent opinions*;

   ii. did not contact KNU; merely CC'd on others' emails

> **Mr. Jeong-Kyu Choe's Involvement in Correspondence with KNU**
>
> 49.    When I was first retained by Paul Hastings for the above captioned matter, I originally intended to include Mr. Choe in the fact finding tasks.
>
> 50.    But soon after, once there was a possibility that Samsung would need Mr. Choe's expert opinion on the KNU IP Policy, I specifically excluded Mr. Choe from all further correspondences with KNU. This was why I copied Mr. Choe on my first two emails to KNU and did not copy Mr. Choe on my subsequent communications.
>
> 51.    I have put great efforts into isolating Mr. Choe to just his opinion on the KNU IP Policy and other Korean law related issues, so that Mr. Choe's analysis and opinions remain independent of any of my research efforts and results.

# *Read* 3: Plaintiff's Other Allegations of Misconduct Are Misplaced

1. KNU, *not Samsung*, considered taking action against Prof. Lee in Korea to assert ownership rights

   – Plaintiff just has attorney argument for Samsung's conduct

   Dkt. 287-1, ¶¶ 5-8

2. Mr. Ryoo offered personal opinions about Korean law

   – A different interpretation of law is not misconduct

   Dkt. 200-7, ¶¶ 14-15

3. The Court already resolved Plaintiff's objection to questioning of Prof. Lee about the Korean government

   6/13/18 PM (Prof. Lee) 32:3-20, 35:3-39:8

4. Dr. Park testimony went to willfulness, not inventorship

   6/13/18 PM (Dr. Park) 35:19-23, 38:18-39:4

# *Read* 5: The Case Was Close
# *Read* 7: No Remedial Action Warranted

1. Plaintiff's motion for summary judgment of infringement was denied

   *See* Dkt. 459 at 1

2. Plaintiff's Rule 50 motions were denied

   6/15/18 PM (Court) 202:14-203:4

3. Defendants raised invalidity defenses at trial (US Mizuno) and distinct grounds in ex parte reexamination (JP Mizuno)

   6/15/18 PM (Subramanian) 46:11-72:22; Dkt. 651-2

4. Infringement and validity issues remain hotly contested

# *Read* 7: No Remedial Action Warranted



"[A]s Blue Coat continues to challenge the jury verdict, *this factor is neutral*."

*Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-CV-03999-BLF, 2016 WL 3880774, at *17 (N.D. Cal. July 18, 2016), aff'd in part, rev'd in part, 879 F.3d 1299 (Fed. Cir. 2018)



"[C]ontinued production of the infringing products during litigation [is] *a not a sufficient hook upon which to hang an award of enhanced damages*."

*Brooktree Corp. v. Advanced Micro Devices, Inc.*, 757 F. Supp. 1088, 1097 (S.D. Cal. 1990), aff'd, 977 F.2d 1555 (Fed. Cir. 1992)



"Adobe's *continued sale of the infringing product* without removing its infringing capability *is merely typical infringement behavior* that is not a proper basis for enhanced damages."

*TecSec, Inc. v. Adobe Inc.*, No. 1:10-CV-115, 2019 WL 1233882, at *2 (E.D. Va. Mar. 14, 2019)

# *Read* 6: No Long Duration Of Alleged Misconduct



# *Read* 8: Samsung Had No Motivation To Harm Prof. Lee

1. *Samsung does not compete with Plaintiff*, which does not manufacturer any products:



"TCL *does not compete* with Ericsson in the relevant market, and TCL's motive is profit-driven."

*Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, No. 2:15-CV-00011-RSP, 2018 WL 2149736, at *12 (E.D. Tex. May 10, 2018)

2. Refusal to take a license is *irrelevant* to this factor:



"[T]there is nothing to suggest that Holland acted out of *spite or ill-will* toward Georgetown or for any reason other than *a desire to capture a piece of the market.*"

*Georgetown Rail Equip. Co. v. Holland L.P.*, No. 6:13-CV-366, 2016 WL 3346084, at *20 (E.D. Tex.  June 16, 2016), aff'd, 867 F.3d 1229 (Fed. Cir. 2017)

3. Samsung was only motivated by its *commercial interests*:



"[T]he Court considers whether there is evidence of any direct motivation on the part of the infringer to harm the patent holder, *as opposed to advancing its own interests.*"

*Canon, Inc. v. Color Imaging, Inc.*, 292 F. Supp. 3d 1357, 1368 (N.D. Ga. 2018)

# *Read* 9: Samsung's Did Not Conceal Alleged Infringement

- First allegation of infringement is *Jan. 2015*:

> **[FF111]**  Both parties' experts in this case confirmed that the first act of infringement was either at the end of 2014 or the beginning of 2015. (*See, e.g.*, Dkt. 547-21, Ex. T ¶ 62 (Report of Roy Weinstein); Dkt. 547-22, Ex. U ¶ 11 (Report of Stephen Becker).)

- Samsung *publicly announced* its 14nm FinFET products in *April 2014*.

  *See* PX0138

- Plaintiff relied heavily on *third-party teardown* dated *May 2015*:



# Plaintiff's Motion for Attorneys' Fees

# Plaintiff Is <u>Not</u> Entitled to Attorney's Fess

1. This was a hard-fought case

2. Willfulness (even if upheld) does not make case exceptional

3. The Court already rejected Plaintiff's allegations of misconduct in Korea

4. The Court already addressed Plaintiff's objection to questioning of Prof. Lee about Korean Government

5. Plaintiff has unclean hands

# Plaintiff Has Unclean Hands

1. Plaintiff added new constructions to jury notebook:



Magistrate Payne: "[I]t offends me that there would be an effort [by Plaintiff] to include additional construction in what is supposed to be just a very ministerial act of putting together this — you know, I've been doing this for while. This is the first time anybody has tried to add in an additional claim construction in this jury book chart."

Final Pre-Trial Conference (6/8/18)

2. Plaintiff tried to use N.D. Cal. to evade PTAB's discovery limits

N.D. Cal. Order (Dkt. 64-1 at 3)

The End